**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

SUTTER & GILLHAM, P.L.L.C, ET AL.                                    PLAINTIFFS

v.                                      CASE NO. 4:23-CV-78-BSM

JUDY SIMMONS HENRY, ET AL.                                          DEFENDANTS

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS OF CHRIS BURKS, BRANDON HAUBERT, AND WH LAW, PLC**

---

Come now Defendants Chris Burks, Brandon Haubert, and wH Law, PLC (collectively, "wH Law"), by and through their attorneys, Barber Law Firm PLLC, and for their Brief in Support of their Motion to Dismiss, filed pursuant to Rule 12 of the Federal Rules of Civil Procedure, state:

**INTRODUCTION**

Plaintiffs Luther Sutter, Lucien Gillham, and Sutter & Gillham, PLLC assert a cornucopia of claims following years of Plaintiffs' unsuccessful attempts to cobble together a wrongful death claim on behalf of their client, Gena Downey Baker, in the Circuit Court of Jefferson County, Arkansas, related to the death of Luke Baker in October 2015, Case No. 35CV-18-1077.  That failed endeavor eventually concluded with a June 22, 2021, judgment resulting in the dismissal of the wrongful death claim with prejudice based upon Plaintiffs' misconduct and their pattern of abuse of the judicial process. (Doc. 1, at 155–162).

Among other things, the Circuit Court of Jefferson County found that dismissal was an appropriate sanction for the use of fraudulent paperwork to allegedly disinter a body; misrepresentations to government officials regarding illegal exhumation of a body; failure to comply with Arkansas exhumation law; spoliation of key evidence; false representations regarding a secret autopsy; concealment of false representations regarding exonerating evidence;

wrongfully attempting to influence a public official, Chad Kelly, who was to be Plaintiffs' expert witness; knowingly eliciting false testimony from Chad Kelly; discovery abuses, including attempting to improperly influence fact and expert witness testimony; concealing documents and information from witnesses and parties; witness tampering; and other violations.  (Doc. 1, at 156–158).

Plaintiffs now blame this result on various lawyers involved in the underlying litigation and lawyers who were not involved in the underlying action, including wH Law. Importantly, wH Law was not a party to the wrongful death litigation in Jefferson County, did not represent any client in that litigation, and otherwise played no role in the events leading to the sanctions order.  Instead, wH Law represented David Westbrook, one of Plaintiffs' former clients, in an entirely separate and unrelated lawsuit filed by Plaintiffs against Mr. Westbrook in the Circuit Court of Saline County, Arkansas, docketed as *Sutter & Gillham PLLC v. Westbrook,* Case No. 63CV-19-1060. (Doc. 1, at 224–227). Now, Plaintiffs contend that more than 100 defendants, including wH Law, are part of an overarching conspiracy to deprive Plaintiffs of various rights.

Plaintiffs' tenuous Complaint casts far too wide of a net, and they have failed to plausibly allege any cause of action against wH Law.  Against wH Law, plaintiffs assert claims for (1) retaliation; (2) conspiracy to violate Plaintiffs' constitutional rights; (3) defamation; (4) "abuse of process/malicious prosecution;" (5) "civil conspiracy/barratry"; and (6) a statutory claim as perceived victims of a felony offense.  These claims should be dismissed because Plaintiffs have not plausibly alleged facts that would establish any cause of action cognizable under either Arkansas or federal law. Consequently, the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND AND RELATED ALLEGATIONS

The scant allegations in the Complaint related to wH Law only provide the briefest of information, but even those allegations are plainly deficient in light of the documents attached to or otherwise embraced by the Complaint. For instance, the crux of Plaintiffs' allegations against wH Law is that those defendants allegedly filed a frivolous lawsuit against Plaintiffs on behalf of Mr. Westbrook, which ultimately caused Plaintiffs to withdraw at a hearing in the wrongful death case pending in the Circuit Court of Jefferson County. (Doc. 1, at ¶¶ 12, 14). There is no explanation of how the filing of a counterclaim by a former client against Plaintiffs in a separate lawsuit created a new conflict of interest that in any way impacted the Jefferson County litigation. Also notably absent from the Complaint is any allegation as to why Plaintiffs withdrew from that action or how wH Law played any role in Plaintiffs' decision. Equally missing is any allegation that explains why Plaintiffs' withdrawal resulted in the sanctions order.

Documents otherwise embraced by the pleadings, however, provide some additional information that speaks to this issue. Plaintiffs attach as Exhibit "I" to the Complaint an order of dismissal from a lawsuit filed in the Circuit Court of Saline County, Arkansas, on September 10, 2019. (Doc. 1, at 224–227). That lawsuit was a declaratory judgment action filed by Sutter & Gillham, PLLC, against their former client, Mr. Westbrook. (*See Westbrook Complaint*, attached as Exhibit A). In that suit, Sutter & Gillham, PLLC, sought a declaration that it had not breached its fiduciary duty to Mr. Westbrook and that its representation of Mr. Westbrook in two different lawsuits did not violate the standard of care. *Id.* Importantly, one of those lawsuits involved a hostile work environment claim related to inappropriate sexual conduct filed by Plaintiffs on behalf of Mr. Westbrook against Mr. Westbrook's former employer, Chad Kelly, the Jefferson County Coroner, in November 2014. *Id.*, at pp. 1–2, 6–9. That case eventually settled in May 2019.

Mr. Westbrook engaged wH Law to defend him in the declaratory judgment action filed by Sutter & Gillham, PLLC.  (*Westbrook Answer*, attached as Exhibit B).  On February 4, 2020, Mr. Westbrook filed a counterclaim against Sutter & Gillham, PLLC, Luther Sutter, and Lucien Gillham, alleging breach of fiduciary duty, breach of contract, fraud, and for unjust enrichment related to their representation of Mr. Westbrook in the suit filed against Chad Kelley.  (*Westbrook Counterclaim*, attached as Exhibit C).  The basis of the counterclaim was that Sutter, Gillham, and Sutter & Gillham, PLLC, violated their fiduciary duty owed to Mr. Westbrook as his attorneys when they (1) failed to pursue the case and inexplicably dismissed Mr. Westbrook's claims in June 2014 despite Mr. Westbrook paying the required retainer to Sutter, Gillham, and Sutter & Gillham, PLLC; (2) subsequently refiling the case and then filing no pleadings in the matter for the following four years; (3) repeatedly ignoring Mr. Westbrook's efforts to communicate with his lawyers during the life of the case; and (4) settling the case without disclosing all pertinent information to Mr. Westbrook.  *Id.*, at ¶¶ 7–26.

