# EXHIBIT B

A TRUE COPY, I CERTIFY
FLORA C. BISHOP, Clerk

*Adrianne Moore*

IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
FIFTH DIVISION

KERRY BAKER, AS ADMINISTRATOR OF
THE ESTATE OF JAMES LUKE BAKER,
AND KERRY BAKER INDIVIDUALLY, AND
SAVANNAH BAKER CASE INDIVIDUALLY,
AND GENA DOWNEY BAKER INDIVIDUALLY                          PLAINTIFFS

V.              CASE NO. 35CV-18-1077 (Under Temporary Seal)

BRYAN ADAMS, SKYLAR WILSON,
TRAVIS JONES, CARSON COOK, KARLA COOK,
PRAIRIE WINGS SOUTH LLC, AUSTIN TATE, JOHN TATE,
AND CERTAIN JOHN DOE COMPANIES AND
INDIVIDUAL JOHN AND JANE DOES TO BE DETERMINED
AND PRAIRIE WINGS LODGE, LLC, CHRISTIE ADAMS,
MARY TATE, RELIANCE HEALTH CARE INC,
BRANDON ADAMS, TODD ROSS, AND JOE WHICKER                   DEFENDANTS

**FILED**

JAN  4 2019

LAFAYETTE WOODS, SR.
Circuit Clerk
JEFFERSON COUNTY, ARKANSAS

## AMENDED COMPLAINT

### INTRODUCTION

Comes now Kerry Baker, as duly appointed Administrator of the Estate of James Luke Baker, and also individually, by and through his attorney, Greg Stephens; Gena Baker, by and through her attorneys Sutter & Gillham; and Savannah Baker Case by and through her attorney Marion Humphrey, Esq., and together file this Amended Complaint.

This amended lawsuit, originally filed October 23, 2018, is a cause of action against the defendants for wrongful death, intentional infliction of emotional distress, civil liability for harmful acts committed during commission of a felony, premises liability, negligence, conversion of evidence and property belonging to plaintiff, Luke Baker, and other torts as more particularly set out in the allegations which follow. Liability herein against the defendants is for direct action they took, for liability as principals for actions taken through or by their agents, for liability as a partners or joint venturees for actions taken by the members thereof, or for co-conspirator liability for each of those who agreed to conspire and took at least one overt act in furtherance of the conspiracy. This action is brought by the Estate of Luke Baker for wrongful death and other torts, and by his family members individually for torts directly committed against them after the death of Luke Baker as more particularly set out below. All defendants are

1

not alleged to have participated in every act of tort herein described, but each Count herein describes the alleged tortfeasor for each.

<u>JURISDICTIONAL ALLEGATIONS</u>

1.    The death of Luke Baker ("Luke") occurred between 10:30 p.m. and 10:45 p.m. on the evening of October 24, 2015 in Jefferson County, Arkansas at the Prairie Wings Duck Club where he was a guest of the defendants who owned, directly or indirectly, said property, and Skylar Wilson, co-host, who had also invited him there.  Present at the time of the death were Skylar Wilson ("Wilson"), Carson Cook ("Carson"), and Austin Tate ("Austin or the younger Tate").  The actions of, at least, Skylar Wilson led directly and immediately to the death of Luke Baker.

2.    Based upon information and belief, it is alleged that Wilson shot Luke in the head with the entry wound one inch anterior and superior to his right ear with a .38 caliber weapon in his possession which he then disposed of in some manner.  The gun has not been seen since.  Skylar did these acts with the help of Carson Cook, who assisted in the post-death cover-up in order to protect Wilson and himself, and Austin Tate ("Austin") was involved in the cover-up after Carson had joined in the effort.  Austin's degree of involvement and culpable mental state are subject to proof and unclear at this time.  Wilson and Carson clearly acted intentionally and with malice toward Plaintiffs.  Actions of the other defendants prior thereto also led to the circumstances that caused the death of Luke Baker as detailed later herein.  Immediately after Luke's death, a conspiracy among the defendants was formulated in Jefferson County, Faulkner County, and at other locations within the State of Arkansas and overt acts were committed in Jefferson County and elsewhere in furtherance of that conspiracy.   These acts constituted torts in themselves under several different legal provisions outlined below, and other defendants joined therein later throughout the evening.

