**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**SUTTER & GILLHAM, P.L.L.C.;
LUTHER SUTTER; and LUCIEN GILLHAM**                    **PLAINTIFFS**

**VS.**                                   **NO. 4:23-cv-78-BSM**

**JUDY SIMMONS HENRY; JACOB FAIR;
SCOTT IRBY; WRIGHT, LINDSEY & JENNINGS LLP;
TOMMY WILLIAMS; BRYAN ADAMS; ERIC BELL;
BRANDON ADAMS; SKYLAR ADAMS; EFREM NEELY;
CHRIS BURKS; BRANDON HAUBERT; WH LAW, PLC; and
JOHN DOES 1–100**                                 **DEFENDANTS**

**BRIEF IN SUPPORT OF
MOTION TO DISMISS OF BRYAN ADAMS, BRANDON ADAMS,
AND SKYLAR ADAMS f/k/a SKYLAR WILSON**

**I.      INTRODUCTION**

Plaintiffs in this case spin a wild tale of conspiracy and corruption in connection with a lawsuit filed in Jefferson County Circuit Court that has since been dismissed with prejudice.  The plaintiffs here represented one of the Jefferson County plaintiffs.  As ruled by the Court in that case, the Jefferson County action was built on baseless fabrications that defendants to that action (including defendants here Bryan Adams, Brandon Adams, and Skylar Adams f/k/a Skylar Wilson (collectively, the "Adams defendants")) were murderers and drug dealers who had conspired to conceal the murder of James Luke Baker.  The Jefferson County action was dismissed with prejudice because the Court ruled that the allegations were baseless, and the plaintiffs and attorneys (including plaintiffs here)

2878361-v1

had engaged in egregious misconduct, including destroying, fabricating, and hiding evidence and tampering with witnesses.

This case seeks to overturn the Jefferson County sanctions order and an order denying these plaintiffs' attempt to intervene as parties in that action after the sanctions order was entered. It also seeks to preemptively exonerate plaintiffs from an attorney disciplinary charge that is allegedly pending against them based on the Jefferson County sanctions order. Finally, it seeks to race to judgment with a lawsuit that the Adams defendants have filed in Faulkner County related to these plaintiffs' (and others') roles in the egregious misconduct in the Jefferson County action.

Plaintiffs' complaint should be dismissed. First, pursuant to Fed. R. Civ. P. 12(b)(1), this complaint should be dismissed for lack of subject matter jurisdiction due to the absence of federal question jurisdiction. Additionally, per the *Rooker-Feldman* doctrine, plaintiffs' failure to exhaust available judicial remedies in state court, plaintiffs' lack of standing, and the *Younger* abstention doctrine, dismissal is proper. Next, plaintiffs' complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) because plaintiffs' complaint is barred by *res judicata* and/or collateral estoppel and because on each of their seven claims, plaintiffs have failed to plead sufficient facts to plausibly state a claim for relief.

## II.    BACKGROUND

This lawsuit is one of many arising out of the October 24, 2015 death of James Luke Baker. On October 23, 2018, Kerry Baker, individually and as administrator of decedent's estate, along with decedent's mother (Gena Downey

Baker) and sister, filed a complaint against the Adams defendants and others in Jefferson County Circuit Court. (Ex. A to Compl., Jefferson County Compl.; Ex. B to Motion, Jefferson County Am. Compl.).

The Jefferson County complaint and amended complaint contained many false allegations, including that defendant Skylar Wilson murdered the decedent, that other defendants were involved in the "illegal supplying of drugs, alcohol, and other substances" to those present on the night of decedent's death, that defendants were involved in a conspiracy to cover up decedent's true cause of death, and that decedent's death was otherwise caused by the defendants' negligent or intentional acts. These allegations were completely baseless. Eventually, the Jefferson County action was dismissed with prejudice as a sanction for the baseless nature of the allegations in that case and the improper conduct (including spoliation, hiding, and fabrication of evidence) committed by the Jefferson County plaintiffs and their attorneys. (Ex. C to Compl., Jefferson County Sanctions Order). Dismissal with prejudice was the only sanction imposed by the Jefferson County sanctions order. (*See id.*)

Plaintiffs here were attorneys for plaintiff Gena Downey Baker in the Jefferson County action, which was filed in October 2018. Defendants here include some of the defendants to the Jefferson County action and some of the defense attorneys in that case. The plaintiffs here voluntarily withdrew from representing Ms. Baker before the sanctions motion was filed. (Ex. H to Compl., Jefferson County Reply to Response to Motion to Intervene 4 (noting date of withdrawal as

February 6, 2020)).  After the sanctions order was entered, the plaintiffs here moved to intervene in the Jefferson County action, which was denied.  (Doc. 1, Compl., ¶ 69).  Plaintiffs did not appeal the denial of their motion to intervene in the Jefferson County action.  (Ex. A to Motion, Jefferson County Docket).

Other litigation and disputes followed.  First, in Faulkner County, the Adams defendants (represented by defendants Wright, Lindsey & Jennings LLP ("WLJ"), Judy Henry, Scott Irby, Jake Fair (originally), (non-defendant Ed Lowther), Efrem Neely, Sr. and Tommy Williams, sued the plaintiffs here (and others) for their role in the egregious misconduct that occurred in the Jefferson County action.  (Ex. B to Compl., Faulkner County Complaint).

In a separate case, plaintiffs here sued their own client, non-party David Westbrook ("Westbrook"), in Saline County Circuit Court, seeking a preemptive declaration that they had not committed malpractice in advising Westbrook to settle a claim against Jefferson County Coroner Chad Kelley.  Westbrook was a non-party witness in the Jefferson County action, and Westbrook's settlement with Kelley became an issue in the Jefferson County action because, while representing Westbrook, plaintiffs here conspired with Kelley to fabricate evidence, including the issuance by Kelley of a new, false death certificate and having Kelley claim authorship of certain notations to photographs when those notations were actually written by one of the attorneys for the Jefferson County plaintiffs.

Westbrook was represented in the Saline County action by Chris Burks, Brandon Haubert, and wH Law, PLC, who are also named as defendants in this

action.  None of the other defendants to this case were parties to or played any role in the Saline County action.  In the Saline County action, Westbrook filed a counterclaim against the plaintiffs here for legal malpractice, and the Saline County Circuit Court granted plaintiffs here summary judgment because Westbrook had done no discovery in that matter and had not presented a malpractice expert in responding to the motion for summary judgment, and the circuit court refused to grant Westbrook more time for discovery based on his lack of diligence in pursuing the counterclaim.  (Ex. I to Compl., Order in Saline County Action).

Finally, plaintiffs allege that there is an attorney disciplinary action pending against them based on their misconduct in the Jefferson County action.  According to plaintiffs, this disciplinary proceeding was initiated by a complaint filed by defendant WLJ and one or more lawyers based on the Jefferson County sanctions order.  (Doc. 1, Compl. ¶ 117).

Plaintiffs have now filed this action, asserting a wild menagerie of constitutional and state-law claims against the defendants to the Jefferson County action (the Adams defendants), some of the defense counsel in the Jefferson County action (WLJ, Judy Henry, Scott Irby, Jacob Fair, Tommy Williams, and Efrem Neely, Sr.), a family and in-house attorney for a company owned by the Adamses (Eric Bell), and non-party Westbrook's attorneys in the Saline County action (Chris Burks, Brandon Haubert, and wH Law, PLC).  At base, plaintiffs seek to overturn the Jefferson County sanctions and intervention orders, to obtain an order

preemptively exonerating them from the pending attorney disciplinary proceedings, and to race to judgment with the Faulkner County action.

