**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**SUTTER & GILLHAM, P.L.L.C, ET AL.**                                    **PLAINTIFFS**

**v.**                                    **CASE NO. 4:23-CV-78-BSM**

**JUDY SIMMONS HENRY, ET AL.**                                    **DEFENDANTS**

**REPLY IN SUPPORT OF DEFENDANTS CHRIS BURKS,
BRANDON HAUBERT, AND WH LAW, PLC'S MOTION TO DISMISS**

Come now Defendants Chris Burks, Brandon Haubert, and wH Law, PLC (collectively, "wH Law"), by and through their attorneys, Barber Law Firm PLLC, and for their Reply in Support of their Motion to Dismiss, filed pursuant to Rule 12 of the Federal Rules of Civil Procedure, state:

**INTRODUCTION**

Plaintiffs Luther Sutter, Lucien Gillham, and Sutter & Gillham, PLLC filed a lawsuit against their former client David Westbrook seeking a declaratory judgment that Plaintiffs' representation of Mr. Westbrook in two different lawsuits did not breach the fiduciary duty Plaintiffs owed Mr. Westbrook and that their representation did not fall below the standard of care. Mr. Westbrook hired wH Law to defend that lawsuit and, in response to Plaintiffs' claims there, asserted a compulsory counterclaim against Sutter & Gillham, PLLC, Luther Sutter, and Lucien Gillham related to their representation of Mr. Westbrook in one of those lawsuits. Importantly, the Arkansas Rules of Civil Procedure required Mr. Westbrook to assert his counterclaim in that action or risk losing the right to ever seek relief upon those claims. Plaintiffs now contend that wH Law's representation of Mr. Westbrook was part of a grand conspiracy involving hundreds of defendants that somehow violated Plaintiffs' constitutional rights when a sanctions order was entered in an entirely unrelated lawsuit in Jefferson County Circuit Court.

Page **1** of **26**

Plaintiffs have failed to plausibly allege any claim against wH Law, and Plaintiffs point to no plausible, factual allegations that survive Rule 12 dismissal. It is beyond dispute that wH Law did not enter an appearance in the Jefferson County case. It is beyond dispute that wH Law did not represent any client in the Jefferson County case. It is beyond dispute that wH Law never appeared before Judge Guynn in the Jefferson County case. It is beyond dispute that wH Law never communicated with Judge Guynn about the Jefferson County case. Plaintiffs' Complaint does not, and cannot, include any allegations of fact to the contrary.

Even accepting Plaintiffs' spurious allegations as true at this stage, the Complaint does not include sufficient factual allegations that plausibly allege wH Law were state actors subject to liability under 42 U.S.C. § 1983 as required for Plaintiffs' federal claim. As a result, the Court should dismiss Plaintiffs' sole federal claim and should decline to exercise supplemental jurisdiction over the sundry state-law causes of action asserted in the Complaint. But if the Court is inclined to consider those claims, they should also be dismissed as to wH Law because the Complaint does not plausibly allege any cause of action against them. Consequently, the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## ARGUMENT

The Court should grant wH Law's Motion to Dismiss on numerous grounds. First, the Complaint fails to plausibly allege any cause of action against wH Law. Plaintiffs' Response focuses extensively on their purported constitutional claims (which are not articulated in the Complaint), but those claims must be dismissed because Plaintiffs have not plausibly alleged wH Law is a state actor subject to liability for supposed constitutional violations. And Plaintiffs' state-law claims all fail on the elements of those causes of action. Second, wH Law is entitled to immunity from the claims in the Complaint. Third, the Complaint should be dismissed because it

is barred by res judicata and collateral estoppel. Fourth, in the event the Court determines Plaintiffs have plausibly stated a claim and that wH Law is not entitled to immunity from those claims, the Court should nevertheless dismiss this case based on doctrines of abstention.

### I.     PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE ANY CAUSE OF ACTION AGAINST WH LAW

#### A.     *Plaintiffs' constitutional claim fails as a matter of law because they have not plausibly alleged wH Law is a state actor subject to liability under 42 U.S.C. § 1983.*

Plaintiffs contend they have adequately alleged several constitutional claims pursuant to 42 U.S.C. § 1983, including claims for procedural and substantive due process. To state any cause of action under Section 1983, Plaintiffs must plausibly allege wH Law was a state actor. Although Plaintiffs include a section of their Response purporting to address that state action requirement (*Response*, at 19–22), that section contains no discussion of the issue as it relates to this case and does not address wH Law's argument. Instead, Plaintiffs spend pages discussing their burden of proof on the issue. wH Law agrees that Plaintiffs must bear that burden, but there can be no legitimate dispute Plaintiffs have failed to do so here.

As Plaintiffs' Response illustrates, Plaintiffs' Section 1983 claim is both procedurally and substantively deficient and fails to plausibly allege wH Law is a state actor. The thrust of Plaintiffs' theory is that all 113 defendants somehow engaged in a wide-ranging conspiracy with Judge Guynn in the Jefferson County wrongful death case. Plaintiffs' theory is a farce and does not plausibly state a claim against wH Law. *First*, Plaintiffs' complaint contains only an "allusion" to a conspiracy, which is inadequate. *See Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (citing *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir. 1983)) (affirming dismissal of § 1983 claim against attorney based on an alleged conspiracy between the attorney and a prosecutor). A "conclusory allegation that private attorneys somehow decided issues in conjunction with a

judicial officer falls far short of 'sufficient specificity and factual support.'" *Cassell v. Cty. of Ramsey*, No. 10-4981 (JRT/TNL), 2011 U.S. Dist. LEXIS 154247, at *48 (D. Minn. Nov. 2, 2011) (citing *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985)); *see also Gallo v. Pillow*, No. 3:05CV00272-WRW, 2007 U.S. Dist. LEXIS 20479, at *8 (E.D. Ark. Mar. 20, 2007) (citing *Johnson v. Esry*, 210 F.3d 379 (8th Cir. 2000)) ("Conclusory allegations and speculation without factual allegations do not support a claim of civil conspiracy.").