The critical information that Plaintiffs failed to disclose to Mr. Westbrook was the fact that Chad Kelly, the defendant in the hostile work environment suit, had also become a key witness for Plaintiffs in their purported wrongful death action pending in the Circuit Court of Jefferson County.  *Id.*, at ¶ 20.  Mr. Westbrooks's counterclaim alleged that, had he known about this conflict of interest, he would never have settled his case against Chad Kelly for the amount of the settlement which caused Mr. Westbrook to suffer damages.  *Id.*, at ¶¶ 24–26.  This counterclaim is the alleged "frivolous lawsuit" that forms the basis of Plaintiffs' claims against wH Law.  (Doc. 1, at ¶¶ 12, 14).

Although Plaintiffs blame wH Law (and more than 100 other individuals and entities) for the dismissal with prejudice that occurred in the wrongful death case pending in the Circuit Court

of Jefferson County, the Complaint and incorporated documents confirm wH Law had no involvement in that dismissal.  More particularly, the sanction order that dismissed the wrongful death claim itemized in detail why dismissal with prejudice was an appropriate remedy given Plaintiffs' conduct and the conduct of other lawyers and agents associated and engaged by Plaintiffs.  (Doc. 1, at 155–162).  Plaintiffs maintain that those findings are all part-and-parcel to a tangled conspiracy to deprive them of constitutional rights.

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully.  *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016).  Courts should consider whether there are lawful, obvious alternative explanations for the alleged conduct, because where the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *McDonough v. Anoka County*, 799 F.3d 931, 946 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678, 682).

At this stage, the court must accept as true all the factual allegations contained in the complaint, *Twombly,* 550 U.S. at 572, and must draw all reasonable inferences in favor of the nonmoving party.  *Cole v. Homier Distrib. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010).  The

complaint, however, must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555. A district court is not required "to divine the litigant's intent and create claims that are not clearly raised" or "conjure up unpled allegations" to save a complaint. *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"In ruling on a motion [to dismiss], the court may consider the pleadings and exhibits attached thereto." *Chancellor v. State Farm Mut. Auto. Ins. Co.*, No. 08- 6065, 2008 U.S. Dist. LEXIS 72247, at *5–6 (W.D. Ark. Sep. 22, 2008) (considering exhibit attached to defendant's answer on defendant's Rule 12(c) motion); *see also Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (citation omitted) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'"); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). The court may also consider "matters incorporated by reference or integral to the claim," "items appearing in the record of the case," and "orders." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002). Separately, subject matter jurisdiction can be challenged on the face of the complaint. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

## ARGUMENT

### A. *Dismissal is proper under federal preemption and estoppel principles.*

As a threshold matter, the Court should dismiss the Complaint due to the pendency of parallel state court proceedings as outlined in the Complaint. A federal court may divest itself of

jurisdiction by abstention when parallel state and federal actions exist and exceptional circumstances warrant abstention. *See Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)); *see also Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 913 (8th Cir. 2022) (holding that abstention under *Younger v. Harris*, 401 U.S. 37 (1971) is appropriate due to the pendency of "a proceeding implicating a state's interest in enforcing the orders and judgments of its courts").

A "substantial similarity must exist between the state and federal proceedings, which similarity occurs when there is a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." *Id.* at 535 (compiling cases). Among the non-exhaustive factors applied by the Eighth Circuit Court of Appeals, the following factors generally control the *Colorado River* analysis:

> whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed; which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases; whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls; and the adequacy of the state forum to protect the federal plaintiff's rights.

*Fru-Con Constr. Corp.*, 574 F.3d at 534 (cleaned up).

The Eighth Circuit also has held that it is proper to consider whether forum shopping has occurred when applying the "exceptional circumstances" factors under *Colorado River*. *See Federated Rural Elec. Inc. Corp. v. Ark. Elec. Coop.*, 48 F.3d 294, 299 (8th Cir. 1995); *Hammond v. Vandermast*, No. 3:20-CV-03024, 2020 U.S. Dist. LEXIS 146550, at *15 (W.D. Ark. Aug. 14, 2020). The Court must analyze whether this suit is filed "for a vexatious, reactive or tactical reason." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr.*, 460 U.S. 1, 17 (1983)).

Plaintiffs allege that two parallel proceedings involving the same issues and parties remain pending in Arkansas state courts: first, the Jefferson County litigation "has been appealed as docket number CV-22-102, currently in the Arkansas Court of Appeals." (Doc. 1, at ¶ 33). Second, there is litigation involving the same parties in Faulkner County, Arkansas, docketed as Case No. 23CV-21-403. (Doc. 1, at pp. 53–154). The Complaint alleges: "Burks and Haubert filed a frivolous lawsuit against Sutter so that Judy Henry could make these allegations in the Jefferson County Circuit Court and in the Faulkner County Circuit Court. So, Sutter was forced to withdraw from Jefferson County case." (Doc. 1, at ¶ 147).

Third, Plaintiffs have filed another state court proceeding in which they assert identical claims against Mr. Westbrook: *Sutter & Gillham, P.L.L.C., et al. v. Westbrook,* Jefferson County Circuit Court, Case No. 35CV-22-965. (*Complaint filed by Plaintiffs in Case No. 35CV-22-965*, attached hereto as Exhibit D).  In the newest installment of Plaintiffs' serial litigation, Plaintiffs assert claims for abuse of process and malicious prosecution against Mr. Westbrook in connection with the earlier Saline County litigation filed by Plaintiffs against Mr. Westbrook, Case No. 63CV-19-1060.