3.    The defendants Bryan Adams ("Bryan"), Skylar Wilson ("Wilson"), Travis Jones, Carson Cook ("Carson"), Karla Cook ("Ms. Cook"), Todd Ross ("Ross"), Austin Tate ("Young Tate" or "Austin"), John Tate ("the elder Tate"), Mary Tate, and Christie Adams ("Ms. Adams") reside in Faulkner County.  The defendant Brandon Adams ("Brandon") resides in Arkansas and owns the subject real estate which is the location of the wrongful death in Jefferson County, Arkansas.  He is also an officer and director of Defendant

2

Reliance Health Care Inc. ("Reliance, Inc."), an Arkansas business. Joe L. Whicker, who was originally sued under a misspelled name, Joe "Wicker", then misspelled "Joel" by the defense, all of which is now corrected, resides and owns land in Jefferson County, Arkansas, and his name has been spell-corrected and relates back pursuant to Rule 15(c) of the Arkansas Rules of Civil Procedure. Prairie Wings South, LLC ("P.W. South") and Prairie Wings Lodge, LLC ("P.W. Lodge") are Arkansas companies doing business in this state and own or manage the property known as the Prairie Wings Duck Club ("The Club") in Jefferson County where Luke died due to the negligence of the owners and operators of the Duck Club property. Reliance Health Care, Inc. and perhaps a John Doe company were the employers of Travis Jones at times, as were some of the other defendants, and directed the activities of these agents and co-defendants at times relevant hereto, and thereby are principals to their agency and responsible for any actions taken by them in furtherance of orders by executives of the company. The companies who are defendants are responsible as co-conspirators for actions taken by their agents (Jones, Bryan, Wilson, Brandon, etc.) in furtherance of the conspiracy outlined herein. All defendants who are not natural persons do business in this state and in Jefferson County and Faulkner County, Arkansas.

4.     The John Doe Company is an as yet unidentified company or companies who directed its employees in furtherance of the conspiracy as either employer or principal of other defendant(s) or owners. John or Jane Doe, a natural person (or persons), is an agent of or co-conspirator with others herein or responsible for acts taken relative to this cause of action as either principal, agent, or owner. Both sets of defendants will be identified after discovery but could not as yet be determined due to obfuscation and spoliation by other defendants and destruction of evidence. Upon information and belief said defendants were responsible for the events herein and the resulting damages and are aware of their involvement herein. Heritage Center or Heritage Square or related entities or family trusts may or may not be such a company.

5.     The plaintiffs are all residents of Faulkner County, Arkansas. Kerry Baker, surviving father and Administrator, Savannah Baker Case, surviving sister, and Gena Downey Baker, surviving mother, are the immediate familial survivors of Luke Baker, and are all adults. They are each now represented by separate counsel.

6.      This Court has personal jurisdiction of all parties hereto, as well as subject matter jurisdiction over this matter.  This county is the location where Luke was killed and is the focal point of most of the acts complained of, and pursuant to law, venue lies herein.  At all times herein the defendants were agents of their co-defendants in regard to all acts committed and were co-conspirators in furtherance of the conspiracy and are therefore jointly liable. The defendants have all acknowledged that they have been validly served with process herein.

FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.      On October 24, 2015, four friends, Wilson, Austin, Carson, and Luke Baker went on a joint venture, a hunting trip, to the Prairie Wings Duck Club near Altheimer, Arkansas in Jefferson County.  The joint venturees were invited guests of their hosts, the owners of the Duck Club, who were Brandon, Bryan, Ross, Whicker, P.W. South, LLC, P.W. Lodge, LLC, and one or more Doe defendants.  These owners of the property control all operations thereon as though the property was solely theirs, despite the fact that base legal title and management of the company rests in the names of P.W. South LLC, managed by P.W. Lodge LLC, which also has a property right therein.

8.      Near the end of the evening on October 24, 2015 around 10:30 p.m., give or take a few minutes, there was an altercation or event, between Wilson and Luke wherein a physical confrontation and struggle ensued, resulting in the death of Luke by gunshot wound to the head as already described in paragraph 2 above.  The gun was Wilson's.  Death was instantaneous or within seconds.  Whether anyone other than Wilson visually witnessed the event is known only to Wilson, Carson, and young Tate.  Whether Carson heard the shot, or was in the room also, is known only to him and Wilson.  Austin claims the shot woke him but that he thought someone was test firing a blank powder cartridge and did not respond until summoned by Carson and Wilson.  The evidence of this event was in the exclusive control of these defendants and the death could not have ordinarily occurred without tortious or negligent action since Luke did not commit suicide.  Austin has admitted Luke was not depressed, all who knew him knew he was not depressed, and Austin has stated Luke was not suicidal that evening or any other time.  False rumors of depression have been circulated by other defendants however which continues to cause extreme emotional distress to Plaintiffs.

4

9. Immediately upon recognizing that Luke was dead, there was no rushed effort to contact authorities, or call 911, or get help for Luke. It was over 30 minutes before any such action. Carson insisted upon action by the three surviving friends to protect himself and the others at the expense of their duty to Luke or his family as partners in the duck hunt. Wilson demanded adherence to his version of events that the wound was self-inflicted which was a lie told to prevent an investigation, arrest, or prosecution, for the felonies being committed. Given what Wilson had just done, and the resulting condition of Luke, and the continued presence of a gun, there was no resistance by young Tate to the demands to cover up any evidence that would implicate any of the defendants, and there was no mood to dissent. At some point between Luke's death and 11:15 p.m., the Defendants removed the murder weapon and replaced it with Luke's gun, which had been in the bedroom hanging on the bed post according to reports from earlier in the evening. This fraudulent behavior is a felony crime under the circumstances of this case and constitutes an overt act by Wilson, Carson, and young Tate, thereby forming a conspiracy by the three at that time. Others joined therein later in the evening.