A motion and this brief are filed by the Adams defendants.  These are the factual allegations in plaintiffs' complaint that are individually or collectively alleged as to these three separate defendants:

- Defendant Bryan Adams has a social relationship with Faulkner County Circuit Judge David Clark, Judge Clark met with Adams in Adams's office, and shortly thereafter and following a hearing, Judge Clark sanctioned non-party here Greg Stephens (who was another attorney for two other Jefferson County plaintiffs), in a probate proceeding related to the Estate of James Luke Baker.  (Doc. 1, Compl. ¶¶ 21, 22).

- Adams defendants approved of the hiring of defendant Efrem Neely, Sr. as defense counsel in the Jefferson County action.  (*Id.* ¶ 41).

- Adams defendants paid defendant Neely's fees for serving as defense counsel in the Jefferson County action.  (*Id.* ¶ 50).

- "On occasion, Judge Guynn discussed the case with Neeley (sic), at Neeley's (sic) office, after hours, and Neeley (sic) then would contact Eric Bell, or the Adamses, to report what the Judge's decisions would be."  (*Id.* ¶ 55).

- Adams defendants opposed plaintiffs' motion to intervene in the Jefferson County action.  (*Id.* ¶ 69).

2878361-v1                                          6

- Adams defendants filed the complaint in the Faulkner County action and caused to be filed an attorney disciplinary complaint against these plaintiffs. (*Id.* ¶ 70).

- Adams defendants did not name Jefferson County plaintiffs' attorneys Eric Buchannan or Marion Humphrey as parties to the Faulkner County action. (*Id.* ¶ 65).

- Adams defendants caused non-party Westbrook to hire defendants Burks, Haubert, and wH Law, PLC to file a counterclaim in the Saline County action. (*Id.* ¶ 118).

### III.    ARGUMENT

**A.    This complaint should be dismissed for lack of subject matter jurisdiction.**

Under Rule 12(b)(1), a complaint must be dismissed when the district court lacks subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (internal citations omitted). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). When a defendant raises a challenge to a district court's subject matter jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists. *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). Unlike a 12(b)(6) motion, when there is a factual challenge to the court's subject matter jurisdiction, no presumption of truthfulness applies to the allegations in

plaintiff's complaint. *Id.* Further, the court may properly consider affidavits or other documents outside of the pleadings without converting the motion into one for summary judgment. *Id.* at 729. In addition, a district court may exercise power under Rule 12(b)(1) that it never could under Rules 12(b)(6) or 56. *Id.* at 730. Specifically, a district court hearing a 12(b)(1) motion must resolve any factual disputes and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Plaintiffs assert jurisdiction based on federal question, 28 U.S.C. §1331. Compl. (Doc. 1) at ¶6, contending that defendants' conduct in the Jefferson County action deprived them of some constitutional right. Because Adams defendants are private citizens and not attorneys, they are not state actors as a matter of law, (*see* Sect. III B 2 A, *infra*). There is no federal question jurisdiction.

Additionally, jurisdiction is lacking based on the relief sought. Plaintiffs' complaint largely seeks to overturn a sanctions order and an order denying plaintiffs' motion to intervene, both entered by the Jefferson County Circuit Court, and to obtain a ruling preemptively exonerating plaintiffs from attorney disciplinary proceedings that they believe to be pending against them. This Court lacks jurisdiction to grant plaintiffs the relief that they seek.

As to the Jefferson County orders, plaintiffs are improperly seeking to use this federal-court action as an appeal of state-court orders, which is barred by the *Rooker-Feldman* doctrine; plaintiffs did not exhaust their available judicial remedies in state court; and plaintiffs have suffered no injury in fact from the

subject orders and, therefore, lack standing to sue.  In regard to the alleged disciplinary proceeding, the United States Supreme Court and the Eighth Circuit have made state attorney-disciplinary proceedings, specifically including Arkansas disciplinary proceedings, expressly subject to *Younger* abstention.  Plaintiffs' complaint must be dismissed.

**1.      There is no federal question jurisdiction and no reason to exercise supplemental jurisdiction over state law claims.**

Adams defendants are private citizens who plaintiffs wrongfully sued in the Jefferson County action.  None of them are lawyers, and have not represented the interest of the State.  None of them are employed by the State of Arkansas.  Therefore, any alleged actionable conduct as to Adams defendants does not implicate a constitutional issue because they are not state actors.

The law on this point is set forth in Section III B 2 A, *infra.*  Plaintiffs' federal jurisdiction is allegedly based on federal question. 28 U.S.C. § 1331, Compl. ¶6. Because there is no constitutional claim as a matter of law, accordingly, there is no federal question jurisdiction.  U.S.C. § 1331 grants jurisdiction for "civil actions arising under the Constitution, laws, or treaties of the United States."  This case clearly does not arise under the Constitution as alleged.

Plaintiffs assert supplemental jurisdiction of the state law causes of action under 28 U.S.C. § 1367.  Compl. ¶6.  But the statute allows the Court to "decline to exercise supplemental jurisdiction over a claim under subsection (a)" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  Since the Court does not have original jurisdiction, it is requested to

decline to exercise supplemental jurisdiction over plaintiffs' alleged state law claims.

> **2.   The *Rooker-Feldman* doctrine bars plaintiffs' claims based on the orders of the Jefferson County Circuit Court.**

In *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), the United States Supreme Court established that, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005). The *Rooker-Feldman* doctrine applies to a federal suit that is commenced after state court proceedings have ended. *See Dornheim v. Sholes*, 430 F.3d 919, 923 (8th Cir. 2005). "The doctrine bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging 'injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Id.* (*quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)). "The doctrine precludes district courts from obtaining jurisdiction both over the rare case styled as a direct appeal, as well as more common claims which are 'inextricably intertwined' with state court decisions." *King v. City of Crestwood, Missouri*, 899 F.3d 643, 647 (8th Cir. 2018) (cleaned up) (*citing Rooker* and *Feldman*). "A claim is inextricably intertwined under *Rooker–Feldman* if it succeeds only to the extent that the state court wrongly decided the issues before it or if the relief requested would effectively reverse the state court decision or void its ruling." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034–35 (8th Cir. 1999). The Eighth Circuit has generally "been unwilling to create piecemeal exceptions to

*Rooker–Feldman.*" *Id.* at 1035–36.  For example, the Eighth Circuit has refused to create fraud-on-the-court or procedural due-process exceptions to *Rooker-Feldman.* *Id.* (*citing Goetzman v. Agribank, FCB*, 91 F.3d 1173, 1178 (8th Cir. 1996)).

Similarly, just last month, the Seventh Circuit held that claims that a disputed order was obtained through a conspiracy with the state-court judge are barred by *Rooker-Feldman.*  *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 404 (7th Cir. Mar. 14, 2023).  "First and foremost, the Supreme Court has not even hinted that *Rooker-Feldman* is subject to such a corruption exception, and that exception opens up a sizable loophole in this important jurisdictional doctrine." *Id.*  Further, such a claim is inextricably intertwined with a review of the order itself because "the only way a federal court could determine the merits of those allegations would be to review the state court's handling of the case from top to bottom, substantively and procedurally.  If the state court's decisions appeared to be well-grounded in law and fact and reached through fair procedures, a federal court would presumably conclude they were not rooted in bias or corruption.  If the federal court found factual, legal, or procedural errors, the court would have to consider whether the errors were ordinary errors of a fallible human institution or instead the product of corruption." *Id.* at 405.  "*Rooker-Feldman* is supposed to prohibit lower federal courts from engaging in what amounts to appellate review of state court decisions in this manner." *Id.*  By contrast, in *Dennis v. Sparks*, 449 U.S. 24 (1980), which is expressly cited in Paragraph 101 of plaintiffs' complaint, the injunction at issue "was dissolved by [a state] appellate court as having been illegally issued" before

the filing of the federal complaint in that matter, so the federal complaint in *Dennis* would not have implicated the *Rooker-Feldman* doctrine. *Id.* at 25.