Plaintiffs' purported conspiracy theory is a legal conclusion only and is subject to dismissal under Section 1983. *See Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir. 1999) (holding "[s]peculation and conjecture are not enough to prove a conspiracy exist"). A complaint that only "repeatedly uses the word 'conspiracy'" but alleges no specific facts is subject to dismissal under Rule 12. *See Milliman v. Stearns*, No. 13-cv-136 (DWF/LIB), 2013 U.S. Dist. LEXIS 141440, at *37 (D. Minn. Aug. 12, 2013) (compiling cases). Plaintiffs' Complaint does not allege a conspiracy with the requisite factual specificity and should be dismissed. *See Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam).

***Second***, even if the Complaint contained factual allegations related Plaintiffs' perceived conspiracy, there are no factual allegations that would establish any action by wH Law under color of state law. "The conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of section 1983 violations." *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991) (compiling cases); *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990) (citing *Harkins v. Eldredge*, 505 F.2d 802, 803 (8th Cir. 1974) (per curiam)) (same).

"A state, merely by providing a forum and a means of enforcing regularly issued court orders, does not 'color' the action of the private litigants with state action." *Orlando v. Wizel*, 443

F. Supp. 744, 748 (W.D. Ark. 1978) (compiling cases). The "mere invocation of state legal procedures is not state action," whether it is by litigants or their attorneys, who "stand on the same legal footing as their clients." *Carlson v. Roetzel & Andress*, 552 F.3d 648, 651 (8th Cir. 2008); *see also Snelling v. Haynes*, 452 F. App'x 695, 696 (8th Cir. 2011) (per curiam) (affirming dismissal of section 1983 claim against attorneys).

Similarly, the Eighth Circuit has held that "[a] private person does not conspire with a state official merely by invoking an exercise of the state official's authority." *Young v. Harrison*, 284 F.3d 863, 870 (8th Cir. 2002) (citing *Tarkowski v. Robert Bartlett Realty Co.*, 644 F.2d 1204, 1208 (7th Cir. 1980)); *see also Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (stating that a private litigant acting unlawfully is not a state actor under § 1983). This is settled law. *See Day v. Minnesota*, No. 19-CV-0496 (WMW/LIB), 2019 U.S. Dist. LEXIS 124961, at *5 (D. Minn. Mar. 22, 2019) (holding attorneys "who acted in a purely private capacity as legal counsel for clients opposing [a plaintiff's] state court litigation . . . cannot fall within the umbrella of § 1983"); *see also Silva v. U.S. Bank*, 294 F. Supp. 3d 1117, 1131 (D. Colo. 2018) (compiling cases) ("A private party invoking a state legal procedure does not transform itself into a state actor."); *Doe v. Bakhsehtsyan*, No. 17-12301, 2017 U.S. Dist. LEXIS 192303, at *11–12 (E.D. Mich. Nov. 21, 2017) ("Normally, the activities of a private entity ... in litigating ... a civil dispute, are not conduct under color of state law, an essential ingredient of an action under § 1983."). Plaintiffs' Response does not identify *any* facts in the Complaint that plausibly allege any state action by wH Law. The only factual allegations relate to wH Law serving as private counsel to a private party to litigation in Saline County Circuit Court filed by Plaintiffs; there are no allegations about wH Law serving as counsel or participating in the Jefferson County case.

Page **5** of **26**

**Third**, Plaintiffs' have not alleged any constitutional deprivation. The practice of law in the state courts of Arkansas "is not an absolute, natural or constitutional right." *McKenzie v. Burris*, 255 Ark. 330, 345, 500 S.W.2d 357, 367 (1973) (compiling cases). It is "a privilege in the nature of a franchise," but it "is not a privilege or immunity under the Fourteenth Amendment to the United States Constitution." *Id.* (citations omitted). Additionally, the attorney-client relationship is not a constitutional right in civil cases. *Eley v. United States Dep't of Veterans Affairs*, 95 F. App'x 190, 192 (8th Cir. 2004) (citing *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir. 1988)) (holding "there is no constitutional or statutory right to counsel in civil case"); *Guirlando v. Union Cty. Jai*, No. 1:21-CV-01013, 2021 U.S. Dist. LEXIS 199718, at *22 n.12 (W.D. Ark. July 28, 2021) (citing *Phillips v. Jasper Cnty. Jail.*, 437 F.3d 791, 794 (8th Cir. 2006)). The practice of law, upon which Plaintiffs base their claims, "is not a property right nor is it a privilege granted or defended by the Federal Constitution." *Emmons v. Smitt*, 58 F. Supp. 869, 873 (E.D. Mich. 1944).

Because the practice of law is not a constitutional right, it cannot be deprived, by a conspiracy or otherwise, and cannot form the basis of a claim under Section 1983. Instead, "[a] conspiracy to deprive a lawyer of his right to practice law in a state court is not a conspiracy to interfere with any right or privilege granted, secured, or protected by the constitution or laws of the United States." *Green v. Elbert*, 63 F. 308, 309 (8th Cir. 1894). Because "the right to practice law is not a fundamental right," *Edelstein v. Wilentz*, 812 F.2d 128, 132 (3d Cir. 1987), Plaintiffs' claims based on vague interference with their law practice do not allege a constitutional deprivation as required by Section 1983. *See Dowd v. Cty. of Kern*, No. 1:12-CV-01063, 2012 U.S. Dist. LEXIS 121530, at *16 (E.D. Cal. Aug. 27, 2012) (compiling cases) (dismissing conspiracy claim because "[t]here is no fundamental right to practice law").