Here, the *Colorado River* factors favor abstention and dismissal. First, maintaining this litigation will result in unnecessary piecemeal litigation, and, even were Plaintiffs' federal claims legitimate, the federal court issue is not easily severed, as reflected by the allegations of commingled issues from the various state court cases. *See Fru-Con Constr. Corp.*, 574 F.3d at 534. As discussed below, Plaintiffs' purported federal claims are really state law claims that Plaintiffs assert against non-diverse, non-state actors.

Second, the state court proceedings have priority because they have been pending for years and are in the advanced stages of litigation, on which the Eighth Circuit places great emphasis.

*See id.*  Third, state law controls Plaintiffs' claims, all of which are premised on the use of state courts in Arkansas and the conduct of the various Arkansas attorneys. Further, the gist of Plaintiffs' claims are alleged violations of state law. In these circumstances, this factor strongly disfavors the exercise of federal jurisdiction.

Fourth, there are multiple state forums that are adequate to protect the Plaintiffs' rights. *See id.* Plaintiffs are litigating several lawsuits in Arkansas related to the issues embraced by the present Complaint, including the new lawsuit filed in 2022 against Mr. Westbrook in Jefferson County Circuit Court, Case No. 35CV-22-965. Furthermore, the two separate pending state court proceedings will result in an adjudication of the dispositive issues in this federal case. *See Cottrell v. Duke*, 737 F.3d 1238, 1246 (8th Cir. 2013). Dismissal under *Colorado River* is particularly appropriate when a plaintiff combines a frivolous federal claim with state law claims over which federal courts do not have exclusive jurisdiction. *Cf. id.* at 1245. Plaintiffs' pending appeal of the judgment is also "a proceeding implicating a state's interest in enforcing the orders and judgments of its courts," specifically the June 22, 2021, judgment entered in the Jefferson County lawsuit. *See Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018).

Finally, the present action is filed "for a vexatious, reactive or tactical reason." *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 299. The present litigation exemplifies a lawsuit filed for a vexatious, reactive or tactical reason. It is no coincidence that, other than Plaintiffs' fabricated constitutional claim asserted under the federal civil rights statutes, the Complaint filed in this case mirrors the complaint filed *against* Plaintiffs in the Faulkner County, Arkansas, litigation, Case No. 23CV-21-403.

Moreover, Plaintiffs have affirmatively pled and argued in the underlying Faulkner County litigation that the very claims Plaintiffs now assert—abuse of process, civil conspiracy, and civil

action by crime victim—cannot be based on actions taken by Arkansas attorneys for their clients during litigation; are barred by the attorney privity statute; are barred by the pendency of the Jefferson County litigation, 35CV-18-1077, which is currently being appealed; and are barred by the privity between Plaintiffs and their client, Gena Downey Baker, in the Jefferson County litigation. (*Memorandum in Support of Motion to Dismiss of Separate Defendants Luther Sutter, Lucien Gillham and Sutter & Gillham, P.L.L.C.*, attached hereto as Exhibit E, at pp. 6–13, 15–16, 25–29). These clearly contrary and inconsistent positions trigger the doctrine of judicial estoppel, which further supports dismissal of this action on the basis of abstention.

Here, the Court has discretion to apply judicial estoppel where a party asserts a claim and position in a legal proceeding that is inconsistent with the claim or position taken by that party in a previous proceeding. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Like the various federal abstention doctrines, the purpose of the doctrine "is to protect the integrity of the judicial process and to prevent parties from playing fast and loose with the courts by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* (citations omitted); *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1032-33 (8th Cir. 2016). Among the factors for the Court to consider are whether a party's later position is "clearly inconsistent" with its prior position and whether the party asserting the inconsistent positions "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Jones*, 811 F.3d at 1032–33; *In re Wertz*, 557 B.R. 695, 707 (Bankr. E.D. Ark. 2016).

Here, Plaintiffs attempt to play fast and loose by filing claims that are clearly inconsistent with Plaintiffs' positions in the Faulkner County litigation in which they are defendants. Plaintiffs would derive an unfair advantage by such tactics. *See id.* This is particularly true when "a later filed federal lawsuit is an attempt to forum shop or avoid adverse rulings by the state court," which

several courts have found to weigh "strongly in favor of abstention." *Time Warner Cable Inc. v. Cooper-Dorsey, No. 19-00151-CV-W-ODS*, 2019 U.S. Dist. LEXIS 102966, at \*16 n.2 (W.D. Mo. June 20, 2019) (compiling cases). The inconsistent positions taken by Plaintiffs in multiple parallel proceedings are extraordinary circumstances in which abstention is proper. In short, the *Colorado River* factors, as applied to this litigation, overwhelmingly support abstention and dismissal of the present case.

### B.  wH Law is immune from Plaintiffs' claims.

If the Court is not inclined to dismiss this matter on the basis of abstention, wH Lw is afforded "absolute immunity" from Plaintiff's claims arising from wH Law's part in the judicial process. *See Briscoe v. Lahue*, 460 U.S. 325, 335 (1983). Neither the common law nor 42 U.S.C. § 1983 authorizes a damages claim against private witnesses or attorneys for the performance of their respective duties in the judicial process. *See id.*; *see also Mock v. Chicago, Rock Island & Pac. R.R. Co.*, 454 F.2d 131, 133 (8th Cir. 1972) ("[Absolute] privilege is generally applied to pertinent statements made in formal judicial proceedings."). This absolute immunity extends to both an attorney's written and oral submissions to a court. *See Imbler v. Pachtman*, 424 U.S. 409, 426 n. 23 (1976); *Dornheim v. Sholes*, 430 F.3d 919, 925 (8th Cir. 2005) (compiling cases) (holding that absolute privilege applies, *inter alia*, to witnesses, attorneys ad litem, and court-appointed psychiatrists).

Here, all of the allegations and claims asserted against wH Law are premised on wH Law's role as counsel for Mr. Westbrook in underlying judicial proceedings as referenced in Plaintiffs' Complaint. All of Plaintiffs' claimed damages apparently flow from the June 22, 2021, judgment (Doc. 1, at pp. 155–162) entered in the Jefferson County litigation—in which wH Law was not involved—and Plaintiffs attempt to impose liability on wH Law by virtue of the representation of

Page **11** of **28**

Mr. Westbrook in a separate proceeding initiated by Plaintiffs in Saline County. Under settled precedent of the Supreme Court of the United States, wH Law cannot be liable to Plaintiffs under the theories contained in the Complaint for representing parties in any underlying litigation, to the extent Plaintiffs contend that wH Law participated in the judicial process that resulted in the June 22, 2021, judgment. *Id*.