10. Upon information and belief, the three surviving friends over the next hours contacted, in various order, directly or indirectly, through intermediaries, and by various available means, co-defendants Bryan, Karla Cook ("Ms. Cook"), Christie Adams ("Ms. Adams"), Jones, Mary Tate, John Tate ("the elder Tate"), Brandon, Ross, Whicker, and others, with such contacts beginning before any action to summon authorities to the scene. The purpose of these contacts was to enlist these person in the conspiracy that evening to cover up the crimes committed before police authorities could investigate, which they did. The owners, Whicker, Bryan, Brandon, Ross, P.W. South, P.W. Lodge, and Doe defendants or at least one of them acting for them all, gave instructions as to what action should be taken to protect the co-defendants from liability. The three survivors who were at the scene, followed the instructions they were given, and therein these three and the owners took overt acts in concert, and in full agreement and in furtherance of the conspiracy, both tacit and explicit, both understood and expressly acknowledged by word or conduct, both implied and inferred, thereby forming a conspiracy among all defendants to protect their own interests, above all else, in violation of their duty to obey the law or their duties of care and conduct.

5

11.     One of the Adams defendants in his role as an executive of Reliance, Inc. and on behalf of Reliance, Inc., did contact Travis Jones, an employee of Reliance, Inc., agent of Bryan personally, supplier of things illegal, and all around fixer, to speed to the scene and protect the interests of the other defendants, and also himself, by removing evidence, destroying evidence, stealing evidence, absconding with evidence, and helping to mislead authorities and prevent detection of what had actually transpired, and to hide evidence of the drugs that were supplied by him or other defendants, and to dispose of other contraband. The other defendants either knew about the post-death conspiracy, fully agreed with it, or when learning about it, joined in and cooperated with it completely. As such, all defendants who took any overt act are co-conspirators as defined by law. Reliance, Inc. is responsible for the acts of defendants Jones, Bryan, Brandon, or other agents that were taken on behalf of Reliance. The activities of the Club were for the benefit and entertainment of Reliance and its associates and guests, and the costs thereof constituted a deduction on the tax returns of Reliance, Inc. The actions taken by the conspirators were spoliation, false reporting to authorities, compounding, hindering, aiding, abetting, obstructing, theft, and other criminal offenses, all of which went undetected due to a lack of truth or any renunciations by any of the co-defendant conspirators, whether real persons or companies.

12.     The specific acts are numerous, and the identities of which co-defendants committed which overt acts, here or there, is difficult to determine given the number of conspirators; but what is sure is that wholesale sanitizing of the scene, prior to arrival of the team of crime scene investigators occurred. Contraband was destroyed, removed, stolen, or hidden to avoid detection of the truth. Lies were told to authorities and others to conceal the truth that this was a homicide. All co-defendants were generally aware of the actions of each other, did not object, leave the conspiracy, or cure the damage. The deputy coroner and sheriff's investigator were intentionally misled, and some degree of "persuasion" took place by at least some of the defendants to convince others, some perhaps reluctantly, to go along. Those defendants who knowingly lied about this case being a suicide committed an overt act thereby. Defendants whose overt acts in furtherance of the conspiracy involved lying to authorities would be Wilson, Carson, young Tate, Bryan, Ms. Cook, and Doe. When many associates of the defendants in the 2-3 days after the homicide complained of the incredulity of the Russian Roulette story, the defendants, to keep the conspiracy going, created an

6

alternate false story that defendants felt would quiet these objections among associates. This second false story that was circulated among defendants was that Wilson and Luke were at the card table playing a game with Wilson's gun and that Wilson accidently shot Luke, and that due to fear that no one would believe this, the suicide story was concocted. This story circulated at parties and among Reliance employees and associates with the explanation that the suicide story was necessary to prevent Wilson from being "ruined" for what was just an accident. Defendants whose overt conspiratorial acts involved knowingly lying about the cause of death or helping others to lie includes every defendant except possibly P.W. Lodge, P.W. South, Ross, Whicker, elder Tate, and Mary Tate. These six defendants, except perhaps Ross, committed overt acts toward helping the "clean-up", and thereby destroying evidence, in aid of the conspiracy. Ross, became aware of the false stories, and as owner of the premises had an affirmative duty to disclose what he knew pursuant to A.C.A. §12-12-315(a)(1)(A), (L), & (M). His failure to do so was an overt act in violation of A.C.A. 5-3-401.