Here, Counts I, II, III, IV, V, and VII of plaintiffs' complaint are all based, at least in part, on the Jefferson County sanctions and intervention orders. The *Rooker-Feldman* doctrine applies here because, as to these plaintiffs, this federal suit was commenced only after state-court proceedings had ended. *See Dornheim*, 430 F.3d at 923. To that end, the Jefferson County order denying these plaintiffs' motion to intervene was appealable in state court, but these plaintiffs chose not to do so. *Duffield v. Benton Cnty. Stone Co.*, 369 Ark. 314, 316, 254 S.W.3d 726, 728 (2007) (holding that denials of intervention as a matter of right and permissive intervention are both immediately appealable); (Ex. A to Motion, Jefferson County Docket). Had plaintiffs prevailed on appeal from the intervention order, they then would have been allowed to challenge the sanctions order in state court. *See Pearson v. First Nat. Bank of DeWitt*, 325 Ark. 127, 131, 924 S.W.2d 460, 462 (1996) (reversing denial of intervention motion and ordering that intervenor be allowed to challenge order appointing receiver). The sanctions order, likewise, expressly states that it is a final judgment, and plaintiffs' former client, Gena Downey Baker, never appealed from that judgment. (Ex. A to Motion, Jefferson County Docket). Thus, while another Jefferson County plaintiff appealed from the sanctions order (*see* Doc. 1, Compl. ¶ 33), litigation in the Jefferson County action has completely ended as to all plaintiffs in this case and their former client in the Jefferson County action.

Rather than appeal the Jefferson County orders through appropriate state-court procedures, plaintiffs here are asking this Court to sit as an appellate judge over the Jefferson County Circuit Court and review its orders, all in violation of the *Rooker-Feldman* doctrine. To that end, plaintiffs allege that the Jefferson County sanctions and intervention orders were improperly entered based on an alleged conspiracy between defendants here and the circuit judge. (Doc. 1, Compl. ¶ 69). Indeed, plaintiffs expressly allege that these orders were "void for lack of Due Process," "false," addressed issues that "had been determined by the Circuit Court of Saline County" (where no defendant here was a party), "unjust," and contrary to allegedly "substantial evidence Luke Baker did not commit suicide." (*Id.* ¶¶ 98, 99.) Plaintiffs further include a more than eight-page long paragraph of what they believe was sufficient evidence to prove claims in the Jefferson County action. (*Id.* ¶ 32). One of plaintiffs' express aims, further, is to avoid any preclusive effect being given to the Jefferson County sanctions order, and plaintiffs expressly state that they are trying to obliterate use of the sanction order in the Faulkner County case against the plaintiffs here. (*Id.* ¶ 71). Just as in *Hadzi-Tanovic*, plaintiffs' claims would require this Court "to review the state court's handling of the case from top to bottom, substantively and procedurally." *See* 62 F.4th at 405. Plaintiffs cannot prevail on their claims in this case without having this Court thoroughly review and overturn the Jefferson County sanctions and intervention orders. As such, plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and should be dismissed.

2878361-v1                                                    13

**3.      Plaintiffs failed to exhaust available judicial remedies in state court before bringing suit related the Jefferson County sanctions and intervention orders.**

The first two claims in plaintiffs' complaint rest on allegations that the Jefferson County sanctions and intervention orders were entered without providing plaintiffs their alleged procedural due process rights. (*See* Doc. 1, Compl., ¶¶ 85, 111, 112.) "Exhaustion of state remedies is necessary before any federal procedural due process allegations state a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000). A party who has "not requested judicial review by a state appellate court" has "not exhausted the state remedies available." *Id.* A dismissal for failure to exhaust available judicial remedies is properly "made pursuant to Fed. R. Civ. P. 12(b)(1) because the case is not ripe for adjudication." *Id.*

Plaintiffs could have appealed from the denial of their motion to intervene in the Jefferson County action, and if successful in such an appeal, plaintiffs then would have been allowed to challenge the sanctions order in state court. *See Duffield v. Benton Cnty. Stone Co.*, 369 Ark. 314, 316, 254 S.W.3d 726, 728 (2007); *Pearson v. First Nat. Bank of DeWitt*, 325 Ark. 127, 131, 924 S.W.2d 460, 462 (1996) (reversing denial of intervention motion and ordering that intervenor be allowed to challenge order appointing receiver); (Ex. A to Motion, Jefferson County Docket). Because plaintiffs failed to exhaust available judicial remedies in state court as to the Jefferson County sanctions and intervention orders, this Court lacks jurisdiction over the procedural due-process claims asserted in Counts I and II of plaintiffs' complaint.

### 4. Plaintiffs lack standing to challenge the Jefferson County sanctions and intervention orders.

"[I]f a plaintiff lacks standing, the district court has no subject matter jurisdiction." *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002). Accordingly, challenges to a plaintiff's standing to sue are properly raised under Rule 12(b)(1). *Id.* To establish standing, the plaintiff must demonstrate that he or she has suffered an injury in fact, that this injury was caused by the conduct of the defendant, and that this injury is likely to be redressed by a favorable ruling from a federal court. *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000). Standing is determined as of the lawsuit's commencement, so the federal district court must consider the facts as they existed at that point. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000).

"Counsel have standing [related to] orders issued directly against them, but not from orders applicable only to their clients." *Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993). Further, "[a]n interest unrelated to injury in fact is insufficient to give a plaintiff standing." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000). Thus, for example, like an attorney on a contingent fee contract, a *qui tam* relator has no independent standing to sue because "the 'right' he seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails." *See id.* at 773. Finally, "[t]ime and again the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1031 (8th Cir. 2014).

Notably, the sanctions order takes no action against plaintiffs; indeed, it does not make any direct reference to plaintiffs or even use their names at any point. (*See generally* Ex. C to Compl., Sanctions Order.)  The sanctions order simply dismisses plaintiffs' former client's complaint with prejudice.  (*Id.*)  Further, just as in *Stevens*, plaintiffs' claimed interest in any award of attorneys' fees and their alleged lien are too tenuous and unrelated to the alleged injury in fact to confer standing, particularly when one looks at the procedural posture of the Jefferson County action.  (*See* Compl., ¶¶ 90–92).  Specifically, at the time of the sanctions order, plaintiffs' then former client had moved to voluntarily dismiss her Jefferson County claims.  (Ex. A to Motion, Jefferson County Docket; Ex. E to Compl., 6/2/21 Hearing Transcript, at 8.)  Thus, the question in the Jefferson County action was whether the case would be dismissed with or without prejudice.  Its dismissal was already assured, so plaintiffs' former client never could have recovered in that action, and plaintiffs never could have obtained any fees from that action.  It is pure speculation and conjecture to suggest that but for the sanctions order, (1) plaintiffs' former client would have re-filed the Jefferson County action; (2) plaintiffs' former client would have prevailed in that re-filed action and obtained an award of attorneys' fees; and (3) a court would find that plaintiffs had a legal right to a fee in the re-filed lawsuit, notwithstanding the fact that these plaintiffs had voluntarily withdrawn from representing their former client before the original Jefferson County action was dismissed.  Plaintiffs' complaint should be dismissed due to plaintiffs' lack of standing.

Plaintiffs' complaint offers two other theories of standing, and on these, plaintiffs should be put to their proof so that this Court can satisfy itself that it does or doesn't have jurisdiction in this matter. The first is that at least one client, Lee Davis, "fired the Plaintiffs without cause because of the Order filed in this matter and the defamatory statements outside the pleadings." (Doc. 1, Compl. ¶ 129). The exhibit plaintiffs attached to their complaint, however, shows only that plaintiffs withdrew from representing Dr. Davis. (*See* Ex. K to Compl.) Further, as noted, the Jefferson County sanctions order does not mention plaintiffs, nor does plaintiffs' complaint ever identify the alleged "defamatory statements outside the pleadings," by Adams defendants which makes it highly speculative to suggest that the order could have caused the reputational harms on which plaintiffs appear to rest their standing to sue. Plaintiffs have offered nothing to support their allegation that Dr. Davis or any other client terminated plaintiffs' representation due to some conduct by Adams defendants or any other.