Page **6** of **26**

*Fourth*, Plaintiffs' allegations make clear that their roles in the underlying Jefferson County litigation were representing other individuals who were parties to the case.  Consequently, Plaintiffs "had no personal stake in the lawsuit," and, therefore, "lack[] standing to challenge the defendants' conduct." *Lepley v. Dresser*, 681 F. Supp. 418, 421 (W.D. Mich. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975)) (holding an attorney had no standing to assert a § 1983 claim against other attorneys and a judge based upon their alleged conspiracy "to fix" a lawsuit); *see also Spurlock v. Rajt*, No. 06-15251, 2007 U.S. Dist. LEXIS 53251, at *10-11 (E.D. Mich. July 23, 2007). In *Spurlock*, the district court held:

> [Attorney] Lagonoy, like [attorney] Lepley, was not a party to the state court proceeding.  He was Spurlock's attorney. Lagonoy did not have a personal stake in the proceedings and could not have suffered any personal injury from Defendants alleged actions.  Plaintiffs' reliance on [*Sharp v. Lucky*, 252 F.2d 910 (5th Cir. 1958)] is misplaced.  *Sharp* does not support Plaintiffs' position that an attorney has standing to sue for violations of his client's constitutional rights in a suit in which the attorney had no personal stake.
>
> Without a personal interest in the state court proceeding, Lagonoy lacks standing to pursue this § 1983 claim.

*Id.*  As attorneys involved in the underlying Jefferson County litigation, Plaintiffs do not have standing to assert a claim under Section 1983 against other counsel, particularly as to wH Law.

*Fifth*, Plaintiff's claims are an attempt to impose vicarious liability on wH Law for the conduct of other parties and the state judge in the Jefferson County case.  It is well settled that "vicarious liability is inapplicable to *Bivens* and § 1983 suits." *Molina v. City of St. Louis*, 59 F.4th 334, 344 (8th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  There are not any allegations in the Complaint that would establish wH Law's involvement in the underlying Jefferson County litigation in which the sanctions order was entered. *See Response*, at 25–26.  It is undisputed that wH Law was not counsel of record in the Jefferson County lawsuit and did not participate or represent a party in the case that is the foundation of all of Plaintiffs' claims here.

There are no allegations that wH Law filed any motions or otherwise sought any relief from Judge Guynn in the Jefferson County litigation filed by Plaintiffs. There are no allegations that wH Law communicated with Judge Guynn or was directly involved with Judge Guynn in any way. Instead, Plaintiffs concoct a claim against wH Law that is derivative of Plaintiffs' claims against other parties. This is precisely the type of "allusion" to a constitutional conspiracy and insufficient pleading that is subject to Rule 12 dismissal. *See Response*, at 19 ("Here, the Burks Defendants conspired with the Adams lawyers to violate Plaintiffs' constitutional rights.").

For the same reasons, Plaintiffs' reliance on *DuBose v. Kelly*, 187 F.3d 999 (8th Cir. 1999), is misplaced because the Complaint does not allege any direct involvement by wH Law with a state actor and does not identify any constitutional right personal to Plaintiffs that, if it existed, was deprived by wH Law, a private actor. The Supreme Court has held that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). Here, Plaintiffs concede they do not allege that wH Law conspired with Judge Guynn or otherwise participated in the Jefferson County lawsuit. Instead, Plaintiffs allude only to a purported conspiracy between wH Law and other private attorneys, none of whom are state actors, who allegedly conspired with yet another private attorney, who allegedly conspired with Judge Guynn.

Plaintiffs' daisy-chain theory of liability is insufficient to plausibly allege any claim against wH Law. Plaintiffs' Response points to certain allegations from the Complaint related to alleged improper communications between Judge Guynn and other defendants in an attempt to invoke the holdings in *Audio Odyssey* and *Dubose* (*Response*, at 25–26), but those allegations are merely a "barebones recital" about a conspiracy that is too attenuated to state a claim under Section 1983. *Lacy v. Gray*, No. 4:13CV370 RWS, 2013 U.S. Dist. LEXIS 98721, at *22 (E.D. Mo. July 16, 2013).

Importantly, those allegations make clear that wH Law had no involvement in any alleged improper communications, nor does the Complaint include any factual allegations that wH Law "had advance knowledge of any scheme" with Judge Guynn or that wH Law "participated in such a scheme." *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 741 (8th Cir. 2001). Plaintiffs misread or misapply the holding in *Audio Odyssey*, which supports dismissal of the present action.

Plaintiffs do not allege improper communications between wH Law and Judge Guynn, "nor do they even come close to the allegations in *DuBose*, which alleged that the judge gave assurances in private that the defendants were going to win and served to raise issues that the proceedings were corrupt." *Luther v. Am. Nat'l Bank of Minn.*, No. 13-184 (LIB), 2013 U.S. Dist. LEXIS 199544, at *14-15 (D. Minn. Aug. 21, 2013). As in *Luther*, "the sum total of [Plaintiffs'] conclusory allegations here do nothing more than allege a conspiracy existed on the sole basis that Judge [Guynn] agreed with the arguments presented by [other attorneys'] dispositive motion in the earlier state court proceeding. [Plaintiffs'] mere personal disagreement with that ruling does not provide a sufficiently plead basis for [Plaintiffs'] § 1983 conspiracy claims to survive Defendants' motion to dismiss under Rule 12(c)." *Id.*

Moreover, there are no factual allegations that plausibly state that wH Law "willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." *Carlson v. Roetzel & Andress*, No. 3:07-CV-33, 2008 U.S. Dist. LEXIS 27084, at *28 (D.N.D. Mar. 27, 2008). Plaintiffs' allegations "simply do not support an inference that Defendants were willfully participating in joint activity and conspiring with [Judge Guynn]" to deprive Plaintiffs' constitutional rights. *Id.*, at *33. Plaintiffs' position would "transform all private attorneys and their clients who use legal procedures established by state law into 'state actors' who may be held liable under § 1983." *Id.* This result "would have obvious and

unfortunate consequences and has no support in precedent or common sense." *Id.* (quoting *Miller v. Compton*, 122 F.3d 1094, 1098 (8th Cir. 1997)).