Plaintiffs allege, albeit unartfully, that wH Law somehow participated in the procurement of the June 22, 2021, judgment in the Jefferson County litigation in which wH Law was not involved as counsel. *Id*. Consequently, all of Plaintiffs' claims are barred by the "absolute immunity" recognized by the Supreme Court almost 50 years ago. Dismissal is warranted.

### C.      *Quasi-judicial immunity bars all of Plaintiffs' claims.*

For similar reasons, Plaintiffs' claims are barred by the separate doctrine of quasi-judicial immunity arising under Arkansas law. Again, Plaintiffs vaguely allege that wH Law participated in the entry of the June 22, 2021, judgment in the Jefferson County litigation, although wH Law was not involved in the litigation. *Id*. To the extent Plaintiffs allege that the acts of wH Law resulted in the sanctions order and judgment, which makes wH Law liable to Plaintiffs, wH Law is entitled to quasi-judicial immunity and dismissal of the Complaint.

Like the Supreme Court of the United States, the Arkansas Supreme Court has held that a non-judge serving an integral part of the judicial process by carrying out and acting within the scope of a court's order may assert quasi-judicial immunity. *Martin v. Smith*, 2019 Ark. 232, at 6, 576 S.W.3d 32, 36 (citing *Chambers v. Stern*, 338 Ark. 332, 337–38, 994 S.W.2d 463, 466 (1999)). The immunity analysis does not turn on whether the party asserting immunity was specifically designated by court order—the "linchpin of the analysis hinges instead on the function performed and its integral relation to the judicial process." *Id.*

Here, Plaintiffs contend that wH Law served as counsel for Mr. Westbrook in a separate matter filed by Plaintiffs in Saline County, Arkansas, before the June 22, 2021, judgment was entered in the Jefferson County lawsuit in which wH Law was not a participant. Plaintiffs further contend that, by virtue of wH Law's representation of Mr. Westbrook in the Saline County litigation, wH Law participated in the subsequent entry of the June 22, 2021, judgment. Therefore, wH Law is entitled to quasi-judicial immunity based on Plaintiffs' allegations that wH Law was carrying out and acting within the scope of the Jefferson County court's order. *See Martin*, 2019 Ark. 232, at 6, 576 S.W.3d at 36. Dismissal on this separate basis is proper.

### D.      *Plaintiffs' claims are barred by res judicata and collateral estoppel.*

Alternatively, Plaintiffs' claims, all of which are premised on the June 2021 sanctions order, are barred by res judicata and collateral estoppel. The order entered in the Jefferson County litigation, Case No. 35CV-18-1077, is a final, valid judgment that is binding on Plaintiffs. *See Cardona v. Holder*, 754 F.3d 528, 529-30 (8th Cir. 2014) (elements of res judicata);[1] *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) (elements of collateral estoppel);[2] *Roberts v. Unimin Corp.*, No. 1:15CV00071 JLH, 2015 U.S. Dist. LEXIS 163659, at *20 (E.D. Ark. Dec. 7, 2015) (recognizing the attorney-client relationship satisfies the privity requirement of res judicata and collateral estoppel); *Jayel Corp. v. Cochran*, 366 Ark. 175, 182, 234 S.W.3d 278, 284 (2006)

---

[1] Res judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases.

[2] Issue preclusion has five elements: (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

(holding "the attorney-client relationship . . . is sufficient to satisfy the privity requirement for purposes of *res judicata*.").

Here, the bases and circumstances resulting in the entry of the June 22, 2021, judgment are extensively and clearly articulated in the judgment. (Doc. 1, at 155–162). Plaintiffs now allege that the June 22, 2021, judgment was entered for other reasons and circumstances, specifically the amorphous, widespread conspiracy directed against Plaintiffs. The issues surrounding the entry of the order were actually litigated in the underlying case as reflected in language of the judgment and Plaintiffs' Complaint. All of the elements of res judicata and collateral estoppel adopted by the Eighth Circuit Court of Appeals are satisfied by the June 21, 2022, judgment. Because all of Plaintiffs' claims are centered on the underlying judgment entered on June 21, 2022, dismissal is proper on the bases of res judicata and collateral estoppel.

### E.      *Plaintiffs' claims are barred by the attorney privity statute.*

Plaintiffs' claims against wH Law plainly arise from wH Law's representation of Mr. Westbrook in connection with the lawsuit filed against Mr. Westbrook by Plaintiffs and Mr. Westbrook's counterclaim in that action.  (Doc. 1¶¶ 12, 14).  Plaintiffs' claims fail as a matter of law because they are barred by Arkansas' attorney privity statute: Ark. Code Ann. § 16-22-310. The statute provides:

> No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas-licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation[.]

Ark. Code Ann. § 16-22-310(a).

"The plain language of Ark. Code Ann. § 16-22-310 requires the plaintiff to have direct privity of contract with 'the person, partnership, or corporation' he or she is suing" for

actions arising from the representation. *See First Ark. Bank & Tr. v. Gill Elrod Ragon Owen & Sherman, P.A.*, 2013 Ark. 159, at 9, 427 S.W.3d 47, 53 (compiling cases).  The Arkansas Supreme Court has narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable.  *Id*.  The statute "is precise and clear and reveals that the contract contemplated by the statute relates to a contract for professional services performed *by the attorney for the client*." *Id.* (emphasis in original).

Where there is no attorney-client relationship with the party asserting a claim against the lawyer in connection with the lawyer's professional services, there is no privity between the parties, and the attorney may not be held liable under Ark. Code Ann. § 16-22-310(a).  *Id.*  Indirect privity does not satisfy the statutory privity requirement. *See McDonald v. Pettus*, 337 Ark. 265, 271–72, 988 S.W.2d 9, 12 (1999).  A party lacks standing where no privity or attorney-client relationship exists.  *See Giles v. Harrington, Miller, Neihouse & Krug*, 362 Ark. 338, 349, 208 S.W.3d 197, 204 (2005) (affirming dismissal of claims for lack of standing due to lack of privity); *McDonald*, 337 Ark. at 273, 988 S.W.2d at 13 (same).