13.     Luke's body was removed from the scene, over thirty minutes after death, illegally, and by instruction and intention. Those involved in ordering the removal committed overt acts. None of the conspirators ever notified authorities, even during a sixteen-minute 911 phone call, that Luke was dead. If they had, they would have been ordered not to move or disturb the body, which they very much wanted to disturb and relocate, in order to prevent a crime scene investigation at the club which would have revealed facts and evidence which the conspiracy was formed to hide. This would have created liability for Reliance, Inc. and the owners. For this reason, the body was taken to a hospital 20 miles away to relocate the investigators to an emergency room instead of the Club. The gates to the Club were locked by Wilson, Carson, and young Tate upon instruction by an owner to prevent entry by the authorities when they left the crime scene as instructed.

14.     These actions prevented any real investigation, led to the failure to follow normal investigative protocol, failure by the deputy coroner to follow normal coroner's procedure, a failure to timely inform the Sheriff, his Major, or even the chief coroner, all because subordinates relied upon the lies told by Wilson and others in furtherance of the conspiracy. The failure to send the body to the crime lab for autopsy was outrageously accomplished by

7

the conspirators by lying to the deceased's father Kerry Baker, and pressuring him to refrain from asking for an autopsy, so the decision not to have one could be blamed on him, when the decision was not his to make by law, especially under the devastatingly grave circumstances.

15. The illegal relocation of the body caused the hospital ER doctor to sign the death certificate in an attempt by the conspirator co-defendants to obviate the autopsy requirement of the law that applies to coroner cases.

16. As a result, the chief coroner, the Sheriff, and the ranking Major were not fully informed until the body was cleaned, in the morgue, and after evidence was destroyed. Only lower level minions were making decisions, and poor ones at that. The co-defendants divided their labor, some acting at the hospital, some contacting law enforcement, others instructing witnesses, and others cleaning or removing evidence from the scene, the body, the hospital, and elsewhere. Defendants know where the actual weapon is and still they remain silent.

17. The conspiracy remains to this day, and will until dismantled or renounced.

18. More specific allegations and the connection to each tort violation follow below, but as members of a conspiracy, acts in furtherance are liability to all co-conspirators.

19. The Plaintiffs hereby incorporate the original Complaint as if set out word for word herein, and add in this Amended Complaint more specific statements as to each Count. For the record, all paragraphs of this Amended Complaint, including this paragraph and its reference and incorporation of the previous Complaint, are incorporated into each of the three Counts herein.

20. The basic allegations are that Luke Baker was killed by Skylar Wilson and by the actions or negligence of others at the Prairie Wings Duck Club on October 24, 2015 within a few minutes of 10:30 p.m. (and before 10:45 p.m.) in Jefferson County. The identified defendants in this wrongful death tort are Wilson, Carson, young Tate, and all those identified as owners herein, and Travis Jones and those for whom he acted as an agent as described herein. These Defendants and others acting together did create a scenario where Luke Baker died of a non-self-inflicted gunshot wound as a direct and proximate result of acts by Wilson, which were reckless and intentional, and acts by others that were at least negligent, and at most intentional, constituting a wrongful death as defined by A.C.A. §16-62-102 (2016) which statute is incorporated herein by reference.

8

21.    Luke Baker did not commit suicide, accidental or otherwise. Therefore, pursuant to the doctrine of Res Ipsa Loquitur, and assuming the only ones present were Wilson, Carson, and young Tate, and if the only eye witness to the death was Wilson, as is indicated by defendant's answers to interrogatories herein, such death would not have occurred but for the act or acts of Wilson, negligent or greater, and therefore Wilson is responsible for the wrongful death absent him presenting proof to overcome the presumption of the res ipsa doctrine and the legal implication of the spoliation by the Defendants.

22.    Wilson has given various accounts including suicide by close contact wound to the head, death by a game of solitaire Russian roulette, death by accidental dropping of the gun by Wilson himself, and another version known only to Wilson and those who know the truth of Wilson shooting Luke.

23.    The results of the belated private autopsy and investigation by the State Crime Lab, the Jefferson County Sheriff, and the Coroner's Office, when complete, will refute any of these versions told by Wilson at various times other than the latter of these which is homicide. As of now, these investigations remain open and Plaintiffs have been unable to get the final crime lab report or the investigative files of authorities, but have learned that the gun defendants proffered as a suicide weapon did not fire the fatal bullet. This leaves as the only logical conclusion that Wilson threw the gun away after killing Luke.

24.    Plaintiffs allege that Wilson and young Tate, Carson, and Luke were joking with each other that day and Wilson was the brunt of much of the joking about various aspects of his love life. Luke was one of those teasing Wilson. At some point, around 10:30 p.m. with the other two survivors either witnessing, or asleep, depending upon who is believed, Wilson became uncontrollably and impulsively irate with the teasing after consuming alcohol and drugs, while armed with his deadly weapon. Actions then ensued which resulted in Luke being shot fatally due to acts of Wilson after or during a physical altercation.

25.    Such conduct by Wilson, negligent, reckless, grossly negligent, or intentional was one proximate cause of Luke's death.