The final theory of standing articulated in plaintiffs' complaint is that the allegedly pending attorney-disciplinary proceeding has prevented them from obtaining admission in other states. (Compl. ¶ 117). Plaintiffs offer nothing to support this conclusory allegation. They do not identify to what states they have applied for admission, whether they applied for admission *pro hac vice* or full admission, whether those other states actually rejected their applications, why any other state rejected their applications, or what provision of any state's law would prohibit plaintiffs from obtaining admission based solely on the pendency of an

alleged attorney-disciplinary proceeding.  This theory of standing must fail with nothing but plaintiffs' threadbare allegations to support it.

> **5.    The *Younger* abstention doctrine requires the dismissal of any claims related to any attorney-disciplinary proceeding against plaintiffs.**

"The *Younger* abstention doctrine, as it has evolved, provides that federal courts should abstain from exercising jurisdiction when (1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding."  *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010).  *Younger* abstention applies to pending state attorney-disciplinary proceedings.  *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The Eighth Circuit, further, has expressly held that Arkansas state attorney-disciplinary proceedings meet the second and third requirements of *Younger* abstention.  *Plouffe*, 606 F.3d at 893–94.

Here, plaintiffs' complaint expressly alleges that there is a state attorney-disciplinary proceeding pending against them.  (Doc. 1, Compl. ¶ 117).  Plaintiffs allege that this proceeding was initiated based on a "frivolous Complaint" filed by "WLJ, and one or more of its lawyers," and they seek damages related to this disciplinary proceeding.  (*Id.*)  Under *Plouffe* and *Middlesex County*, this Court should abstain from exercising any jurisdiction in this matter as to any claim related to any alleged state disciplinary proceeding pending against plaintiffs.

**B.**   **Plaintiffs' complaint should be dismissed under Rule 12(b)(6) because plaintiffs have failed to allege any plausible claims against these defendants.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 525 (8th Cir. 2017) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible if the complaint "pleads factual content that allows the court to draw the reasonable inference" that defendants are liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a Complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.*  Thus, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Id.*  Plaintiffs have not met this standard as to any of the claims asserted in their complaint.

**1.**   **Plaintiffs' claims are barred by *res judicata* and/or collateral estoppel.**

If apparent from the face of the complaint, documents attached to the complaint, and public records, a *res judicata* defense may be raised by a motion to dismiss.  *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763 (8th Cir. 2012).  In determining whether *res judicata* applies, "[t]he law of the forum that rendered the first judgment controls the res judicata analysis."  *Schwartz v. Bogen*, 913 F.3d 777, 781 (8th Cir. 2019) (applying state law to determine preclusive effect of state-court judgment in ERISA action).  At issue here is the Jefferson County

2878361-v1                                          19

sanctions order, which dismissed that amended complaint with prejudice. As such, Arkansas law controls defendants' *res judicata*/collateral estoppel defense.

The doctrine of *res judicata* precludes a party from re-litigating a claim that has already been decided or could have been decided. *McAdams v. McAdams*, 357 Ark. 591, 595, 184 S.W.3d 24, 27 (2004). In Arkansas, the "test in determining whether *res judicata* applies is whether the matters presented in a subsequent suit were necessarily within the issues of the former suit and might have been litigated therein." *Am. Standard, Inc. v. Miller Eng'g, Inc.*, 299 Ark. 347, 351, 772 S.W.2d 344, 346 (1989); *Carmical v. City Of Beebe*, 316 Ark. 208, 211, 871 S.W.2d 386, 388 (1994). There are five essential elements to a *res judicata* defense: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully conducted in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies. *Jayel Corp. v. Cochran*, 366 Ark. 175, 178, 234 S.W.3d 278, 281 (2006). The key question regarding the application of *res judicata* is whether the party against whom the earlier decision is being asserted, or those in privity with that party, had a full and fair opportunity to litigate the issue in question. *Van Curen v. Ark. Prof'l Bail Bondsman Licensing Board*, 79 Ark. App. 43, 54, 84 S.W.3d 47, 55 (2002); *Brandon v. Ark. W. Gas Co.*, 76 Ark. App. 201, 210, 61 S.W.3d 193, 199 (2001).

Here, the face of plaintiffs' complaint and documents attached to the complaint demonstrate that all five elements are met. As a result, this case must be dismissed:

- First, under Arkansas law, a dismissal with prejudice is a final judgment on the merits for purposes of *res judicata*. *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 474–75, 199 S.W.3d 45, 47 (2004); *Curry v. Hanna*, 228 Ark. 280, 283, 307 S.W.2d 77, 80 (1957) ("The rule appears to be well established that a 'dismissal with prejudice' is equivalent to a final judgment insofar as the application of *res judicata* is concerned."); *Seaboard Fin. Co. v. Wright*, 223 Ark. 351, 266 S.W.2d 70 (1954) (holding that a dismissal with prejudice is a "final adjudication on the merits" for purposes of *res judicata*.) Further, "Arkansas follows the majority rule that a judgment is final for purposes of issue preclusion, despite a pending appeal for a review of the judgment, unless the appeal actually consists of a trial de novo." *John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 637, 855 S.W.2d 941, 943 (1993). Here, the Jefferson County sanctions order dismissed the complaint in that matter with prejudice and neither plaintiffs nor their former client appealed. As a result, the first element of *res judicata* is satisfied here.

- Second, Arkansas circuit courts are "trial courts of original jurisdiction of all justiciable matters." Ark. Code Ann. 16-13-201(a). Thus, the Jefferson County Circuit Court had jurisdiction over the complaint in that matter.

- Third, these plaintiffs' former client was served with the Jefferson County sanctions motion and appeared and defended that motion at a hearing. (Ex. C to Compl., Jefferson County Sanctions Order, 1–2, 6). Plaintiffs cannot now claim that they (or former client Gena Downey Baker, with whom they are in privity) did not have a full and fair opportunity to litigate the claims.

- Fourth, this lawsuit and the Jefferson County action involve the same claim or cause of action. "*Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, res judicata will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *State Off. of Child Support Enf't v. Willis*, 347 Ark. 6, 13, 59 S.W.3d 438, 443 (2001). Here, this complaint arises out of the same basic incident, the death of James Luke Baker, as the complaint and amended complaint in the Jefferson County action. Indeed, the prayer to plaintiffs' complaint here expressly seeks a declaratory judgment as to the cause of Baker's death, and paragraph 32 of the complaint here largely quotes from the statement of facts in the Jefferson County complaint. (*Compare* Doc. 1, Compl. ¶ 32, *with* Ex A. to Compl, Jefferson County Compl. ¶¶ 6–33 *and* Ex. B to Motion, Jefferson County Am. Compl. ¶¶ 7–31). Moreover, the Jefferson County sanctions order specifically addressed the

litigation conduct of the plaintiffs in that case and their attorneys, and plaintiffs here seek to challenge those findings as false. (Compl. ¶ 98).

- Finally, this lawsuit involves the same parties or those in privity with them as the Jefferson County action. An attorney-client relationship is sufficient to satisfy the privity requirement of *res judicata*. *Jayel Corp. v. Cochran*, 366 Ark. 175, 182, 234 S.W.3d 278, 284 (2006). Plaintiffs here were counsel of record for plaintiff Gena Downey Baker in the Jefferson County action. Defendants here, including the defendants filing this motion, include the defendants to the Jefferson County action and their attorneys.

In sum, all of the elements of *res judicata* are satisfied, and plaintiffs are barred from any further attempt to litigate this matter. As a result, plaintiffs' complaint should be dismissed.