Accordingly, the Court should dismiss Plaintiffs' Section 1983 claim against wH Law because Plaintiffs have not plausibly alleged wH Law to be a state actor subject to liability under Section 1983. Because the only claim that resembles a federal claim is subject to dismissal, the Court should dismiss the remaining claims, all of which are state law claims. *See Snelling v. Haynes*, 452 F. App'x 695, 697 (8th Cir. 2011); *Figg v. Russell*, 433 F.3d 593, 600 (8th Cir. 2006) (affirming dismissal of supplemental state law claims after district court dismissed federal claims that formed the basis for federal jurisdiction); *Eagle v. McDaniel*, No. 4:10CV01512 DPM/BD, 2010 U.S. Dist. LEXIS 140258, at *10 (E.D. Ark. Nov. 3, 2010) (declining to exercise supplemental jurisdiction over state claims that appeared "meritless at best, if not frivolous and malicious").

### B.      The Court should dismiss Plaintiffs' retaliation claim.

In addition to failing for lack of any required state action, Plaintiffs' First Amendment retaliation claim fails to plead sufficient facts to state a plausible claim for retaliation against wH Law.  For instance, Plaintiffs' retaliation-based allegations are that Plaintiffs have a constitutional right to access the courts and the right to participate in an investigation designed to determine whether a homicide occurred, some defendants might have participated in and induced a "cover up" of the alleged homicide, and that "Defendants deprived each Plaintiff of their constitutional rights without Due Process by obtaining an Order designed to smear the Plaintiffs[,]" and that those actions "undertaken by the Defendants would chill a reasonable person of ordinary firmness." (Doc. 1, at ¶¶ 83–86).  Further, Plaintiffs' Response states that "[t]he actions taken by the Defendants in conspiracy with Judge Guynn and Judge Clark would chill a person of ordinary

firmness from filing a lawsuit." (*Response*, at 28). None of these allegations relate to wH Law in any way.

Tellingly, Plaintiffs' Response does not address wH Law's Motion on the retaliation claim. More particularly, Plaintiffs do not dispute that their allegations as to wH Law relate exclusively to wH Law's representation of Mr. Westbrook in the litigation filed by Plaintiffs against Mr. Westbrook and the corresponding counterclaim filed in that action. Filing a counterclaim on behalf of Mr. Westbrook that directly relates to the claim Plaintiffs asserted against him does not in any way violate Plaintiffs' First Amendment rights. And the fact Mr. Westbrook's counterclaim was dismissed is not evidence that wH Law acted improperly in the course and scope of representing their client. Accordingly, the Court should dismiss Plaintiffs' retaliation claim as to wH Law.

### C.    *Plaintiffs' claim for civil conspiracy should be dismissed.*

Plaintiffs fail to point to any facts alleged in their Complaint that plausibly state a claim for civil conspiracy, and Plaintiffs rely only on their formulaic, barebones recitation of the elements of the claim in both their Complaint and their Response. While recognizing that Arkansas attorneys cannot conspire with their clients, as a matter of Arkansas law, Plaintiffs nonetheless argue that wH Law conspired with David Westbrook—who Plaintiffs argue conspired with another lawyer who in turn conspired with Judge Guynn—to influence and alter the outcome of litigation in which wH Law had no direct involvement whatsoever. (*Response*, at 35). Rather than allege facts, Plaintiffs attempt to base Plaintiffs' mercurial claim for civil conspiracy on a cascading series of events that are multiple layers removed from wH Law. There is no factual or legal support for Plaintiff's civil conspiracy claim under Arkansas law and the claim must be dismissed.

> ### D. *Plaintiffs have failed to state a claim against wH Law for defamation.*

The defamation claim must be dismissed. ***Plaintiffs do not address the one-year limitations period that plainly bars their defamation claim against wH Law***.   Moreover, Plaintiffs' Response does not identify any facts that state a claim for defamation against wH Law. Plaintiffs' daisy-chain conspiracy theory is based on the alleged conduct of parties other than wH Law and Plaintiffs do not identify a single non-privileged defamatory act committed by wH Law. There are absolutely no facts in the Complaint that plausibly state a claim of defamation against any party and certainly not against wH Law.   The defamation claim against wH Law must be dismissed.  *See Jones v. Clinton*, 974 F. Supp. 712, 730 (E.D. Ark. 1997) (applying the litigation privilege to "statements made by both attorneys and parties to the possible litigation" and dismissing defamation claim).

> ### E. *Plaintiffs have failed to state a claim against wH Law for "abuse of process/malicious prosecution."*

Plaintiffs' "abuse of process/malicious prosecution" claim should also be dismissed as to wH Law.  Plaintiffs argue, generically, that "defendants" corrupted David Westbrook and caused him to file a lawsuit against Plaintiffs.  (*Response*, at 33).  But that is not what is alleged in the Complaint.  Instead, the Complaint states that "the abuse of process occurred through the issuance of sanctions Order."  (Doc. 1, at ¶ 132).  Regardless, Plaintiffs' contention that "defendants" somehow "corrupted" Mr. Westbrook is so woefully lacking in any specificity that the Court should simply disregard the argument.  Even accepting that contention does nothing to show how Plaintiffs have plausibly alleged an abuse of process claim against wH Law.  Plaintiffs also argue about decisions made by Judge Guynn and the fact Plaintiffs have been sued in Faulkner County, but none of those issues involve wH Law in any way.

Turning to the allegations as alleged in the Complaint, it is beyond dispute that wH Law was not involved in the sanctions order and the Complaint does not include any allegations to the contrary. It is undisputed that wH Law was not involved in the Jefferson County case from which the sanctions order was issued. In contrast, wH Law's involvement in the issues identified in the Complaint was limited to representing Mr. Westbrook in a lawsuit filed against him by Plaintiffs and asserting a counterclaim that directly related to the subject matter of the claim Plaintiffs asserted against Mr. Westbrook. These alleged actions do not arise to the level of extortion or coercion as necessary to maintain an abuse of process claim and Plaintiffs have not argued to the contrary. Therefore, the Court should dismiss the abuse of process claim.