Plaintiffs' Complaint contains only factual allegations that state wH Law represented Mr. Westbrook as wH Law's client in the lawsuit filed by Plaintiffs against Mr. Westbrook.  (Doc. 1, at ¶¶ 12, 14).  There are no allegations in the Complaint that would establish direct privity or an attorney-client relationship between Plaintiffs and wH Law.  Instead, wH Law's client was, at all times, Mr. Westbrook, and there are no factual allegations in the Complaint that give rise to the requisite direct privity for Plaintiffs to assert any litigation-conduct based claims against wH Law.  Plaintiffs have signed pleadings in which they contend the statute bars the claims that Plaintiffs now assert. (Exhibit E, at pp. 6–13, 15–16, 25–29). Accordingly, Plaintiffs' allegations are legally

insufficient to overcome the attorney privity statute and are barred by Ark. Code Ann. § 16-22-310, as a matter of law. The Complaint should be dismissed in its entirety on this basis.

### F.        Plaintiffs have failed to state a claim against wH Law for retaliation.

In addition to the above fatal defects, Plaintiffs' claims also individually fail to state any claim for relief.  For instance, the Court should dismiss Plaintiffs' retaliation claim against wH Law.  To prevail on a claim of retaliation in violation of their constitutional rights, Plaintiffs must prove that (1) they engaged in a constitutionally protected activity; (2) the state actor took some retaliatory action against him; and (3) the protected activity caused the state actor's retaliation. *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  As an initial matter, Plaintiffs' retaliation claim fails as a matter of law because wH Law is a private law firm with private attorneys rather than state actors.  The Complaint does not include any allegations that plausibly allege wH Law is a state actor or engaged in concerted or joint activity with any state actor such that Plaintiffs' constitutional retaliation claim could be asserted against wH Law.  *See Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1091 (8th Cir. 2014).  The Court should dismiss this claim against wH Law for lack of state action.

Moreover, the Court should dismiss Plaintiffs' retaliation claim against wH Law because the Complaint does not plausibly allege sufficient facts to state a claim upon which relief can be granted.  In fact, the Complaint does not contain any specific allegations directed to wH Law, but instead are couched in terms of "group pleading" that would presumably apply to all 113 defendants.  For instance, Plaintiffs' retaliation-based allegations are that Plaintiffs have a constitutional right to access the courts and the right to participate in an investigation designed to determine whether a homicide occurred, some defendants might have participated in and induced a "cover up" of the alleged homicide, and that "Defendants deprived each Plaintiff of

their constitutional rights without Due Process by obtaining an Order designed to smear the Plaintiffs[,]" and that those actions "undertaken by the Defendants would chill a reasonable person of ordinary firmness." (Doc. 1, at ¶¶ 83–86). None of these allegations relate to wH Law in any way.

Plaintiffs' Complaint does not plausibly allege a retaliation claim against wH Law. Plaintiffs' allegations as to wH Law relate exclusively to wH Law's representation of Mr. Westbrook in the litigation filed by Plaintiffs against Mr. Westbrook and the corresponding counterclaim filed in that action. There are no allegations that plausibly connect wH Law to any interference with Plaintiffs' access to the courts, their ability to participate in an alleged homicide investigation, or that wH Law played any role in "obtaining an Order designed to smear the Plaintiffs." [3] Accordingly, Plaintiffs have not plausibly alleged a retaliation claim against wH Law and the claim should be dismissed.

### G.   Plaintiffs have failed to state a claim against wH Law for civil conspiracy.

Plaintiffs' claim that wH Law engaged in a "conspiracy to violate Plaintiffs' constitutional rights" should also be dismissed pursuant to Rule 12(b)(6). To recover for a conspiracy to violate Plaintiffs' civil rights, Plaintiffs must prove four elements: (1) the existence of a civil conspiracy; (2) that the purpose of the conspiracy was to deprive them either directly or indirectly of their civil rights; (3) that a conspirator did an act in furtherance of the object of the conspiracy; and (4) damages, shown by demonstrating either injury to person or property or the deprivation of a civil right. *See Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999). Arkansas does not recognize

---

[3] The facially deficient constitutional claims against purported state actors are the only plausible basis for federal question jurisdiction arising in this Court. *See* Fed. R. Civ. P. 12(h)(3); *Robinson v. Pulaski Tech. Coll.*, 698 F. App'x 859, 859 (8th Cir. 2017); *Wilson v. Miller*, 821 F.3d 963, 971 (8th Cir. 2016) (affirming dismissal of state law claims); *Chernin v. United States*, 149 F.3d 805, 813–14 (8th Cir. 1998). The gist of Plaintiffs' Complaint is to assert various state law claims.

a claim for civil conspiracy arising from actions taken by an attorney in furtherance of the legal representation of a client. *See Born v. Hosto & Buchan*, PLLC, 2010 Ark. 292, at 10, 372 S.W.3d 324, 332 (2010); *see also McDaniel v. Nationstar Mortg., LLC*, No. 4:13CV00217 BSM, 2014 U.S. Dist. LEXIS 21063, at *2 (E.D. Ark. Feb. 20, 2014).

The Complaint's allegations in support of the conspiracy claim also fail to plausibly allege any such claim against wH Law, who are not state actors who can deprive Plaintiffs of constitutional rights. The allegations related to this claim focus almost exclusively on the sanctions and dismissal order entered by the Circuit Court of Jefferson County and Plaintiffs' apparent belief that the only reason the sanction would have occurred is widespread and uncontrolled corruption. (Doc. 1, at ¶¶ 97–117). But as discussed above, wH Law was not involved in the wrongful death litigation in the Circuit Court of Jefferson County nor was wH Law involved in procuring the sanctions order in any way. Plaintiffs make passing reference to wH Law's involvement in representing Mr. Westbrook in his counterclaim (*id.*, at ¶ 118), but the Complaint otherwise fails to allege any facts to plausibly allege wH Law was involved in Plaintiffs' widespread conspiracy. Instead, the allegations and documents embraced by the pleadings simply confirm that wH Law represented Mr. Westbrook in a lawsuit filed by Plaintiffs and asserted a legal malpractice counterclaim in response to Plaintiffs' attempt to obtain a declaratory judgment on whether legal malpractice occurred.