26.    In addition to the homicide by Wilson, the others at the scene, young Tate, and Carson were also liable for the wrongful death due to both consuming and providing illegal drugs and alcohol to Wilson and Luke while on a joint venture hunting trip with them both. Joint venturees in a hunt have an implied contract or duty whereby each owed a common

9

duty of reasonable care to the others, which Wilson, Carson and Austin breached under the circumstances, and which led to the intoxication of all three, diminished judgment, dangerous behavior, for which all are responsible as agents of each other.

27.    The owners of the Club are also liable for allowing very dangerous conditions at the Club, specifically, providing liquor, guns, drugs, and a secluded location to a person, Wilson, who they knew had acted in a way, which if disclosed, would constitute him being considered a "certain person" prohibited from possessing firearms.  Therefore, supplying such items and access to such an underage person, with a mental history involving paroxysmal impulsive outbursts of uncontrolled rage upon the slightest provocation, constitutes negligent entrustment on the order of handing car keys or a loaded gun to an intoxicated person.  The drugs they consumed were illegal, all three were under the age of 21 so the alcohol was also illegal, such that any defendant who was a supplier thereof is responsible for attendant damage proximately and foreseeably caused.  These illegal substances and guns were supplied by defendants Wilson, Carson, Bryan, and Reliance, Inc. by an agent Travis Jones, and by the owners of the property by their agent(s), Reliance agents other than Jones, and one or more Doe defendants, either directly, as agents, or indirectly by their agent(s).  All defendants were negligent, or worse, in promoting, providing, and accommodating, or by eventually covering up the underage illegal substance abuse by those possessing deadly weapons, some of which weapons were the property of the defendants supplying the substances.  Liability follows under the reasoning of Wallace v. Broyles, 961 S.W.2d 712 (Ark. 1998).

28.    The landowners, P W South, LLC, P W Lodge, LLC, Ross, Brandon, Whicker, and Bryan, and Doe defendants, are liable to invitees or licensees for the dangerous conditions they created or allowed on their property, and the Recreational Land Use Statute does not shield their liability because of their gross negligence or illegal behavior or because the owners charged fees for use of the Club.  In the event the Recreational Use Statute applies, even non-licensees are owed a duty by landowners or hosts to refrain from grossly negligent or illegal behavior, so defendants are nonetheless jointly liable for damages that were proximately and foreseeably caused.

29.    Evidence of defendants' liability can be inferred from their spoliation of evidence, from the homicide itself, from the drinking and drugging attendant thereto, and from all

10

actions taken in concert by them, by the Res Ipsa doctrine, and by common sense, circumstantial evidence, and more. The defendants conspired and hid evidence because they knew they were guilty. Innocent people would not hide the evidence of their innocence. Guilty people hide evidence of their guilt.

30.    The illegal substances and items provided did foreseeably result in the intoxication and lability of Wilson, who had a mental condition, and a propensity towards violence, especially when intoxicated, which was known to all defendants. The drugs also impaired Carson and young Tate from protecting Luke from Wilson, who was unable alone to protect himself from the stronger violent Wilson.  Therefore, defendants failed in their duty to Luke to use reasonable care.

31.    As a direct, and proximate result of defendants' actions and omissions, plaintiff Luke Baker died.  As a further proximate result, Luke's estate and heirs, plaintiffs herein, have been deprived of the presence, kindness, love, companionship, care, protection, advice, financial and other assistance, and support they would have otherwise enjoyed.  They have been severely damaged in an amount to be established according to proof and according to law.  The estate has incurred expenses as a result as well due to the death of Luke Baker and the spoliation.  In addition to liability for wrongful death to the estate and heirs through the Administrator, defendants are also directly liable to the three individual plaintiffs for torts committed against them after Luke's death which caused additional separate damages.  Also, things belonging to Luke's Estate were converted or stolen in the context of the cover-up, included but not limited to the taking of Luke's clothes by some defendant, the taking of Luke's phone by Ms. Cook and Bryan, the erasing of evidence and data therefrom, in order to deprive the owner thereof in violation of law.

32.    Plaintiffs request and demand judgment as set forth below.

33.    All paragraphs in the Complaint before and hereafter are incorporated into each individual Count in this Complaint by reference as if set out specifically therein.

## COUNT ONE – WRONGFUL DEATH
(Brought by Plaintiff Estate)

### A.   Skylar Wilson – Homicide

34.    Skylar Wilson caused the death of Luke Baker on October 24, 2015 at or before 10:45 p.m.  Whether anyone else was in the same room with them is yet to be determined. He disposed of the homicide weapon to cover his crime, and it was replaced by Luke's revolver which was used as what is referred to as a drop gun.  The circumstances of Luke's death indicate there was a struggle between Luke and Wilson ending with Wilson shooting Luke in the head.   The malicious acts of Wilson, outlined previously, were without justification or excuse.