In the alternative, under Arkansas law, "[c]ollateral estoppel, or issue preclusion, bars relitigation of issues, law or fact, actually litigated in the first suit." *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 581, 864 S.W.2d 244, 246 (1993). Collateral estoppel requires proof of the following elements: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) that issue must have been actually litigated, (3) the issue must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment. *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 581, 864 S.W.2d 244, 246 (1993). Again, the Jefferson County sanctions order expressly finds that the

allegations in that matter were "baseless" and addresses the conduct of the Jefferson County plaintiffs and their attorneys, including plaintiffs here. The Jefferson County sanction order bars any attempt to relitigate the facts underlying that lawsuit (including the cause of death of James Luke Baker) or the propriety of the conduct of plaintiffs in this matter in their representation of Gena Downey Baker in the Jefferson County action.

> **2.    Counts I and II:  Plaintiffs' complaint does not state a constitutional claim for retaliation or conspiracy to deprive plaintiffs of their procedural due process rights.**

Counts I and II of plaintiffs' complaint attempt to assert two constitutional claims against defendants under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act: (1) retaliation for plaintiffs' exercise of their alleged First Amendment right to pursue the Jefferson County action; and (2) conspiracy to violate plaintiffs' procedural due process rights in connection with the Jefferson County sanctions order and intervention order.  (Doc. 1, Compl. 82–126).

Plaintiffs have not plausibly alleged that defendants were state actors, plaintiffs have not otherwise adequately pleaded either claim, and these claims were waived by plaintiffs' express waiver of any conflict caused by defendant Neely's entry into the Jefferson County action, plaintiffs' voluntary withdrawal as counsel of record in that action, and plaintiffs' failure to appeal from the denial of their motion to intervene.  These claims should be dismissed.

2878361-v1                                    24

A.   **As private parties in the Jefferson County action, the Adams defendants were not state actors, nor have plaintiffs adequately alleged a conspiracy with the Jefferson County circuit judge.**

To support any constitutional claim, the defendant must be "a person acting under color of state law." *DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). When as here, the alleged basis for state action is a corrupt conspiracy with a state judge, "[t]he key inquiry is whether the private party was a willful participant in the corrupt conspiracy." *DuBose*, 187 F.3d at 1002. A "wholly conclusionary" allegation of conspiracy that "is naked of any supporting facts" does not state a claim. *Harley*, 539 F.2d at 1146. Instead, plaintiffs must plead and prove facts to plausibly show "that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding, and provide facts which would establish a meeting of the minds." *Id.* "A simple display of cordiality between a judge and the lawyer for one party" and "*ex parte* contact between the judge and these lawyers" are not sufficient to demonstrate the existence of a corrupt conspiracy for purposes of proving state action, even if these violate ethical norms. *Id.* Further, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).

The entirety of plaintiffs' factual allegations[1] of a conspiracy are (1) defendant Neely is a former law partner of the Jefferson County circuit judge (Doc.

---

[1] Plaintiffs elsewhere include conclusory allegations reciting the requirements of a corrupt conspiracy as outlined in *Dennis* and *DuBose* and baldly assert that these are met here, but legal conclusions and "formulaic recitation of the elements of a cause of action" do not have to be accepted

1, Compl. ¶ 41); (2) "Neely was hired for the specific purpose of influencing [the Jefferson County circuit judge] and because he was black" (*Id.* ¶ 43); (3) the Jefferson County circuit judge typically recused from Neely's cases but did not in the Jefferson County action (*Id.* ¶ 44); (4) "Neely and [the Jefferson County circuit judge] met after hours at Neely's law office during the pendency of the Jefferson County litigation" and "communicated about the case *ex parte*" (*Id.* ¶¶ 49, 52); and (5) "Neeley (sic) then would contact Eric Bell, or the Adamses, to report what the decisions would be" (*Id.* ¶ 55).  At most, and accepting these false and defamatory allegations as true only because the standard of review requires this Court to do so, plaintiffs have alleged only that defendant Neely and the Jefferson County circuit judge have a cordial relationship and communicated *ex parte* regarding the case. Under *DuBose* and *Harley*, those bare allegations are expressly insufficient to plausibly state a corrupt conspiracy between these three private party defendants and the Jefferson County circuit judge.  As such, plaintiffs' constitutional claims must be dismissed.

### B.    Plaintiffs have not adequately pleaded a claim of retaliation.

Count I of plaintiffs' complaint is an alleged constitutional retaliation claim. To succeed on a § 1983 retaliation claim, plaintiffs must prove:

(1)    Plaintiffs engaged in protected activity;

(2)    Defendants, to retaliate for the protected activity, took adverse action against plaintiffs; and

---

as true and, instead, "may be properly set aside."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)

(3)     The adverse action taken would chill a person of ordinary firmness from engaging in that activity.

*Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Plaintiffs' alleged "protected activity" is their claimed "right to freedom of speech and access to Courts under the 1st Amendment and to remonstrate under the Arkansas Constitution, as well as to participate in an investigation designed to determine whether a homicide occurred." (Doc. 1, Compl. ¶ 83). Plaintiffs fail to recognize they were serving only as attorneys of record in the Jefferson County action and were never parties to that lawsuit. "[I]n filing motions and advocating for his client in court, [an attorney is] not engaged in free expression; he [is] simply doing his job." *Mezibov v. Allen*, 411 F.3d 712, 720 (6th Cir. 2005) (affirming dismissal of attorney's First Amendment retaliation claim). Thus, "in the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing his client in those proceedings." *Id.* at 720–21. "An attorney's speech in court and in motion papers has always been tightly cabined by various procedural and evidentiary rules, along with the heavy hand of judicial discretion." *Id.* at 717. "In fact, judges regularly fine attorneys, and even throw them in jail from time to time, as a direct consequence of attorneys' in-court speech, and it appears no circuit court has ever found this to violate the First Amendment." *Id.* Further, an attorney has no constitutional right, independent of his client, to pursue any claim. *Id.* at 720. "[T]hat the attorney has any permission to speak in a judicial proceeding is entirely dependent upon his representation of a client; absent that client, the attorney is completely silenced." *Id.* at 719. As such, when an

attorney disagrees with a decision of a trial judge, his sole remedy is in the judicial or appellate processes available in that case, "rather than to claim First Amendment protection." *Id.* Plaintiffs, therefore, were not engaged in any protected activity in the representation of their clients in the Jefferson County action (which terminated before the sanctions order was entered).

Next, as noted in Section III.A.3, above, the Jefferson County sanctions order takes no action against the plaintiffs, makes no direct reference to any of the plaintiffs, and does not even use their names at any point. (*See generally* Ex. C to Compl., Sanctions Order.) The sanctions order simply dismisses plaintiffs' former client's complaint with prejudice. (*Id.*) As such, the Jefferson County sanctions order is not an adverse action against *these* plaintiffs.

Finally, as a general matter, under Eighth Circuit precedent, defamation and reputational harms are legally insufficient to "chill a person of ordinary firmness from engaging in the protected activity." *See Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010). The *Mezibov* court dealt with this issue particularly in the context of an attorney claiming retaliation for his past representation of a client. "[A]n attorney in a highly publicized case . . . must be expected to endure some scrutiny for his actions." *Mezibov*, 411 F.3d at 722. Moreover, criticism of the attorney's conduct in a case "would spur the typical attorney to go out of his way to prove them wrong," not to refrain from representing his clients in those proceedings. *Id.* at 723. Here, plaintiffs have alleged that the Jefferson County sanctions order is false,

defamatory, and has harmed their reputation.  Even if those allegations were true, they would be insufficient to state a constitutional claim for retaliation.

### C.   Plaintiffs have not adequately pleaded a procedural due-process claim.

Count II is a claim that defendants engaged in a conspiracy with the Jefferson County circuit judge to have the Jefferson County sanctions order entered without affording plaintiffs their procedural due process rights.  "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake.  Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law."  *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 817 (8th Cir. 2011).