For the same reasons, the malicious prosecution claim fails as a matter of law. Critically, the malicious prosecution claim is based on a mandatory counterclaim asserted by Plaintiffs' former client in state court litigation *commenced by Plaintiffs*. As alleged, the malicious prosecution against wh Law fails because the act of filing suit does not give rise to attorney liability for malicious prosecution. *McMullen v. McHughes*, 2015 Ark. 15, at 16, 454 S.W.3d 200, 210. The Arkansas Supreme Court has held that claims asserted against Arkansas attorneys that are "based on [an attorney's] actions in filing complaints" and "professional legal representation on behalf of its . . . clients" cannot be a basis for liability to a non-client. *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, at 7, 372 S.W.3d 324, 330-31. It is clear here, as it was clear to the Arkansas Supreme Court in *Born*, that Plaintiff's malicious prosecution claim "is an attempt to circumvent the clear intent of the immunity statute." *Born*, 2010 Ark. 292, at 7, 372 S.W.3d at 331.

Malicious prosecution is also subject to dismissal, as a matter of law, if the complained-of acts are "just, legal, and proper." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th

Cir. 1999) (affirming judgment on the pleadings on malicious prosecution claim). The counterclaim was not only just, legal, and proper, it was mandatory under Arkansas law. *See* Ark. R. Civ. P. 13(a) (requiring a party to "state as a counterclaim any claim which, at the time of filing the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim"). Even if the counterclaim against Plaintiffs was not mandated by Rule 13 of the Arkansas Rules of Civil Procedure, the counterclaim fell comfortably within the ambit of permissive counterclaims authorized by the state rule. *See* Ark. R. Civ. P. 13(b).

Plaintiffs' Response, like their Complaint, "fails to explain why there was an absence of probable cause for filing the lawsuit." *Smith v. Cavalry SPV I, LLC*, No. 3:17-CV-3028, 2017 U.S. Dist. LEXIS 148369, at *9 (W.D. Ark. Sep. 11, 2017). Plaintiff's course of conduct, as described in their Complaint, establishes the existence of probable cause for Plaintiffs' former client to counterclaim against Plaintiffs in the litigation that Plaintiffs commenced. The counterclaim was mandatory under the Arkansas Rules of Civil Procedure and, more generally, an attorney is not liable for malicious prosecution based on the claims asserted by the attorney's clients. Dismissal of the malicious prosecution claim is proper.

### F.     Plaintiffs have failed to state a claim against wH Law for "civil conspiracy/barratry."

Plaintiffs' muddled "civil conspiracy/barratry" claim is not cognizable under existing Arkansas law. There is no private right of action for barratry or maintenance against Arkansas attorneys. *See* Ark. Code Ann. § 16-22-208(a). Such claims are the exclusive province of the Arkansas Supreme Court, not Plaintiffs. *See* Ark. Code Ann. § 16-22-208(c); *Allen v. Allison*, 356 Ark. 403, 414, 155 S.W.3d 682, 690 (2004) (holding that the Arkansas Rules of Civil

Procedure are not a basis for civil liability, including civil conspiracy claims). The Court should summarily dismiss this baseless claim.

### G.    Plaintiffs' crime-victim-statute claim should be dismissed.

This claim is equally meritless. The Court should dismiss this claim as to wH Law because there are no allegations in the Complaint that allege wH Law had any involvement of any kind in the wrongful death case in Jefferson County. There are no factual allegations in the Complaint that wH Law had any contact, communication, or involvement with the state court judge or the state court litigation. Consequently, this claim must be dismissed as a matter of law.

## II.    WH LAW IS ENTITLED TO DISMISSAL OF PLAINTIFFS' CLAIMS BASED ON IMMUNITY PRINCIPLES

To the extent the Court determines that Plaintiffs' Complaint plausibly alleges any cause of action against wH Law, the Court should still grant wH Law's Motion because wH Law is immune from those claims.  First, wH Law is entitled to immunity pursuant to Arkansas' attorney immunity statute, Ark. Code Ann. § 16-22-310.  Further, wH Law is entitled to dismissal pursuant to the doctrines of absolute and quasi-judicial immunity stemming from wH Law's limited role in representing David Westbrook in an action filed against him by Plaintiffs in the Saline County Circuit Court.

### A.    Plaintiffs' claims are barred against wH Law pursuant to Arkansas' attorney immunity statute.

The attorney immunity statute, Ark. Code Ann. § 16-22-310, provides that "[n]o person licensed to practice law in Arkansas . . . shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from" acts or other conduct in connection with the legal services provided by that lawyer.  Ark. Code Ann. § 16-22-310(a).  The statute includes an exception for "[a]cts, omissions, decisions, or conduct that constitutes fraud or intentional misrepresentations[.]"  Ark. Code Ann. § 16-22-310(b).  Importantly, the statute does

not state that the lawyer loses immunity when a litigant alleges that fraud or intentional misrepresentation occurred as Plaintiffs wish here; instead, it requires that those actions "constitute" fraud. *Id.*

It is undisputed in this case that Plaintiffs lack any privity of contract with wH Law. Instead, in order to overcome this statutory immunity, Plaintiffs were required to establish that the fraud exception applied. wH Law does not dispute that the attorney immunity statute contains an exception in situations where fraud or intentional misrepresentation occurs. But simply claiming in a Response to wH Law's Motion that fraud occurred is insufficient to overcome the immunity statute. Otherwise, and under Plaintiffs' interpretation of the statute, if all a party had to do to overcome the immunity statute was to include a fraud claim in their pleading against a lawyer with whom the litigant lacked any privity of contract, the immunity statute would be effectively meaningless. That rings especially true in cases like this one where the *Plaintiffs do not even assert a cause of action for fraud or intentional misrepresentation*. And Plaintiffs make no argument as to how wH Law engaged in any fraud or made any intentional misrepresentations here. Accordingly, Plaintiffs cannot overcome the attorney immunity statute and the Court should dismiss their claims against wH Law.