It strains credulity to believe that wH Law's defense of a client and assertion of a corresponding counterclaim in a lawsuit wholly unrelated to the wrongful death claim pending in the Circuit Court of Jefferson County makes wH Law part of a conspiracy related to the dismissal of that wrongful death claim. Accordingly, the Court should dismiss Plaintiffs' claim that wH Law engaged in a "conspiracy to violate Plaintiffs' constitutional rights" pursuant to Rule 12(b)(6).

### H.     Plaintiffs have failed to state a claim against wH Law for defamation.

The Court should dismiss Plaintiffs' defamation claim as to wH Law because (1) the claim is barred by the statute of limitations; (2) the claim is barred by the litigation privilege; and (3) the Complaint fails to plausibly allege a defamation claim as to wH Law.  Each of these is an independent basis to dismiss the claim, but all three serve to defeat Plaintiffs' claim here.

#### 1.     The defamation claim is time-barred.

Plaintiffs' defamation claim is barred by the statute of limitations.  Defamation has a one-year statute of limitations.  Ark. Code Ann. § 16-56-104(3); *Delaney v. Ashcraft*, No 05-6045, 2006 U.S. Dist. LEXIS 100544, at *25 (W.D. Ark. Jan. 20, 2006).  Here, Mr. Westbrook's counterclaim that forms the basis of Plaintiffs' claims against wH Law was filed on February 4, 2020.  (*Westbrook Counterclaim*, attached as Exhibit C).  Plaintiffs' Complaint, however, was not filed until February 6, 2023.  (Doc. 1).  Because the defamation claim was not asserted until more than three years after the alleged conduct occurred, the claim is barred by the statute of limitations and should be dismissed with prejudice.  *See Delaney*, 2006 U.S. Dist. LEXIS 100544, at *26 (recommending dismissal with prejudice when defamation claim was filed outside of one year statute of limitations).

#### 2.     The defamation claim is barred by the litigation privilege.

wH Law is entitled to dismissal of Plaintiffs' defamation claim based on what is commonly known as the "litigation privilege."  Arkansas courts have recognized this privilege for over 100 years.  In *Mauney v. Millar*, 142 Ark. 500, 219 S.W. 1032 (1920), the Arkansas Supreme Court held that an attorney has an absolute privilege to make statements in pleadings regardless of their truth or the existence of actual malice on the part of the attorney so long as the statements are relevant and pertinent to the pleadings.  The Supreme Court followed *Mauney* in *Pogue v. Cooper*, 284 Ark. 202, 680 S.W.2d 698 (1984), a case in which the plaintiff alleged that he was libeled by

pleadings filed by the defendants in an earlier lawsuit.  The *Pogue* court explained that the privilege defense presents a question of law, not of fact. *Pogue v. Cooper*, 284 Ark. 202, 205–06, 680 S.W.2d 698, 700 (1984). Citing Section 586 of the Restatement of Torts (Second), the court held that "[a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Id.*

In short, the Arkansas Supreme Court held that an absolute privilege attaches to allegations made by an attorney in a pleading filed with the court, as long as the statements alleged to be defamatory were relevant and pertinent to the issues in the case. *See id.* The United States District Court for the Eastern District of Arkansas has likewise recognized and applied the privilege.  *See Jones v. Clinton*, 974 F. Supp. 712, 730 (E.D. Ark. 1997) (holding the litigation privilege "covers statements made by both attorneys and parties to the possible litigation" and finding the statements at issue were made prior to possible litigation and that they had a connection with the possible litigation and, thus, dismissed the defamation claim).

Here, Plaintiffs' defamation claim as to wH Law can only be based on the statements made in the counterclaim wH Law filed on behalf of Mr. Westbrook in the litigation filed by Plaintiffs. (Doc. 1, at ¶¶ 12, 14).  The litigation privilege, however, squarely bars Plaintiffs' defamation claim based upon those pleadings.  To be sure, Plaintiffs allege "Defendants made defamatory statements outside the pleadings in order to destroy [Plaintiffs]" (*id.*, at ¶ 122), but this is merely a conclusory allegation that provides no factual support and falls far short of plausibly alleging that wH Law defamed Plaintiffs.  The litigation privilege bars Plaintiffs' defamation claim and the Court should dismiss that claim as to wH Law with prejudice.

### 3. The Complaint fails to plausibly allege a defamation claim.

Even if the claim was not barred by the statute of limitations or the litigation privilege, Plaintiffs' defamation claim should be dismissed for failure to allege facts sufficient to plausibly state a defamation claim. Under Arkansas law, defamation has six elements: (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) the damages suffered by the plaintiff. *Librace v. Wright*, No. , 2017 U.S. Dist. LEXIS 181570, at *3 (E.D. Ark. Aug. 14, 2017) (citing *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, 473 S.W.3d 60, 67).

Plaintiffs' Complaint does not identify what specific defamatory statement wH Law purportedly made about Plaintiffs, that any such statement identified or referenced Plaintiffs, that wH Law published the alleged statement, that the alleged statement was false, or that Plaintiffs suffered any damages specifically caused by the alleged statement. As a result, Plaintiffs have failed to sufficiently allege a defamation claim and the claim should be dismissed with prejudice.