35.    The doctrine of Res Ipsa Loquitur applies to the circumstances of this case to apply the presumption of negligence or more upon Wilson and shift the burden of production to Wilson to overcome or rebut said presumption as the circumstances indicate the evidence was in the sole control of defendants, and Luke's death could not have been caused other than by the fault of others.

36.    The gunshot wound was a "distant" wound as that term is used by medical examiners to exclude close up or contact wound scenarios, such as the death by suicide solitaire Russian roulette lie told by Wilson to authorities.  This means that Wilson's statements to authorities on October 24, 2015 and later were false, and intentionally so, further implicating the spoliation inference of liability from the disposing of the real weapon and from the res ipsa application.  To the extent others present were involved in the act of the shooting, they too would be liable.

### B.   Negligence -Suppliers of Illegal Substances, Dangerous Conditions, Negligent Entrustment

(Against Owners Brandon, Bryan, Whicker, Ross, P.W. South, P.W. Lodge; Suppliers Reliance, Inc., Travis Jones; Facilitators/Participants Wilson, Carson, Austin, and Doe Defendants)

37.    Some of the defendants were, upon information and belief, involved to some degree in the illegal supplying of drugs, alcohol, and other substances or items to those

12

present at the duck club on October 24, 2015 and at times prior thereto. Those implicated in this include Travis Jones, Wilson, Carson Cook, the Club owners, Reliance, Inc. which supplied the finances for the illegal substances and subsidized the activities at the Club, any Doe defendant delivering any substances to the lodge, and any defendant who controlled the premises who supplied, or arranged, or allowed the supply thereof to the hunters. These Defendants knew or should have known that the result of such negligence would be the dangerous scenario of underage substance abuse and intoxication by 20-year-olds possessing firearms, one of whom (Wilson) was dangerous to so entrust, in a remote, isolated, and inaccessible location where the events that occurred were foreseeable and proximately caused by this negligence. Any defendant so involved is liable for wrongful death, regardless of the exact manner of death so long as it was proximately caused or facilitated by drug or alcohol intoxication or negligent entrustment to the volatile Wilson and by said defendants.

38.     Law enforcement reports after the event, attributed by the Sheriff's office to information provided by the defendants themselves, indicated an evening of drugging, drinking, and partying was involved in the resulting death. The defendants in this case have decried any conclusion contrary to or that "flies in the face of" conclusions by authorities, so presumably defendants admit that they agree that these substances contributed to Luke's death as reported. It is unclear as to all of the defendants responsible, but since guests were sometimes charged a fee to use the club, were often supplied with liquor, and the club was used to entertain business associates of the companies who are defendants, including Reliance, Inc., and is used for entertainment purposes, the expenses of which were used as business tax deductions by Reliance, Inc., any of these defendants including Reliance Inc. are liable, subject to proof, notwithstanding the Recreational Use Statute.

39.     As such, the defendants so involved are jointly and severally liable for the foreseeable wrongful death damages proximately caused by their negligent acts or omissions.

40.     All other paragraphs in the Complaint are herein incorporated.

41.     Those who were knowledgable owner-managers of the Club, even if not suppliers of contraband would be liable for allowing such on the property they control, which they did.

C.    Premises Liability For Wrongful Death Against The Owners
(Brought by the Plaintiff Estate Against the Owners and Property Rights Holders)

42.    The defendants who are owners or persons in control of the premises or hosting the guests at the duck club owed a duty of reasonable care to their guests. These Defendants include Whicker, Brandon, Bryan, Ross, P.W. South, P.W. Lodge, Wilson, and Doe Defendants as applicable. As stated above (paragraph 27, etc.) property owners are liable for dangerous conditions on their property of which they have knowledge.

43.    Whether the guests such as Luke were invitees, licensees, non-licensee guests under the recreational use statute, or even trespassers, there is some degree of duty and care by law owed to each of these four classes of persons who are present on the property of another.

44.    Regardless of which status of the above four is imputed to Luke Baker, the duty of care imposed upon the responsible defendants was violated, and breach of the applicable duty of care proximately caused his death. This Count One (C) incorporates the allegations above, as well as those following, to establish the breach of duty of care, and liability to those defendants responsible for the conduct or omissions at the club and lodge, and to the owners or rights holders of the property for the inherently dangerous conditions provided that night.

45.    Illegal intoxicating substances were supplied to underage guests by the hosts of the club or lodge on the date in question. To the extent that intoxication of anyone, including the deceased himself, was a proximate cause of Luke's death, which foreseeably resulted, those supplying intoxicating substances would be liable for the damage resulting therefrom due to their negligence. The Dram Shop Act does not protect those property holders who host a party and provide alcoholic beverages and drugs to a person who cannot lawfully possess them; and there is no immunity from civil liability under the clear negative implication of A.C.A. §16-126-106 (1999). This would allow damage awards to an underage intoxicated victim as well, since underage, especially for drugs. Whether or not a separate cause for premises liability or for recovery in general negligence is applicable in this case, the possibility that such an action could, under certain circumstances be brought, is relevant to the defendants' state of mind as a potential motive to spoliate and conspire to evade that possibility of liability.