Plaintiffs have not adequately alleged that the Jefferson County sanctions order deprived them of any property or liberty interest.  As noted elsewhere, the sanctions order simply dismissed with prejudice the Jefferson County complaint filed by these plaintiffs' former client.  (Ex. C to Compl., Jefferson County Sanctions Order).  The sanctions order did not deprive plaintiffs of their right to practice law or pursue their profession.  (Doc. 1, Compl. ¶¶ 112, 113).  Nor did the sanctions order deprive plaintiffs of any property right by virtue of contingency-fee contract or attorneys' lien.  (*Id.* ¶¶ 90–92).  To that end, before the sanctions order was entered, plaintiffs had already voluntarily withdrawn from the Jefferson County action, giving up any ability they had to control the outcome of that matter, and their client had already elected to dismiss her lawsuit.  (Ex. H to Compl., Jefferson County Reply to Response to Motion to Intervene 4 (noting date of withdrawal as February

6, 2020)). Plaintiffs were never going to recover a fee from the Jefferson County action, so the sanctions order deprived them of no interest in any such fee.

Likewise, plaintiffs' complaint does not identify why attorneys who had already withdrawn from a matter would be entitled to any notice or opportunity to be heard on a sanctions motion that neither sought nor obtained relief from the attorneys. Again, plaintiffs here are conflating their former client's interests with their own. The sanctions order was against plaintiffs' former client, and plaintiffs' former client was provided with both notice and took her opportunity to be heard. Plaintiffs had no constitutional right to participate in an action where they no longer represented a party.

> **D.** **Plaintiffs waived any constitutional claim by expressly waiving any conflict caused by defendant Neely's appearance in the case, by voluntarily withdrawing from the Jefferson County action, and by failing to appeal from the denial of their motion to intervene.**

"A waiver of constitutional rights is effective if it is clear and intentional." *United States v. Lee*, 374 F.3d 637, 649 (8th Cir. 2004). Likewise, as noted above, "[e]xhaustion of state remedies is necessary before any federal procedural due process allegations state a claim under § 1983." *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000).

Here, plaintiffs' complaint documents numerous acts of waiver and failure to exhaust available state remedies:

- First, with full knowledge of Neely's alleged relationship with the Jefferson County circuit judge, plaintiffs expressly allege that they had

their former client waive "any conflict caused by Neely's entry into the case." (Doc. 1, Compl., ¶ 46). That relationship, however, is the sole basis for the alleged corrupt conspiracy between defendants and the Jefferson County circuit judge.

- Second, plaintiffs voluntarily withdrew from the Jefferson County action. (Ex. H to Compl., Jefferson County Reply to Response to Motion to Intervene 4 (noting date of withdrawal as February 6, 2020)). Plaintiffs gave up any right to receive notice of or participate in further proceedings that sought no relief from them after their withdrawal.

- Finally, as discussed in Section III.A.2, above, plaintiffs failed to exhaust available state remedies by failing to appeal the denial of their motion to intervene in the Jefferson County action.

Plaintiffs' constitutional claims should be dismissed.

### 3. Count III: Plaintiffs' complaint does not state a claim for defamation under Arkansas law.

The elements of defamation are the same "whether it be by the spoken word (slander) or the written word (libel)." *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 955, 69 S.W.3d 393, 402 (2002). Those elements are:

(1)   The defamatory nature of the statement of fact;

(2)   That statement's identification of or reference to the plaintiff;

(3)   Publication of the statement by the defendant;

(4)   The defendant's fault in the publication;

(5)   The statement's falsity; and

(6)   Damages.

*Id.* at 955–56, 69 S.W.3d at 402-03.  To plead a claim for defamation, a plaintiff must identify the defamatory statements with specificity, identify the manner of publication, and allege that defendant published the statements to a nonprivileged recipient.  *Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996) (applying Arkansas law).

Failure to allege these essential elements of defamation requires dismissal of the claim. *See e.g., Graham v. Bryce Corp.*, 348 F. Supp. 2d 1038, 1043 (E.D. Ark. 2004) (dismissing defamation claim because complaint failed to "allege who made and published the remarks, to whom they were published, or what was said"); *Richardson v. Booneville Sch. Dist.*, 766 F. Supp. 2d 910, 918 (W.D. Ark. 2011) (dismissing defamation claim because the plaintiff did not plead what false representation of a material fact had been made, who made the statement, when it was made, or that anyone acted upon reliance of the statement); *Whitehead v. Delta Beverage Grp., Inc.*, No. 06-6041, 2006 WL 3806389, at *3 (W.D. Ark. Dec. 27, 2006), *aff'd sub nom. Whitehead v. Vaughn*, 273 F. App'x 581 (8th Cir. 2008) (dismissing defamation claim where the plaintiff did not provide any defamatory statements, proof of any publication of any defamatory statement, or proof of any actual damages resulting from the alleged defamatory statements)*; Faulkner*, 347 Ark. at 957, 69 S.W.3d at 404 (affirming dismissal of defamation claim where the appellant did not plead "specific facts demonstrating that she has suffered actual damage to her reputation, but has only pled a conclusion to that effect"); *Pingatore v. Union Pac. R.R. Co.*, 2017 Ark. App. 459, 12, 530 S.W.3d 372, 379 (affirming dismissal of

defamation claim where the appellant did not identify any false statement that the appellees made); *Robertson v. Daniel*, 2013 Ark. App. 160, 5–6 (affirming dismissal of defamation claim where the "appellant alleged no specific facts demonstrating actual damage to his reputation or profession").

Here, plaintiffs' defamation claim faces four additional challenges:

- First, Arkansas law recognizes an absolute privilege in statements made in connection with a legal proceeding. *Pogue v. Cooper*, 284 Ark. 202, 206, 680 S.W.2d 698, 700 (1984). Thus, plaintiffs' defamation claim can be based only on defendants' out-of-court statements.

- Second, Arkansas law recognizes a qualified privilege as to a statement made under a legal duty to publish the defamatory matter. *Dillard Dep't Stores, Inc. v. Felton*, 276 Ark. 304, 307, 634 S.W.2d 135, 137 (1982). Where this privilege is met, the plaintiff has the burden of proving (a) the statement was not reasonably related to the subject matter of the proceeding in which it was published, (b) the statement was not made for the purpose of furthering the defendant's interest in the proceeding; (c) the content of the statement and extent to which the statement was published) was more than necessary to discharge defendant's duty with respect to the proceeding; (d) defendant, in publishing the statement, acted out of hatred, ill will, or a spirit of revenge; or (e) defendant published the statement with a lack of belief in its truthfulness. AMI Civil 409. To the extent any out-of-court statement at issue in plaintiffs'

2878361-v1                                    33

defamation claim was an alleged report to the Arkansas Committee on Professional Conduct, the defendant attorneys who made that report were subject to a duty to do so. Ark. R. Prof'l Conduct 8.3. As such, plaintiffs would be required to plead and prove facts that plausibly meet one of the five exceptions to the qualified privilege for that alleged unprofessional conduct report.

• Finally, slander (oral defamation) claims are subject to a one-year statute of limitations. Ark. Code Ann. § 16-56-104. Plaintiffs' complaint was filed on February 6, 2023, so to the extent plaintiffs claim that any oral statements of defendants are the basis of their defamation claim, those statements must have been made on or after February 6, 2022.

Ultimately, plaintiffs' complaint does not allege what out-of-court statements are at issue in their defamation claim, who made them, how they were published, to whom, that the statements were untrue, or what damage was suffered. To the extent any such allegation can be found, plaintiffs' complaint does not allege sufficient factual material to overcome the limitations outlined above. Plaintiffs' defamation claim should be dismissed.