Plaintiffs rely upon *Almand v. Benton Cnty*, 145 B.R. 608 (W.D. Ark. 1992), for the contention that the immunity statute does not apply to intentional conduct. But *Almand* is easily distinguishable because that bankruptcy court determined the immunity did not apply following a jury trial in which the attorney was found liable for abuse of process. *Almand*, 145 B.R. at 617–18. In other words, if an attorney is found to be liable for the fraud or intentional conduct that fits within the statute's exception, then the lack of privity is not a defense to that claim. But, inversely, if a party has failed to allege sufficient facts to plausibly state such a claim, the immunity statute

is a defense to that claim and dismissal is appropriate.  Plaintiffs are not entitled to pursue a claim against wH Law simply because Plaintiffs allege a far-ranging conspiracy involving hundreds of individuals and entities.  Rather, sufficient pleading of facts to state a claim is a condition precedent that must be met.  It has not been met here.

### B.  wH Law is also entitled to absolute and quasi-judicial immunity.

wH Law's motion to dismiss also asserted defenses based on two other immunity grounds: (1) absolute immunity arising from wH Law's part in the judicial process, *Briscoe v. Lahue*, 460 U.S. 325, 335 (1983); and (2) quasi-judicial immunity arising from wH Law's performance of an integral part of the judicial process, *Martin v. Smith*, 2019 Ark. 232, at 6, 576 S.W.3d 32, 36. Plaintiffs' Response does not squarely address either argument.

Instead, Plaintiffs generically refer to *Thompson v. Clark*, 142 S.Ct. 1332 (2022), and *Dubose v. Kelly*, 187 F.3d 999 (8th Cir. 1999), but neither case is instructive here.  First, *Thompson* involved a Fourth Amendment claim brought pursuant to Section 1983 for malicious prosecution, sometimes referred to as a claim for unreasonable seizure pursuant to legal process.  That case, however, involved the conduct of police officers, not private attorneys representing clients in civil litigation.  As such, *Thompson* does not help Plaintiffs here.

Neither does *Dubose*.  Plaintiffs cite this case for the proposition that "attorneys can be sued under 1983 for actions taken on behalf of their clients." (*Response*, at 19).  Plaintiffs overstate *Dubose*'s application here.  In that case, the Eighth Circuit reversed summary judgment granted in favor of a defendant attorney and his counsel in an underlying case when there was evidence those individuals met privately with the judge presiding over the case to determine how to "fix" the trial against the plaintiff.  That is not what Plaintiffs have alleged against wH Law in this case.  Instead, Plaintiffs allege wH Law filed a counterclaim against Plaintiffs on behalf of Plaintiffs' former client David Westbrook.  Plaintiffs contend this counterclaim caused Plaintiffs to *choose* to

withdraw from the wrongful death case pending in Jefferson County. Plaintiffs' allegations as to wH Law are vastly different from the events at issue in *Dubose*. Importantly, and unlike here, the challenged conduct in *Dubose* was not the type of oral or written submissions to a court for which attorneys like wH Law have immunity. *See Mock v. Chicago, Rock Island & Pac. R.R. Co.*, 454 F.2d 131, 133 (8th Cir. 1972) ("[Absolute] privilege is generally applied to pertinent statements made in formal judicial proceedings."); *Imbler v. Pachtman*, 424 U.S. 409, 426 n. 23 (1976) (this absolute immunity extends to both an attorney's written and oral submissions to a court"). Further, *Debose* is unhelpful here because that case does not address the immunity issue, nor does it appear that issue was raised in that case.

Here, all of the allegations and claims asserted against wH Law are premised on wH Law's role as counsel for Mr. Westbrook in underlying judicial proceedings as referenced in Plaintiffs' Complaint. All of Plaintiffs' claimed damages apparently flow from the June 22, 2021, judgment (Doc. 1, at pp. 155–162) entered in the Jefferson County litigation—in which wH Law was not involved—and Plaintiffs attempt to impose liability on wH Law by virtue of the representation of Mr. Westbrook in a separate proceeding initiated by Plaintiffs in Saline County. Under settled precedent of the Supreme Court of the United States, wH Law cannot be liable to Plaintiffs under the theories contained in the Complaint for representing parties in any underlying litigation, to the extent Plaintiffs contend that wH Law participated in the judicial process that resulted in the June 22, 2021, judgment. The Court should, therefore, dismiss the claims against wH Law.

III.    PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA AND
        COLLATERAL ESTOPPEL

Plaintiffs misconstrue the preclusive effect of the underlying sanctions order, which, under

28 U.S.C. § 1738, is given "the same preclusive effect to state court judgments that those

judgments would be given in the courts of the State from which the judgments emerged." *Knutson*

*v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010). The order is preclusive as to the reasons for

the entry of the sanctions order, which did not include anything remotely resembling the

conspiracy theory that Plaintiffs now pursue. Importantly, Plaintiffs did not—but could have—

raised objections and challenges to the impropriety that Plaintiffs now allege. *See Bentonville Sch.*

*Dist. v. Sitton*, 2022 Ark. 1, at 4. This body of Arkansas law is clear, but, as "[a] mere allegation

that a judge's conduct has the appearance of impropriety falls short of the disqualifying standard

that a judge's impartiality be reasonably questioned," *see id.*, the proprietary of the sanctions order

entered against Plaintiffs' former client was not challenged in the Jefferson County litigation. The

resulting state court judgment, which is afforded full faith and credit, is preclusive as to *why*

sanctions were ordered, which conclusively disposes of Plaintiffs' Complaint. All of the claims in

this matter should be dismissed.