### I.   *Plaintiffs have failed to state a claim against wH Law for "abuse of process/malicious prosecution."[4]*

It is unclear whether the Complaint asserts an abuse of process claim, a malicious prosecution claim, or both. Regardless, wH Law is entitled to dismissal of these claims pursuant to Rule 12(b)(6). Actions for abuse of process and malicious prosecution are state law claims that arise from the common law of the state, not federal law. *See Nichols v. Harbor Venture*, 284 F.3d 857, 860 (8th Cir. 2002). The tort of abuse of process focuses on whether a defendant committed an improper, willful act *after* the issuance of process; the tort of malicious prosecution focuses on

---

[4] The Complaint also includes a claim for "interference with contracts," but that claim is not asserted against wH Law. *See* Doc. 1, at ¶¶ 127–131 (directing that claim against "Williams, Henry, [Wright, Lindsey & Jennings LLP], and the Adamses[.]").

the defendant's *motivation* for bringing the lawsuit in the first place—in particular, the defendant's lack of "probable cause" to file suit, and the defendant's "improper motive" for doing so. *Smith v. Cavalry SPV I, LLC*, No. 3:17-CV-3028, 2017 U.S. Dist. LEXIS 148369, at *9 (W.D. Ark. Sept. 11, 2017).

### 1.   The abuse of process claim fails.

"Abuse of process is a narrow tort." *Nat'l Bank of Arkansas v. River Crossing Partner, LLC*, 2011 Ark. 475, 385 S.W.3d 754, 761. In Arkansas, abuse of process claim includes three elements: (1) a legal procedure set in motion in proper form, even with probable cause, and even with ultimate success, but (2) perverted to accomplish an ulterior purpose for which it was not designed, and (3) a willful act in the use of process not proper in the regular conduct of the proceeding. *Union Nat'l Bank v. Kutait*, 312 Ark. 14, 16, 846 S.W.2d 652 (1993). "[A]buse of process is somewhat in the nature of extortion or coercion. The key is improper use of process after issuance, even when issuance has been properly obtained." *Id.* The filing of a vexatious action is insufficient to state a claim for abuse of process. *See id.* (compiling cases).

The Complaint does not plausibly allege an abuse of process claim against wH Law. For example, the Complaint states that "the abuse of process occurred through the issuance of sanctions Order." (Doc. 1, at ¶ 132). As discussed above, wH Law played no role in the sanctions order challenged in the Complaint nor does the Complaint contain any factual allegations to the contrary. Moreover, it is undisputed that wH Law was not involved in the wrongful death claim from which the sanction order was issued. In contrast, wH Law's involvement in the issues identified in the Complaint was limited to representing Mr. Westbrook in a lawsuit filed against him by Plaintiffs and asserting a counterclaim that directly related to

the subject matter of the claim Plaintiffs asserted against Mr. Westbrook.  These alleged actions do not arise to the level of extortion or coercion.

While Plaintiffs contend the counterclaim ultimately caused Plaintiffs to withdraw from some aspect of the wrongful death case, they do not allege wH Law filed the counterclaim for that purpose or for any other "ulterior purpose."  Rather, the fair interpretation of the Complaint and embraced documents establish that Plaintiffs withdrew because of the undisclosed conflict of interest that was identified in the counterclaim; it was not the counterclaim itself that caused any such conflict.  It again strains credulity to believe wH Law committed a tort against Plaintiffs by merely identifying a true conflict of interest that Plaintiffs failed to disclose to their former client, Mr. Westbrook.

Accordingly, the abuse of process claim should be dismissed. *See Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, 372 S.W.3d 324 (assuming there are circumstances where an attorney could be liable for abuse of process, but finding the plaintiffs failed to state such a claim against the lawyer defendants because even if the lawyer defendants filed suit to coerce payment of a debt that was not owed, the plaintiff did not allege the lawyer defendants filed that lawsuit for any ulterior purpose other than to collect on unpaid debts); s*ee also Smith*, 2017 U.S. Dist. LEXIS 148369, at *6–8 (dismissing abuse of process claim when plaintiff failed to allege the "ulterior purpose" behind the defendant's litigation decision and that "[l]umping all four Defendants together an insinuating that each committed some undefined, willful act is not enough to state a plausible cause of action for abuse of process.").

### 2.    The malicious prosecution claim fails.

To prevail on a claim of malicious prosecution, Plaintiffs must prove the following elements: (1) a proceeding instituted or continued by wH Law against the Plaintiffs; (2)

termination of the proceeding in favor of Plaintiffs; (3) absence of probable cause for the proceeding; (4) malice on the part of wH Law; and (5) damages. *South Arkansas Petroleum Co. v. Schiesser*, 343 Ark. 492, 495, 36 S.W.3d 317, 319 (2001).   In the context of a malicious prosecution action, the existence of probable cause is to be determined by the facts and circumstances surrounding the commencement and continuation of the legal proceedings. *Sundeen v. Kroger*, 355 Ark. 138, 143, 133 S.W.3d 393, 396 (2003).   Further, as to the third element, "[p]robable cause for prosecution must be based upon the 'existence of facts or credible information that would induce the person of ordinary caution to believe the accused person to be guilty of the crime for which he is charged." *Smith*, 2017 U.S. Dist. LEXIS 148369, at *8–9.

Here, Plaintiffs have failed to allege a plausible malicious prosecution claim as to wH Law. As for the first element, Plaintiffs' claim fails as a matter of law because it was not wH Law that instituted or continued a proceeding against Plaintiffs.   Instead, it was wH Law's client, and Plaintiffs' former client, Mr. Westbrook who did so.   Likewise, the Complaint fails to plausibly allege the absence of probable cause for Mr. Westbrook's counterclaim.   The Complaint merely concludes that wH Law filed "a frivolous counterclaim in Saline County against the Plaintiffs on 2/4/2020 without probable cause."   (Doc. 1, at ¶ 132).