14

## COUNT TWO – CIVIL LIABILITY FOR DAMAGING ACTS COMMITTED IN THE COURSE OF COMMITTING A FELONY
(Brought by all Plaintiffs against all Defendants)

46.    Pursuant to Arkansas Code Annotated § 16-118-107 (2017), any plaintiff herein damaged by reason of conduct, of one or more defendants herein, that would constitute a felony under Arkansas law, may recover damages caused or based on that conduct, regardless of whether they are the intended victim of the crime. Even defendants who are not responsible for Luke's death may be responsible under this Count based upon their own conduct as an accomplice or co-conspirator to any crime, if their conduct in connection therewith damages a plaintiff. Also, aiding is an offense equal to the felony aided, and anyone who does any one of the acts enumerated (advising, encouraging, simply agreeing to aid, or just attempting to aid, or failing to make an effort to prevent others) constitutes a felony aiding offense under Arkansas law as described in the above statute and in Costner v. Adams, 82 Ark. App 148 (2003).

47.    The acts committed relevant to this Count include but are not limited to actions which would be proven by a preponderance to constitute:

a.    Manslaughter (reckless homicide) or more (Skylar Wilson) (Title 5, Chapter 10 of the Arkansas Code).

b.    False Report (Skylar Wilson) (A.C.A. 5-54-122(c)(1)(D)) for lying to authorities "to conceal his own criminal activity", a Class D felony.

c.    Hindering (Bryan Adams, Carson Cook, young Tate, the elder Tate, Karla Cook, Travis Jones, Mary Tate, and others) (A.C.A. 5-54-105) in that with purpose to hinder a prosecution of Skylar Wilson for a homicide or felony they hindered by (i) concealing, altering, suppressing facts or things relevant to the investigation, or (ii) supplying false information to law enforcement (§105(a)(6)); or (iii) providing erroneous facts, documents, or instrumentalities (as in a fake gun) to distract or inhibit the true course of the investigation (§105(a)(7)).

d.    Compounding (Travis Jones, Reliance, Bryan) (A.C.A. 5-54-107) by Travis accepting or agreeing to accept a benefit and for the other two providing or agreeing to provide same in return for silence about a crime.

15

e. Theft from Luke (if more than $200, by defendants including Ms. Cook and Bryan) (A.C.A. 5-36-103).

f. Delivery (several defendants including Jones, Reliance, Bryan, Wilson, Carson) (A.C.A. 5-64-438).

g. Conspiracy to Commit or Aid any Class C Felony listed herein (all defendants including Christie Adams) for agreeing at least one of them will, commit or aid in a felony or its planning or commission, and commit an overt act(A.C.A. 5-3-401).

h. Aiding or being an Accomplice to any of these listed offenses, or any other felony felony conspiracy (all defendants) (A.C.A. 5-2-403) by advising, encouraging, failing to prevent, or attempting to aid in the planning or commission thereof.

i. Illegally moving or handling of a body (A.C.A. 5-60-101 provides that a person commits a class C felony if he, except as authorized by law, removes a corpse) (Wilson, Austin, Carson, et al).

48.    The above conduct caused damage to all plaintiffs, including the three surviving family members individually, apart from any liability for wrongful death, in that it falsely portrayed and alleged Luke as a suicide victim, knowingly falsely asserted, when it was known this would damage the survivors financially, emotionally, health-wise, and otherwise, all of which was foreseeable and proximately caused by all the co-conspirator Defendants in order to protect themselves or Wilson from being investigated or charged or sued.

49.    Liability under this Count allows for attorneys' fees and costs herein and such is requested.

50.    The criminal provisions alleged to have been violated by each defendant outlined above only require that a defendant be guilty of one of these offenses to be civilly liable under A.C.A. § 16-118-107 for the damage cause by their conduct during the conspiracy.

51.

## COUNT THREE – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (All Plaintiffs Except the Estate against All Defendants)

52.    All other paragraphs herein are incorporated in this Count.

53.    The actions of the defendants at the time of Luke's death and after, which would have constituted slander if he had survived, and which were done to falsely label Luke as a suicide victim, to protect the other defendants from threats of liability, loss of reputation, loss

16

of advantage or opportunity, loss of social position or wealth, and other things desirable, led to actions individually and in concert by defendants which knowingly inflicted emotional distress and mental anguish upon the three living plaintiffs, and this was done intentionally by defendants to protect themselves, without legal right or purpose, was directed by the agent in charge, believed to be Bryan Adams as the primary control person, and fueled by selfish personal concerns and a total disregard for those damaged and with total disregard for the value of human life, specifically, Luke Baker's. This was accomplished by falsification, misrepresentation, spoliation, and other wrongful acts or in some cases outright crimes. The Plaintiffs were forced and are still being forced to live with the anguish that many believe the lies told by Defendants about the mythical suicide. Plaintiffs continue to anguish over these acts by their former best friends who are concerned only for themselves and their own welfare at the expense of Plaintiffs. Defendants conduct is truly outrageous and so constitutes the tort so named.