### 4.   Count IV: Plaintiffs' tortious-interference claim should be dismissed.

Count IV of the plaintiffs' complaint is a claim for intentional interference with a contract or business expectancy. Plaintiffs have failed to state a plausible tortious-interference claim against the Adams defendants. The elements of a claim for intentional interference with a contract or business expectancy are:

(1)    The existence of a valid contractual relationship or a business expectancy;

(2)    Knowledge of the relationship or expectancy on the part of the interferor;

(3)    Intentional interference inducing or causing a breach or termination of the relationship or expectancy; and

(4)    Resultant damage to the party whose relationship or expectancy has been disrupted.

*Mid-South Beverages, Inc. v. Forrest City Grocery Co.*, 300 Ark. 204, 205, 778 S.W.2d 218, 219 (1989).

In addition, the defendant's conduct must be improper. *Baptist Health v. Murphy*, 365 Ark. 115, 125, 226 S.W.3d 800, 809 (2006). Arkansas courts consider the following factors in determining whether the interference was "improper":

(1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of the actor and the contractual interests of the other; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relations between the parties.

*Id.* "The real question is whether the actor's conduct was fair and reasonable under the circumstances." *Hayes v. Advanced Towing Servs., Inc.*, 73 Ark. App. 36, 44, 40 S.W.3d 800, 804-05 (2001) (*quoting Restatement (Second) of Torts* § 767 cmt. j (1979)).

Here, plaintiffs' tortious-interference claim is based on the Jefferson County sanctions order and "defamatory statements outside the pleadings." (Doc. 1, Compl., ¶ 129). As discussed above, the Adams defendants cannot be liable for the Jefferson County sanctions order, as they are private parties, and even if they made

2878361-v1                                          35

oral statements in the Jefferson County action, which they did not, the statements in pleadings filed for them in that litigation are absolutely privileged. *Pogue v. Cooper*, 284 Ark. 202, 206, 680 S.W.2d 698, 700 (1984). Moreover, plaintiffs' complaint does not identify what "defamatory statements outside the pleadings" are referenced, so plaintiffs have not adequately alleged any improper conduct on the part of these defendants, that that conduct was intended to harm any contract or business expectancy of the plaintiffs, or that the defendants' conduct was the cause of any of plaintiffs' alleged damages.

Further, "[i]t is elementary that some precise business expectancy or contractual relationship [must] be obstructed by the" defendant's actions. *Country Corner Food & Drug, Inc. v. First State Bank & Tr. Co. of Conway, Arkansas*, 332 Ark. 645, 654, 966 S.W.2d 894, 898 (1998). When the complaint does not identify the specific contract or business expectancy with which the defendant intended to interfere, the complaint does not state a claim under Arkansas law. *Id.* Here, plaintiffs' complaint identifies the relationship at issue as their attorney-client relationship with Lee Davis, who allegedly "fired the Plaintiffs without cause," and unidentified "many others." (Doc. 1, Compl., ¶ 129). "[M]any others" does not suffice to state a claim, leaving this claim resting entirely on plaintiffs' alleged relationship with Lee Davis. Plaintiffs never allege, however, that any defendant knew of plaintiffs' relationship with Lee Davis or that any defendant took any action intended to interfere with plaintiffs' relationship with Lee Davis. Plaintiffs have wholly failed to state a claim for tortious interference.

**5.    Count V: Plaintiffs' complaint does not adequately allege a claim of malicious prosecution or abuse of process against the Adams defendants.**

Count V of plaintiffs' complaint purports to assert claims of both malicious prosecution and abuse of process against defendants based on the filing of a counterclaim by defendants Chris Burks, Brandon Haubert, and wH Law, PLC in the David Westbrook lawsuit in the Saline County Circuit Court.  A malicious prosecution claim "concentrate[s] on facts that occurred before the action was commenced," while an abuse-of process claim "focus[es] on facts occurring after the institution of the action."  *Forrest City Mach. Works, Inc. v. Mosbacher*, 312 Ark. 578, 583, 584, 851 S.W.2d 443, 446 (1993).

To establish a claim for malicious prosecution, a plaintiff bears the burden of proving the following elements:

(1)    A proceeding instituted or continued by the defendant (to the malicious prosecution action) against the plaintiff;

(2)    Termination of the proceedings in favor of the plaintiff;

(3)    Absence of probable cause for the proceedings;

(4)    Malice on the part of the defendant; and

(5)    Damages.

*Harold McLaughlin Reliable Truck Brokers, Inc. v. Cox*, 324 Ark. 361, 368, 922 S.W.2d 327, 331 (1996).

As to the first element, the "proceeding" is usually a criminal prosecution; however, a civil action may also be the basis for a malicious prosecution action. *Compare Machen Ford-Lincoln-Mercury , Inc. v. Michaelis*, 284 Ark. 255, 259, 681 S.W.2d 326, 329 (1984) (criminal prosecution for hot checks), *with Forrest City*

*Mach. Works, Inc. v. Mosbacher*, 312 Ark. 578, 851 S.W.2d 443 (1993) (civil action

for foreclosure).  Likewise, the second element may be established through any

means of terminating the proceedings, whether voluntary or involuntary.  *See, e.g.*,

*Milton Hambrice, Inc. v. State Farm Fire & Cas. Ins. Co.*, 114 F.3d 722, 724 (8th

Cir. 1997) (original suit was voluntarily dismissed); *Reynolds v. Holmes*, 232 Ark.

783, 786, 340 S.W.2d 383, 386 (1960) (original criminal prosecution resulted in an

acquittal).  However, the termination must be conclusive, meaning that a dismissal

without prejudice does not constitute a termination for malicious prosecution

purposes.  *See Farm Serv. Coop., Inc. v. Goshen Farms, Inc.*, 267 Ark. 324, 335, 590

S.W.2d 861, 867 (1979).

Most litigation has centered on the absence of probable cause and malice

elements.  If the original action was a civil suit, probable cause requires "such a

state of facts or credible information which would induce an ordinarily cautious

person to believe that his lawsuit would be successful." *McWilliams v. Schmidt*, 76

Ark. App. 173, 187, 61 S.W.3d 898, 909 (2001).  To have a probable-cause basis to

file a lawsuit, a person must have, at the time of filing the original suit, a

reasonable opinion that "the chances are good that a court will decide the suit in his

favor."  *Id.*

Malice means "any improper or sinister motive for instituting the suit."

*Milton Hambrice, Inc.*, 114 F.3d at 725.  Malice may be inferred from a lack of

probable cause, but an absence of probable cause does not create a presumption of

malice.  *Id.*  On the other hand, if probable cause is proven, the malicious

prosecution claim must fail even if the original action was prosecuted maliciously. *Carmical v. McAfee*, 68 Ark. App. 313, 327, 7 S.W.3d 350, 359 (1999). Acting on the advice of counsel is conclusively presumed to be reasonable; thus, a defendant who made a full disclosure to his or her attorney of all facts then known and initiated the original proceeding upon the advice of counsel has a complete defense to a malicious prosecution claim. *McWilliams*, 76 Ark. App. at 186-87, 61 S.W.3d at 909.

In an abuse-of-process claim, the plaintiff bears the burden of proving each of the following essential elements:

(1)    A legal procedure set in motion in proper form, even with probable cause, and even with ultimate success; but

(2)    Perverted to accomplish an ulterior purpose for which it was not designed;

(3)    A willful act in the use of process not proper in the regular conduct of the proceeding; and

(4)    Damages.

*Wynn v. Remet*, 321 Ark. 227, 233, 902 S.W.2d 213, 217 (1995). Thus, where malicious prosecution focuses on whether there was probable cause to begin or continue a lawsuit, abuse of process lies when an otherwise proper legal procedure is used for an ulterior, improper purpose. *Lewis v. Burdine*, 240 Ark. 821, 824, 402 S.W.2d 398, 399 (1966). Examples of abuse of process include: "(1) willful and malicious arrest of plaintiff when his innocence is known; (2) personal service procured by fraud; (3) excessive execution on a judgment; (4) vexatious and oppressive suits in a foreign jurisdiction, and (5) attachment or garnishment for a greatly excessive amount." *Farm Serv. Coop.*, 267 Ark. at 337, 590 S.W.2d at 868.