IV.    THE COURT SHOULD DISMISS THE COMPLAINT UNDER FEDERAL
       PREEMPTION AND ESTOPPEL PRINCIPLES

Further, the Court should dismiss the Complaint pursuant to the federal judiciary's

abstention jurisprudence.  First, due to the multiple parallel state court proceedings and correlating

exceptional circumstances, the Court should dismiss the Complaint pursuant to the *Colorado River*

abstention doctrine.  Second, in light of the multiple proceedings implicating the state's interest in

enforcing the orders and judgments of its courts, this Court should dismiss the Complaint pursuant

to the *Younger* abstention doctrine.  Under either approach, dismissal is the appropriate remedy in light of the allegations in the Complaint.

### A.    Colorado River *abstention*.

Under the *Colorado River* abstention doctrine, a federal court may divest itself of jurisdiction by abstention when parallel state and federal actions exist, and exceptional circumstances warrant abstention. *See Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)).  Plaintiffs argue the Court should not abstain under *Colorado River* because the many different state court cases do not include all of the defendants named in this case and, as a result, the parties are not identical. (*Response*, at 5).  But, as Plaintiffs well know, that that argument fails.  *See Hammond v. Vandermast*, No. 3:20-CV-03024, 2020 U.S. Dist. LEXIS 146550 (W.D. Ark. Aug. 14, 2020) (rejecting similar argument asserted by Luther Sutter, Lucien Gillham, and Sutter & Gillham, PLLC as counsel).

"The Eighth Circuit Court of Appeals has never explicitly held that proceedings are parallel for purposes of *Colorado River* abstention only if the parties in the state and federal proceedings are identical." *Id.*, at *6.  "Indeed, 'the parties and issues in *Colorado River* itself were not identical to the 'parallel' state-court proceedings[.]'" *Id.* (quoting *Chase Brexton Health Serv., Inc., v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005)).  Other circuits have rejected Plaintiffs' argument that proceedings are not parallel unless the parties are identical.  *See Air Evac EMS, Inc. v. Tex., Dep't of Ins. Div. of Worker's Comp.*, 851 F.3d 507, 520 (5th Cir. 2017) (noting that the identity of the parties is not determinative of parallelism) (citation omitted); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1019 (7th Cir. 2014) (same).

"Further, district courts in the Eighth Circuit have held that identical parties are not necessary to show parallelism between state and federal proceedings." *Hammond*, 2020 U.S. Dist. LEXIS at \*6; *see also Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc.*, 697 F. Supp. 2d 1042, 1049 (N.D. Iowa 2010) (reviewing cases and holding that "proceedings may be 'parallel' for purposes of *Colorado River* abstention even when the parties to the state and federal proceedings are not completely identical"). "Instead, courts look to whether the parties have nearly identical interests." *Hammond*, 2020 U.S. Dist. LEXIS at \*6; *see also Freed*, 756 F.3d at 1019 ("One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have nearly identical interests." (internal quotation marks omitted)); *Ritchie Capital Mgmt., LLC v. Jeffries*, 849 F. Supp. 2d 881, 889 (D. Minn. 2012) ("Litigation involving non-identical parties may be duplicative where the interests of the non-identical parties are aligned or related"); *Pace Constr. Co., Inc. v. Travelers Cas. & Surety Co. of Am.*, 259 F. Supp. 2d 934, 937 (E.D. Mo. 2003) ("[T]he concurrent proceedings are parallel because . . . the parties' interests in each case are clearly aligned and the issues, though not identical, are substantially similar.").

Here, the various parties in this case have nearly identical interests as the parties in the other parallel state court proceedings which satisfies the *Colorado River* requirements. For example, the plaintiffs in the litigation pending in Faulkner County Circuit Court, Case No. 23CV-21-403, include several of the defendants in this case: Bryan Adams, Brandon Adams, and Skylar Adams. The defendants in that case also include all of the plaintiffs in this case: Luther Sutter, Lucien Gillham, and Sutter & Gillham, PLLC. Likewise, the currently-pending appeal from the dismissal order in the Jefferson County wrongful death case, Case No. CV-22-102, involves many of the same parties. The interests of the defendants in this case have nearly identical interests as

the plaintiffs in the Faulkner County case and as the appellees in the Jefferson County action. Namely, that the Jefferson County Circuit Court's dismissal order was appropriate and proper and that the order was a product of the Plaintiffs in this case rather than some other, improper cause. Further, the interests of the Plaintiffs in this case are nearly identical to interests of the defendants in the Faulkner County case and the appellants in the Jefferson County action.

The claims in this case raise substantially similar – if not identical – issues of law and fact that are currently being litigated in at least two separate state court actions. Accordingly, because the parties here have nearly identical interests with the various parties in the parallel state court proceedings, the Court should abstain under the *Colorado River* doctrine. *See Hammond*, 2020 U.S. Dist. LEXIS at *7 (finding nearly identical interests for purposes of the *Colorado River* analysis when "[t]hese claims, even though they are directed at different parties, raise substantially similar–if not identical–issues of law and fact.").

Because the concurrent federal and state proceedings are parallel, *Colorado River* instructs the Court to consider six non-exhaustive factors for determining whether "exceptional circumstances warrant abstention." *Fru-Con. Constr. Corp.*, 574 F.3d at 534.[1]  Plaintiffs argue these various *Colorado River* factors weigh against abstention. (*Response*, at 7–9). The primary factor under this analysis is the avoidance of piecemeal litigation (the third factor in the *Colorado River* analysis), *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 15 (1983), which weighs heavily in favor of abstention. More particularly, Plaintiffs readily admit, as they must, that "the state and federal cases involve similar factual issues[.]" (*Response*, at 7). This concession alone is fatal to Plaintiffs' opposition to *Colorado River* abstention. *See Hammond*, 2020 U.S. Dist. LEXIS at *12–13 (finding this factor supported abstention when, although the

---

[1] The first two *Colorado River* factors are not implicated in this case.

claims in the parallel cases were directed at different individuals, the factual bases of those claims appeared to be identical and the state court's decisions in the pending state court cases would likely resolve the same legal issues surrounding the claims in the federal case and would create the possibility for diverging rulings between the federal and state courts which would result in piecemeal litigation and waste judicial resources).