The counterclaim was not filed without probable cause.   The basis of the counterclaim was that Sutter, Gillham, and Sutter & Gillham, PLLC, violated their fiduciary duty to Mr. Westbrook when they (1) failed to pursue the case and inexplicably dismissed Mr. Westbrook's claims in June 2014 despite Mr. Westbrook paying the required retainer to Sutter, Gillham, and Sutter & Gillham, PLLC; (2) subsequently refiling the case and then filing no pleadings in the matter for the following four years; (3) repeatedly ignoring Mr. Westbrook's efforts to communicate with his lawyers during the life of the case; and (4) then settling the case without disclosing all pertinent information

to Mr. Westbrook.  (*Westbrook Counterclaim*, attached as Exhibit C, at ¶¶ 7–26).  The critical information Plaintiffs Sutter, Gillham, and Sutter & Gillham, PLLC failed to disclose to Mr. Westbrook was the fact that Chad Kelly, the defendant in the hostile work environment suit, had also become a key witness for Plaintiffs Sutter, Gillham, and Sutter & Gillham, PLLC, in their purported wrongful death action pending in the Circuit Court of Jefferson County.  *Id.*, at ¶ 20. Mr. Westbrooks's counterclaim alleged that, had he known about this conflict of interest, he would never have settled his case against Chad Kelly for the amount of the settlement which caused Mr. Westbrook to suffer damages.  *Id.*, at ¶¶ 24–26.

These facts at least support the finding that Mr. Westbrook had probable cause to assert his counterclaim.  *Smith*, 2017 U.S. Dist. LEXIS 148369, at *9 (dismissing malicious prosecution claim when the complaint failed to sufficiently allege a lack of probable cause for the proceeding). As a result, the Court should dismiss the malicious prosecution claim as to wH Law.

### J.      Plaintiffs have failed to state a claim against wH Law for "civil conspiracy/barratry."

Plaintiffs' next assert a claim for "civil conspiracy/barratry," but that claim also fails as a matter of law.  Arkansas case law has little to say about barratry, but other states have explained the essential concept of that claim.  "Barratry is the offense of frequently exciting and stirring up quarrels and suits between other individuals." *Wellin v. Wellin*, 135 F. Supp. 3d 502, 526 (S.C.D.C. 2015) (applying South Caroline law) (internal quotations omitted).   "Barratry is a form of maintenance, which is defined as an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute of defend the suit." *Id.*

Plaintiffs allege "the Adamses, Williams, Henry, WLJ, Bell, Neeley, [and wH Law] advised, procured, encouraged and stirred up Mr. Westbrook who was at such time, and who

remains, a pauper and in indigent circumstances, to commence and prosecute" Mr. Westbrook's

counterclaim for legal malpractice and breach of fiduciary duty.    (Doc. 1, at ¶ 139).

Unsurprisingly, Plaintiffs identify no legal authority upon which they base their barratry claim nor

do they identify any authority from Arkansas that provides for such a claim.  Instead, they again

complain about Mr. Westbrook's counterclaim as evidence that barratry has occurred.

First, Plaintiffs' barratry and conspiracy to commit barratry claim is not cognizable against

wH Law.  The only Arkansas statute that appears to govern the offense of barratry is expressly

limited to non-attorneys.  More particularly, the Arkansas Code provides that "Any person, ***not a***

***member of the Bar of Arkansas***, who shall commit or who shall conspire to commit any act

defined by the law of this state to be barratry or maintenance . . . shall be deemed to have submitted

himself to the personal jurisdiction of any circuit or chancery court having territorial jurisdiction

of the county where the act was committed for disciplinary proceedings in the same manner as if

he were a member of the Bar of Arkansas."  Ark. Code Ann. § 16-22-208(a) (emphasis added).

There is no statutory corollary applying any such prohibition to attorneys like wH Law.[5]  (Doc. 1,

at ¶ 12, alleging Defendant Burks and Haubert are attorneys licensed in Arkansas and operating

under the wH Law firm).  Because the barratry prohibition does not apply to wH Law, the Court

should dismiss this claim.

Second, Plaintiffs' Complaint fails to allege sufficient facts to state a plausible claim for

barratry.  The thrust of Plaintiffs' barratry claim is premised on the belief that Mr. Westbrook's

counterclaim was frivolous and filed for an improper purpose.  As discussed herein, however, Mr.

---

[5] Instead, all legislative attempts to outlaw barratry have failed.  *See, e.g., Bennett v. NAACP*, 236 Ark. 750, 370 S.W.2d 79 (1963) (affirming circuit court's decision finding an Act to define the crime of barratry to be unconstitutional); *Hoban v. Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958) (granting injunction in original action when proposed constitutional amendment that would define the offense of barratry contained an impermissible ballot title).

Westbrook had a reasonable basis, and probable cause, to assert that counterclaim in the lawsuit filed against him by Plaintiffs over the very same legal malpractice and breach of fiduciary duty issues. Plaintiffs have failed to allege a plausible barratry claim and, as a result, the claim should be dismissed.

### K.      Plaintiffs have failed to state a claim against wH Law under the crime victim statute.

Plaintiffs' final claim is brough pursuant to the Arkansas crime victim statute, Ark. Code Ann. § 16-118-107. That statute provides, "Any person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law may file a civil action to recover damages based on the conduct. Ark. Code Ann. § 16-118-107(a). Plaintiffs allege they are the victim of efforts "to bribe or illegally influence a state judicial officer" which culminated in the sanction order dismissing the wrongful death claim with prejudice. (Doc. 1, at ¶¶ 151–152). The Court should dismiss this claim as to wH Law because there are no allegations in the Complaint that allege wH Law had any involvement in procuring the sanction order in the wrongful death case. Nor are there any allegations in the Complaint that wH Law had any role in the wrongful death case in any way. Accordingly, wH Law cannot be said to have been part of any conspiracy "to bride or illegally influence a state judicial officer" and, therefore, wH Law has not committed any felony offense upon which Plaintiffs could base their claim.

### CONCLUSION

For each of the foregoing reasons, the Court should grant this motion and dismiss Plaintiffs' claims against Defendants Chris Burks, Brandon Haubert, and wH Law, PLC, pursuant to Rule 12 of the Federal Rules of Civil Procedure.[6]

---

[6] wH Law further adopts and incorporates by reference the arguments raised by the other defendants in this action.

Respectfully submitted,

BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201
Telephone: (501) 372-6175

By:   Mark W. Hodge, Ark. Bar No. 97205
      mhodge@barberlawfirm.com
      Jerry D. Garner, Ark. Bar No. 2014134
      jgarner@barberlawfirm.com
      Adam D. Franks, Ark. Bar No. 2016124
      afranks@barberlawfirm.com


      *Attorneys for Chris Burks, Brandon Haubert,
      and wH Law, PLC*