54.    As such the plaintiffs are entitled to recover damages for the distress intentionally inflicted, regardless of the verdict on other Counts, for all of the reasons stated above in this Amended Complaint.

DAMAGES

55.    Plaintiffs are entitled to damages for pain and suffering, grief, emotional distress, loss of all the things Luke would have provided including but not limited to support, love, advice, companionship, and all things referred to above previously stated in this Complaint. Plaintiffs are entitled to recover damages personally and in addition to the recovery indirectly from the estate's wrongful death claim as heirs. All plaintiffs are entitled to recover any direct financial loss or expense to which they were put as a result of defendants' conduct, and for costs and attorneys' fees as allowed by law especially on Count Two, plus interest and and costs and any other recovery allowed by law that may be proved, inferred, presumed, or established. Punitive damages against the mastermind, Bryan Adams, chief director of the conspiracy are also requested and should be awarded as allowed by law and as is consistent with the public policy of this state. Punitive damages should be awarded against others if they are proved to have acted likewise.

56.    The Defendants have conceded Kerry Baker was duly appointed as Administrator by virtue of the implication of their allegation that the Estate (and not the heirs) is the only

17

entity with standing to sue in wrongful death, which would only be true if the appointment is valid. Otherwise, the heirs would have standing. Therefore, the damages to Luke himself are brought by the estate, while for torts committed against the individual Plaintiffs directly, damages are separately calculated for the damage caused to each beyond that from what would have been suffered had the truth been told from the outset. Therefore, damages to the individuals are for those caused beyond the actual death due to actions by Defendants afterward and which added even more damage than that caused by the wrongful death itself.

57.    Trial by jury is again respectfully demanded.

Respectfully submitted,

*Greg Stephens*
Greg Stephens, J.D., M.D. (AR 85153)
K. Gregory Stephens, P.A.
P.O. Box 1048
318-453-9707
gregstephens80@aol.com
*Attorney for Kerry Baker and*
*the Estate of Luke Baker*

and
*Marion Humphrey*
Hon. Marion Humphrey (AR 80066)
108 South Rodney Parham
Little Rock, AR  72205
501-801-7612
501-801-7613 (fax)
marionhumphreysr@gmail.com
*Attorney for Savannah Case*

And
*Luther Sutter*
Luther O'Neal Sutter II (AR 95031)
Lucien Gillham (AR 99199)
Tona DeMers (AR 91024)
Sutter & Gillham LLC
310 W. Conway Street
Benton, AR  72015
501-315-1910
lsutter@sglaws.com
lgillham@sglaws.com
tona.demerslaw@gmail.com
*Attorneys for Gena Downey Baker*

18

Certificate of Service

I hereby certify that a copy of the forgoing was served upon all counsel this 31st day of December, 2018 by email copy to the below indicated counsel of record:

Mel Sayes
Matthews, Sanders & Sayes, P.A.
825 West Third Street
Little Rock, AR  72201
msayes@msslawfirm.com
*Attorney for John & Mary Tate, and*
*Austin Tate*

Judy Simmons Henry
Scott A. Irby
Jacob P. Fair
Wright, Lindsey & Jennings LLP
200 West Capital Avenue, Suite 2300
Little Rock, AR  72201
jhenry@wlj.com
sirby@wlj.com
jfair@wlj.com
*Attorneys for Bryan Adams, Skylar Wilson,*
*Travis Jones, Carson Cook, Karla Cook,*
*Prairie Wings South, LLC,*
*Prairie Wings Lodge, LLC, Christie Adams,*
*Reliance Healthcare, Inc., Brandon Adams,*
*Todd Ross and Joe Whicker*

David D. Wilson
Martin A. Kasten
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, AR  72201-3522
wilson@fridayfirm.com
mkasten@fridayfirm.com
*Attorneys for Prairie Wings South, LLC*
*And Prairie Wings Lodge, LLC*

Thomas G. Williams
Quattlebaum, Grooms & Tull PLLC
111 Center Street, Suite 1900
Little Rock, AR  72201
twilliams@qgtlaw.com
*Attorney for Prairie Wings South, LLC*

John E. Moore
Emily M. Runyon
Munson, Rowlett, Moore and Boone, P.A.
Regions Center
400 W. Capitol, Suite 1900
Little Rock, AR  72201
john.moore@mrmblaw.com
emily.runyon@mrmblaw.com
*Attorneys for Karla Cook and Carson Cook*

J. Carter Fairley
Barber Law Firm PLLC
425 West Capital, Suite 3400
Little Rock, AR  72201
cfairley@barberlawfirm.com
*Attorney for Joe Whicker*

*Greg Stephens*
Greg Stephens

19