2878361-v1                                          39

Abuse of process is a "narrow tort" and does not extend to the mere filing of a vexatious action. *Union Nat'l Bank of Little Rock v. Kutait*, 312 Ark. 14, 17, 846 S.W.2d 652, 654 (1993).

The Adams defendants were not parties to the Saline County action. They are not attorneys and did not file that action. The Adams defendants only alleged role in that action is that they in some unspecified manner caused non-party Westbrook to hire defendants Burks, Haubert, and wH Law, PLC to file a counterclaim in the Saline County action. (Doc. 1, Compl. ¶ 118). Plaintiffs have not alleged that any action of the Adams defendants was the determining factor in a decision to file Westbrook's counterclaim.

As to abuse of process, plaintiffs have not alleged any use of any process in the Saline County action, let alone process that the Adams defendants somehow caused to be abused. Without any allegation of process that was abused, or even used, after the initiation of the Westbrook counterclaim, plaintiffs have not stated a claim for abuse of process against any Adams defendant. *See Farm Credit Leasing Servs. Corp. v. Smith*, No. 4:19-CV-00280-KGB, 2021 WL 1209359, at *4 (E.D. Ark. Mar. 30, 2021).

> **6.    Count VI: "Barratry," "champerty," and "maintenance" are not existing claims under Arkansas law, so the Adams defendants could not have engaged in a conspiracy to commit those torts.**

Count VI of plaintiffs' complaint alleges that defendants engaged in a civil conspiracy to commit the asserted torts of "barratry," "champerty," and "maintenance" related to the filing by defendants Burks, Haubert, and wH Law of the counterclaim in the Westbrook matter in Saline County. "A civil conspiracy is a

combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969).  This claim requires that plaintiffs plead and prove facts to support the following essential elements:

(1)   Defendants knowingly entered into a conspiracy;

(2)   All of the essential elements of an intentional tort as to one of the defendants;

(3)   At least one of the defendants committed one or more overt acts in furtherance of the alleged conspiracy; and

(4)   The conspiracy proximately caused damages to plaintiffs.

AMI Civil 714.

Plaintiffs have, once again, failed to plead any facts to support their conspiracy claim.  For example, the complaint does not disclose (1) the date on which defendants entered into the alleged conspiracy, (2) what actions each such person took to enter into the conspiracy, (3) the individual or entity that committed each identified tort, (4) any overt acts taken in furtherance of the alleged conspiracy, (5) the date any such action was taken, (6) the individual who took any such action, or (7) any facts to support the contention that the alleged conspiracy caused plaintiffs' alleged damages.  Plaintiffs' complaint merely pleads conclusions, not facts, in support of their conspiracy claim.

But more basically, plaintiffs' civil conspiracy claim fails because the asserted underlying intentional torts—"barratry," "champerty," and "maintenance"—do not

exist under Arkansas law.[2]  In 1857, the Arkansas Supreme Court held that there were no Arkansas common-law claims for barratry, champerty, or maintenance, and that any such restrictions could be set only by statute.  *Lytle v. State*, 17 Ark. 608, 678 (1857), *aff'd*, 63 U.S. 193 (1859).  Arkansas's current barratry and maintenance statute is merely a prohibition against the unauthorized practice of law and, therefore, prohibits barratry and maintenance only "in such a manner as would constitute the practice of law."  *See* Ark. Code Ann. § 16-22-208.  Further, the only Arkansas cases using the term "barratry" after 1857 found that Arkansas's attempts at statutes prohibiting barratry, including by Arkansas lawyers, were unconstitutional.  *See Bennett v. Nat'l Ass'n for Advancement of Colored People*, 236 Ark. 750, 757, 370 S.W.2d 79, 83 (1963) (finding barratry statute, passed as part of raft of litigation targeting the NAACP's civil rights work, was an unconstitutional violation of the NAACP's First Amendment rights to freedom of speech and association, as found in *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415 (1963)); *Hoban v. Hall*, 229 Ark. 416, 419, 316 S.W.2d 185, 187 (1958) (finding that proposed "barratry" ballot measure failed to meet requirements of Arkansas constitution).

---

[2] "Barratry" is the "[v]exatious incitement to litigation, esp. by soliciting potential legal clients." *Black's Law Dictionary* (11th ed. 2019).  "Champerty" is "[a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; specif., an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim."  *Id.*  In this context, "maintenance" is "[i]mproper assistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case; meddling in someone else's litigation."  *Id.*

The Adams defendants are not alleged to have committed any act that would constitute the unauthorized practice of law and, therefore, are not alleged to have violated Ark. Code Ann. § 16-22-208.  Defendants, further, could not enter into a civil conspiracy to commit "barratry," "champerty," or "maintenance" because there are no such torts under Arkansas law.  Count VI of plaintiffs' complaint should be dismissed.

### 7.   Count VII—Plaintiffs' complaint does not plead a plausible claim for bribing or illegally influencing a state judicial officer.

The final claim in plaintiffs' complaint is an alleged felony-tort under Ark. Code Ann. § 16-118-107 for "brib[ing] or illegally influenc[ing] a state judicial officer."  Ark. Code Ann. § 16-118-107 creates a civil cause of action for "[a]ny person injured or damaged by reason of conduct of another person that would constitute a felony under Arkansas law."  Plaintiffs do not allege in their complaint what criminal statute gives rise to this claim.  That fact, standing alone, is cause for dismissal, as it is impossible for this Court to determine whether plaintiffs have adequately alleged that these defendants committed a felony when plaintiffs have not identified the alleged felony at issue.

Based on the language of plaintiffs' complaint, however, it appears plaintiffs may be referring to Article V, Section 35 of the Arkansas Constitution, which provides, "Any person who shall, directly or indirectly, offer, give, or promise any money, or thing of value, testimonial, privilege or personal advantage to any executive or judicial officer, or member of the General Assembly; and any such executive or judicial officer, or member of the General Assembly, who shall receive

2878361-v1                                          43

or consent to receive any such consideration, either directly or indirectly, to influence his action in the performance or non performance of his public or official duty, shall be guilty of a felony, and be punished accordingly." If that is the felony at issue in this claim, the claim should be dismissed, as plaintiffs never allege what "money, or thing of value, testimonial, privilege or personal advantage" any defendant provided to any judicial officer. Indeed, plaintiffs' complaint does not clearly identify even who they claim is the "judicial officer" at issue.

Finally, to the extent the referenced judge is the circuit judge in the Jefferson County action, then, as discussed above, at most, plaintiff has alleged only that defendant Neely was the circuit judge's former law partner, that the judge perhaps should have recused if plaintiffs had not advised their client to waive any alleged conflict caused by Neely's representation in the case, and that Neely and the judge engaged in *ex parte* communications regarding the Jefferson County action. (Doc. 1, Compl. ¶¶ 41, 43, 46, 49, 52). Even accepting these allegations as true, defendants are aware of no Arkansas law that would create felony criminal liability for being a named defendant in a case where a judge did not recuse.

## IV.    CONCLUSION

For the reasons stated above, plaintiffs' complaint should be dismissed against the Adams defendants.

2878361-v1

Respectfully submitted:


WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
PHONE: (501) 371-0808
FAX: (501) 376-9442
E-MAIL: jhenry@wlj.com;
        sirby@wlj.com


By: /s/ Judy S. Henry_____
    Judy Simmons Henry (84069)
    Scott A. Irby (99192)

    *Attorneys for defendants Bryan Adams,*
    *Brandon Adams, Skylar Adams f/k/a*
    *Skylar Wilson, Eric Bell, Judy S. Henry,*
    *Scott A. Irby, Jacob P. Fair, and*
    *Wright, Lindsey & Jennings LLP*