Plaintiffs instead argue their Section 1983 claim mandates jurisdiction, but Plaintiffs overstate their claim. There is only one federal claim in the Complaint: Plaintiffs' constitutional retaliation claim. The remaining claims are all based on various state-law theories of liability. And Plaintiffs' constitutional claim fails for many reasons as discussed above. Moreover, the state court action, including the Faulkner County case and the pending appeals, will drive resolution of the claims in this case in that Plaintiffs' claims here are all based on the Jefferson County sanctions order currently on appeal. Allowing this case to proceed in light of the multiple parallel state court cases, which are much further along, is the very definition of piecemeal litigation.

Next, Plaintiffs argue the federal claims here are easily severed. (*Response*, at 8). As an initial matter, Plaintiffs erroneously state wH Law did not make any argument regarding severability in their Motion. *Id.* That is wrong. *See* Doc. 17, at 8. Setting aside that error, the federal claim here is not easily severed from the state-law claims because those claims are all based on the same factual allegations and legal issues that are currently pending in the state court proceedings. At least several state courts, including both circuit and appellate courts, will render decisions on these factual allegations and legal issues long before the matters are resolved here. As such, this factor weighs in favor of abstention.

As for the fourth factor – which case has priority – that also weighs in favor of abstention. Here, Plaintiffs concede the issue. (*Response*, at 8) ("The fourth factor likely does favor abstention

because the state litigation was filed first, and the state court was thus the first to obtain jurisdiction over the parties."). Plaintiffs make passing arguments that the state court cases are still in the early stages, but they concede at least two of the state court proceedings are already on appeal to the Arkansas Court of Appeals. (*Id.*). There can be no legitimate dispute that this factor weighs heavily in favor of abstention.

The fifth factor – whether state or federal law controls – also supports abstention. Plaintiffs again argue against abstention based on their assertion of a Section 1983 claim. (*Response*, at 8– 9). But as explained above (and in more detail below), this action is really a case about state law claims with a single frivolous federal claim designed to invoke a federal venue. *See Federated Rural Elec. Inc. Corp. v. Ark. Elec. Coop.*, 48 F.3d 294, 299 (8th Cir. 1995) (noting that it is appropriate to consider whether forum shopping has occurred when applying the *Colorado River* "exceptional circumstances" factor). And abstention is particularly appropriate when a plaintiff, such as the Plaintiffs here, combine a frivolous federal claim with state law claims over which federal courts do not have exclusive jurisdiction. *See Cottrell v. Duke*, 737 F.3d 1238, 1245 (8th Cir. 2013).

The final *Colorado River* factor – the adequacy of the state forum to protect the federal plaintiffs' rights – also weighs in favor of abstention. Here, there are multiple state forums that are adequate to protect Plaintiffs' rights. The same issues have been litigated in multiple state cases, several of which are currently on appeal. Plaintiffs have had, and will have, adequate opportunities to advance their arguments and assert their rights related to these factual and legal issues in the various state court proceedings. The balance of the *Colorado River* factors weigh in favor of abstention. Accordingly, the Court should dismiss this action.

### B.    Younger *abstention*.

The Court should likewise dismiss this case due to the *Younger* abstention doctrine. Plaintiffs' sole argument against the application of *Younger* abstention is that the doctrine cannot apply when the related state court action is "merely a private action between private parties[.]" (*Response*, at 12).  Again, Plaintiffs are wrong.  "The Supreme Court has determined that as long as important state interests are involved, as they are here, *Younger* abstention applies to even civil cases between purely private parties."  *Parejkou v. Dunn County Cir. Ct.*, 209 F. App'x 545, 547–48 (7th Cir. 2006); *see also Kelm v. Hyatt*, 44 F.3d 415, 419–20 (6th Cir. 1995); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13, 14 n.12 (1987).  Plaintiffs' pending appeal of the judgment in the Jefferson County case is "a proceeding implicating a state's interest in enforcing the orders and judgments of its courts," specifically the June 22, 2021, judgment entered in the Jefferson County lawsuit, as is the pending appeal in the Faulkner County case.  *See Minn. Living Assistance, Inc. v. Peterson*, 899 F.3d 548, 552 (8th Cir. 2018).  Accordingly, the Court should abstain pursuant to the *Younger* abstention doctrine.

### C.    *Judicial estoppel.*

Plaintiffs plainly misunderstand wH Law's argument regarding the application of judicial estoppel.  wH Law asserted that doctrine to show the Court that abstention is proper because Plaintiffs are playing fast and loose in this case by filing claims here that are clearly inconsistent with Plaintiffs' positions in the Faulkner County litigation in which they are defendants.  This argument supports abstention, but Plaintiffs ignore this abstention-based argument.[2]

---

[2] Plaintiffs argue, without citation to authority, that wH Law is "bound by the judicial actions" of the other defendants in this case. (*Response*, at 15).  Plaintiffs are again wrong.  wH Law is not bound by the actions of the more than 100 other defendants in this case.  wH Law was not involved in the dismissal order issued in the Jefferson County lawsuit upon which Plaintiffs base their spurious claims here.

## CONCLUSION

For each of the foregoing reasons, the Court should grant wH Law's Motion to Dismiss and dismiss Plaintiffs' claims against Defendants Chris Burks, Brandon Haubert, and wH Law, PLC, pursuant to Rule 12 of the Federal Rules of Civil Procedure.[3]

Respectfully submitted,

BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201
Telephone: (501) 372-6175

By:   Mark W. Hodge, Ark. Bar No. 97205
mhodge@barberlawfirm.com
Jerry D. Garner, Ark. Bar No. 2014134
jgarner@barberlawfirm.com
Adam D. Franks, Ark. Bar No. 2016124
afranks@barberlawfirm.com

*Attorneys for Chris Burks, Brandon Haubert,*
*and wH Law, PLC*

---

[3] wH Law further adopts and incorporates by reference the arguments and authorities raised by the other defendants in this action.