**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | |
|---|---|
| **SUTTER & GILLHAM, P.L.L.C.;** | |
| **LUTHER SUTTER; and LUCIEN GILLHAM** | **PLAINTIFFS** |
| | |
| **VS.**         **NO. 4:23-cv-78-BSM** | |
| | |
| **JUDY SIMMONS HENRY; JACOB FAIR;** | |
| **SCOTT IRBY; WRIGHT, LINDSEY & JENNINGS LLP;** | |
| **TOMMY WILLIAMS; BRYAN ADAMS; ERIC BELL;** | |
| **BRANDON ADAMS; SKYLAR ADAMS; EFREM NEELY;** | |
| **CHRIS BURKS; BRANDON HAUBERT; WH LAW, PLC; and** | |
| **JOHN DOES 1–100** | **DEFENDANTS** |

**JOINT REPLY TO PLAINTIFFS' CONSOLIDATED RESPONSE
TO MOTIONS TO DISMISS OF BRYAN ADAMS; BRANDON ADAMS;
SKYLAR ADAMS; ERIC BELL; WRIGHT, LINDSEY & JENNINGS LLP;
JUDY SIMMONS HENRY; SCOTT IRBY; AND JACOB FAIR**

## I.    INTRODUCTION

These defendants have filed three separate motions to dismiss the plaintiffs'

complaint.  (Doc. 31 (Adams defendants), Doc. 32 (Eric Bell), Doc. 38 (WLJ

Defendants)).  The bases for these motions to dismiss are that there are several

jurisdictional problems with the plaintiffs' complaint, plaintiffs' complaint is barred

by *res judicata* and/or collateral estoppel, and on each of their seven claims,

plaintiffs have failed to plead sufficient facts to plausibly state a claim for relief.

On May 17, 2023, plaintiffs filed one consolidated response to all pending

motions to dismiss, including the three motions filed by these defendants and the

separate motions filed by each of the other defendants.  (Doc. 42).  Plaintiffs'

2903438-v1

response largely fails to respond to these defendants' actual arguments and otherwise only confirms that plaintiffs' complaint should be dismissed.

## II.   ARGUMENT

**A.   This complaint should be dismissed for lack of subject matter jurisdiction.**

On subject-matter jurisdiction, these defendants moved to dismiss on five grounds:

- There is no federal-question jurisdiction and no reason to exercise supplemental jurisdiction over state-law claims.

- The *Rooker-Feldman* doctrine bars plaintiffs' claims based on the orders of the Jefferson County circuit court.

- Plaintiffs failed to exhaust available judicial remedies in state court before bringing suit related to the Jefferson County sanctions and intervention orders.

- Plaintiffs lack standing to challenge the Jefferson County sanctions and intervention orders.

- The *Younger* abstention doctrine requires the dismissal of any claims related to any attorney-disciplinary proceeding against plaintiffs.

(Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A).  Plaintiffs largely do not respond to the arguments these defendants actually raised on these points.  Plaintiffs' responses (or lack thereof) to each point are addressed below.

1.    **There is no federal-question jurisdiction and no reason to exercise supplemental jurisdiction over state-law claims.**

For the first point in their motions to dismiss, these defendants requested that if the court dismisses plaintiffs' federal-question claims for any reason, then it should decline to exercise supplemental jurisdiction over plaintiffs' state-law claims. *See* 28 U.S.C. § 1367(c)(3); (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A.1). Plaintiffs offer no direct response to this point and, therefore, apparently do not dispute that the dismissal of their federal-question claims should result in the dismissal of their entire complaint.

2.    **The *Rooker-Feldman* doctrine bars plaintiffs' claims based on the orders of the Jefferson County circuit court.**

These defendants next moved to dismiss based on the *Rooker-Feldman* doctrine. (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A.2). On the *Rooker-Feldman* doctrine, plaintiffs raise two arguments: (1) *Rooker-Feldman* cannot apply because the plaintiffs were not parties to the Jefferson County action; and (2) "the claims here arise out of a different set of facts than" the Jefferson County action. (Doc. 43, Brief in Support of Response 9–11). These arguments are without merit.

On the first point, plaintiffs ignore the fact that they were parties to the order barring them from intervening in the Jefferson County action. Plaintiffs' complaint expressly premises their due-process claims at least partially on the intervention order. (Doc. 1, Compl. ¶ 69). *Rooker-Feldman* bars any claim based on the intervention order because any such claim would necessarily require a finding that the Jefferson County circuit judge erred in denying plaintiffs' request to

intervene.  *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034–35 (8th Cir. 1999) ("A claim is inextricably intertwined under *Rooker-Feldman* if it succeeds only to the extent that the state court wrongly decided the issues before it or if the relief requested would effectively reverse the state court decision or void its ruling.").

As to the Jefferson County sanctions order, these defendants have plainly stated that the sanctions order takes no action directly against plaintiffs, so while plaintiffs go so far as to argue that the defendants should be judicially estopped from asserting that the plaintiffs were parties to the Jefferson County sanctions order, no such estoppel is necessary.  (Doc. 43, Brief in Support of Response 12–15). The Jefferson County sanctions order speaks for itself, and these defendants do not argue that plaintiffs are parties to that order.

It is further true that *Rooker-Feldman* generally does not apply to non-parties and that it cannot be extended to non-parties based on "privity" concepts imported from preclusion defenses like *res judicata* or collateral estoppel.  *Lance v. Dennis*, 546 U.S. 459, 466 (2006).  However, *Lance* expressly left open whether there were some circumstance where *Rooker-Feldman* could apply to a non-party taking a *de facto* appeal from a state-court judgment.  *Lance v. Dennis*, 546 U.S. 459, 466 n.2 (2006); *see also Shelby Cnty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017) (acknowledging question left open by *Lance*).  To that end, the Sixth Circuit has held that an attorney in the underlying case is one such instance where someone who is technically not a party to a state-court judgment is nevertheless barred from bringing a *de facto* appeal of that

judgment in federal court.  *Fieger v. Ferry*, 471 F.3d 637, 644 (6th Cir. 2006) ("Although Fieger was not a party in the state court cases, and while—generally— the *Rooker-Feldman* doctrine does not apply to bar a suit in federal court brought by a party that was not a party in the preceding action in state court, Fieger (whether on behalf of his clients or on his own behalf) cannot seek in federal court to undo a state court judgment.") (cleaned up).  *Rooker-Feldman* will not allow these plaintiffs to seek to undo a state-court judgment against their client.

Second, plaintiffs argue that "the claims here arise out of a different set of facts than" the Jefferson County action because the Jefferson County action arose out of "the death of Luke Baker in 2015," and this case arises out of the defendants' alleged litigation conduct in the Jefferson County action.  (Doc. 43, Brief in Support of Response 11).  This is not the test of *Rooker-Feldman*, however.  *Rooker-Feldman* applies if the plaintiffs' claim in federal court "succeeds only to the extent that the state court wrongly decided the issues before it or if the relief requested would effectively reverse the state court decision or void its ruling." *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034–35 (8th Cir. 1999).  Further, the Eighth Circuit has rejected exceptions to *Rooker-Feldman* for fraud on the court or procedural due-process, notwithstanding the fact that such exceptions would necessarily arise out of events that occurred during the state-court litigation, and not the underlying claim itself.  *Id.* at 1035–36.  In a case that the plaintiffs do not address at all, the Seventh Circuit recently held that *Rooker-Feldman* bars claims, just like this one, of an alleged conspiracy between the defendants and the state-

court judge. *See Hadzi-Tanovic v. Johnson,* 62 F.4th 394, 404 (7th Cir. Mar. 14, 2023). *Rooker-Feldman*, therefore, applies both to claims that seek to appeal the substance of the underlying state judgment and to alleged wrongdoing in obtaining that judgment.

It is further simply wrong for plaintiffs to claim that they are not seeking in this case to litigate "the death of Luke Baker in 2015." (Doc. 43, Brief in Support of Response 11). Plaintiff's complaint expressly seeks a declaration that "Luke Baker did not kill himself." (Doc. 1, Complaint, Prayer). Plaintiffs also allege that the Jefferson County sanctions order was contrary to allegedly "substantial evidence Luke Baker did not commit suicide" and include a more than eight-page long paragraph of what they believe was sufficient evidence to prove claims in the Jefferson County action. (*Id.* ¶¶ 32, 99). Plaintiffs are expressly attempting to litigate in this action the claims that were dismissed with prejudice in the Jefferson County action.

Ultimately, plaintiffs are expressly seeking damages that they claim to have sustained as a result of a state-court judgment. (*See* Doc. 43, Brief in Support of Response 27). These claims make this, in effect, an appeal of the Jefferson County sanctions order, as plaintiffs could obtain their requested relief only if this Court first overturned the Jefferson County sanctions order. *Rooker-Feldman* bars plaintiffs' claims.

**3.     Plaintiffs failed to exhaust available judicial remedies in state court before bringing suit related to the Jefferson County sanctions and intervention orders.**

In their motions to dismiss, these defendants argued that this Court lacked subject-matter jurisdiction over the procedural due-process claims asserted in Counts I and II of plaintiffs' complaint because plaintiffs failed to exhaust available state judicial remedies before bringing this lawsuit. *See Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000); (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A.3). Specifically, plaintiffs could have appealed from the denial of their motion to intervene in the Jefferson County action, and, if successful in such an appeal, plaintiffs then would have been allowed to challenge the sanctions order in state court. *See Duffield v. Benton Cnty. Stone Co.*, 369 Ark. 314, 316, 254 S.W.3d 726, 728 (2007); *Pearson v. First Nat. Bank of DeWitt*, 325 Ark. 127, 131, 924 S.W.2d 460, 462 (1996) (reversing denial of intervention motion and ordering that intervenor be allowed to challenge order appointing receiver); (Ex. A to Motion, Jefferson County Docket).

Plaintiffs offer no response at all to this argument, leaving it undisputed. Because plaintiffs failed to exhaust available judicial remedies in state court as to the Jefferson County sanctions and intervention orders, this Court lacks jurisdiction over the procedural due-process claims asserted in Counts I and II of plaintiffs' complaint.

**4.     Plaintiffs lack standing to challenge the Jefferson County sanctions and intervention orders.**

On standing, defendants raised two arguments: (1) plaintiffs' claimed interest in any award of attorneys' fees and their alleged attorneys' lien in the Jefferson

County action are too tenuous and unrelated to the alleged injury in fact to confer standing; and (2) plaintiffs should be put to their proof regarding their allegations that Dr. Lee Davis or some unidentified client terminated plaintiffs' representation due to some conduct of the defendants and that the allegedly pending attorney-disciplinary proceeding has prevented them from obtaining admission in other states.  (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A.4).

In response, plaintiffs leave standing to three sentences at the very end of their response brief.  (Doc. 43, Brief in Support of Response 42).  These three sentences simply refer to plaintiffs' arguments on other points and accuse defendants of "set[ting] up straw men."  (*Id.*)  These defendants cannot discern, however, any response to the arguments they actually raised, which indicates that plaintiffs have no response to provide to these defendants' actual arguments.  Those arguments, further, addressed every theory of standing these defendants could identify from the allegations of the plaintiffs' complaint and, therefore, were not "straw men."  Moreover, the one "straw man" argument plaintiffs identify is the argument "that Plaintiffs do not have standing to challenge an Order directed at their clients, not them."  (*Id.*)  As a "straw man" argument typically refers to arguing against a position one's opponent has never taken,[1] it appears, then, that there is no real dispute that plaintiffs "do not have standing to challenge an Order directed at their clients, not them."  Finally, plaintiffs certainly have not offered any proof in support of standing, as plaintiffs were required to do once challenged by the

---

[1] *See* "Straw Man," *Black's Law Dictionary* (11th ed. 2019) ("A tenuous and exaggerated counterargument that an advocate makes for the sole purpose of disproving it.").

defendants. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

Plaintiffs' complaint should be dismissed for lack of standing.

      **5.**     **The *Younger* abstention doctrine requires the dismissal of any claims related to any attorney-disciplinary proceeding against plaintiffs.**

The defendants' arguments on *Younger* abstention were limited solely to any claims related to any attorney-disciplinary proceedings against plaintiffs, although, as noted in the opening brief in support of their motion, the alleged filing of an attorney-disciplinary complaint is one of only two things that defendants Irby and Fair are actually alleged to have done in this case (the other is causing the Faulkner County complaint to be filed). (Doc. 1, Compl. ¶ 70; Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.A.5). Plaintiffs' response does not squarely address the arguments actually raised by these defendants. (*See* Doc. 43, Brief in Support of Response 11–12).

For example, plaintiffs acknowledge, as they must, that *Younger* can apply to civil actions between private parties that implicate sufficiently important state interests. (Doc. 43, Brief in Support of Response 11 (*citing Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)). Nevertheless, plaintiffs contend that "[t]here is no challenge to important state interests" in this case. (*Id.* at 12). Binding precedent from the United States Supreme Court and the Eighth Circuit, however, establish that pending state attorney-disciplinary proceedings, specifically including Arkansas state attorney-disciplinary proceedings, present sufficiently important state interests to warrant *Younger* abstention. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Plouffe v. Ligon*, 606 F.3d 890,

892 (8th Cir. 2010).  Plaintiffs make no effort to distinguish *Middlesex County* and *Plouffe*, which require *Younger* abstention as to any claim based on any attorney-disciplinary proceeding pending against plaintiffs.

**B.     Plaintiffs' complaint should be dismissed under Rule 12(b)(6) because plaintiffs have failed to allege any plausible claims against these defendants.**

These defendants next moved to dismiss plaintiffs' complaint under Rule 12(b)(6) based on *res judicata*/collateral estoppel and because on each claim, plaintiffs had failed to alleged facts to plausibly show a claim to relief.  (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.2).  Plaintiffs' counterarguments on each point are entirely without merit.  Plaintiffs' complaint should be dismissed.

**1.     Plaintiffs' claims are barred by *res judicata* and/or collateral estoppel.**

As one basis for dismissal under Rule 12(b)(6), these defendants have asserted the defenses of *res judicata* and collateral estoppel.  *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763 (8th Cir. 2012) (holding that if apparent from the face of the complaint, documents attached to the complaint, and public records, a *res judicata* defense can be raised by a motion to dismiss); (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.1).  As a preliminary matter, plaintiffs cite the wrong law on this point.  Arkansas state law, not federal law, governs the preclusive effect of the state-court judgment in the Jefferson County action.  *See Schwartz v. Bogen*, 913 F.3d 777, 781 (8th Cir. 2019) (applying state law to determine preclusive effect of state-court judgment in ERISA action).

In addition, plaintiffs improperly conflate *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). For example, under Arkansas law, and contrary to plaintiffs' response, only collateral estoppel is subject to a requirement that the issue in question be "actually litigated." (Doc. 43, Brief in Support of Response 17). "*Res judicata* bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *State Off. of Child Support Enf't v. Willis*, 347 Ark. 6, 13, 59 S.W.3d 438, 443 (2001). On the other hand, and again contrary to plaintiffs' response, only *res judicata* requires that the two actions involve the same claim or cause of action. (Doc. 43, Brief in Support of Response 16). Collateral estoppel requires only that the issue sought to be precluded must be the same as that involved in the prior litigation. *Crockett & Brown, P.A. v. Wilson*, 314 Ark. 578, 581, 864 S.W.2d 244, 246 (1993).

On *res judicata*, plaintiffs first challenge the requirement that the two lawsuits (this case and the Jefferson County action) involve the same parties or those in privity with those parties. The Arkansas Supreme Court has expressly held that an attorney-client relationship is sufficient to satisfy the privity requirement of *res judicata*. *Jayel Corp. v. Cochran*, 366 Ark. 175, 182, 234 S.W.3d 278, 284 (2006). That should end this inquiry. However, plaintiffs argue, citing nothing, that they should not be considered in privity with their former client if, as

defendants argue, the Jefferson County sanctions order takes no action directly against these plaintiffs.  (Doc. 43, Brief in Support of Response 16).  On this point, plaintiffs are conflating inquiries related to standing under federal law with privity under Arkansas law.  "Privity exists for purposes of *res judicata* when two parties are so identified with one another that they represent the same legal right."  *Jayel Corp.*, 366 Ark. at 178, 234 S.W.3d at 281.  Arkansas appellate courts, further, "have never required strict privity in the application of *res judicata*, but instead have supported the idea that there must be a 'substantial identity of parties' to apply the doctrine."  *Francis v. Francis*, 343 Ark. 104, 113, 31 S.W.3d 841, 846 (2000).  Plaintiffs do not have standing to challenge the Jefferson County sanctions order because that order awards no relief against them and does not mention them (and is, therefore, much less likely to cause the sort of reputational harms that they are using, in part, for standing).  But plaintiffs can be and still are bound by the Jefferson County sanctions order because they are in privity with someone bound by it (their former client), and although that order does not expressly mention their names, the sanctions order did arise, in part, out of these plaintiffs' conduct in the Jefferson County action.  *Res judicata* bars plaintiffs from seeking to relitigate an order that sanctioned their former client for conduct including these plaintiffs' actions.

Next, plaintiffs claim that this case and the Jefferson County action do not arise out of the same claim or cause of action.  (Doc. 43, Brief in Support of Response 16).  As noted in Section A.2, above, plaintiffs are expressly seeking to

relitigate the cause of death of Luke Baker, just as in the Jefferson County action. (*Compare* Doc. 1, Complaint ¶ 32, *with* Ex A. to Complaint Jefferson County Complaint ¶¶ 6–33 *and* Ex. B to Motion, Jefferson County Am. Complaint ¶¶ 7–31). Moreover, the primary "misconduct" alleged as to these defendants was in obtaining the allegedly "false" Jefferson County sanctions order.  (Doc. 1, Compl. ¶ 98).  *Res judicata* will not allow plaintiffs to challenge the findings of a prior judgment as false.

Third, plaintiffs challenge the Jefferson County circuit court's jurisdiction to enter the sanctions order based on the fact that there was a pending motion for nonsuit on file when that court entered the sanctions order.  (Doc. 43, Brief in Support of Response 17–18).  In general, the mere filing of a motion for nonsuit is not effective to dismiss the action.  *Blaylock v. Shearson Lehman Bros.*, 330 Ark. 620, 624, 954 S.W.2d 939, 941 (1997).  As such, "all dismissals from litigation, including those voluntary dismissals without prejudice to which a plaintiff may have an absolute right," require entry of an order of dismissal to be effective.  *Id.* at 924, 954 S.W.2d at 941.  Here, the Jefferson County court entered no such order, so the circuit court retained jurisdiction over the parties and subject matter of that case at the time that it entered the sanctions order.  *See White v. Perry*, 348 Ark. 675, 682–83, 74 S.W.3d 628, 634 (2002) (Glaze, J., concurring) (noting that a motion for nonsuit "in no way means the trial court may not consider any collateral Rule 11 issue that might still be pending"); *Cowan v. Schmidle*, 312 Ark. 256, 258, 848 S.W.2d 421, 423 (1993) (considering denial of sanctions on appeal notwithstanding

lack of jurisdiction over appeal of nonsuit order); *Watkins v. Watkins*, 2013 Ark. App. 632, at 5 (holding that motion for nonsuit did not deprive the circuit court of jurisdiction to award attorneys' fees under Ark. R. Civ. P. 54 or its inherent authority).

Finally, plaintiffs challenge whether the Jefferson County action was a valid and final judgment because some parties to it have appealed, and according to plaintiffs, "there is no basis to affirm a dismissl [sic] with prejudice." (Doc. 43, Brief in Support of Response 17). An appeal, however, does not prevent a judgment from being "final" for purposes of *res judicata*. *See John Cheeseman Trucking, Inc. v. Pinson*, 313 Ark. 632, 637, 855 S.W.2d 941, 943 (1993). Moreover, Gena Downey Baker (plaintiffs' former client with whom they are in privity) did not appeal the Jefferson County sanctions order, so that order will remain in effect and final as to Ms. Baker and the plaintiffs no matter the outcome of another state-court plaintiff's appeal.

On collateral estoppel, beyond the elements of that defense that are common to a *res judicata* defense, such as jurisdiction, plaintiffs challenge only the issue of whether the Jefferson County sanctions order was "actually litigated." On this point, plaintiffs argue that their client (who was served with and appeared at the hearing to defend the sanctions motion (Ex. C to Compl., Jefferson County Sanctions Order, 1–2, 6)) and the attorneys who remained in that case did not do a good enough job defending the sanctions motion. (Doc. 43, Brief in Support of Response 17). "In the context of collateral estoppel, 'actually litigated' means that

the issue was raised in pleadings, or otherwise, that the defendant had a full and fair opportunity to be heard, and that a decision was rendered on the issue." *Powell v. Lane*, 375 Ark. 178, 186, 289 S.W.3d 440, 445 (2008).  A party who "chose not to be heard," despite being afforded an opportunity, is still deemed to have "actually litigated" the issues in the case.  *Powell v. Lane*, 375 Ark. 178, 185, 289 S.W.3d 440, 445 (2008).  The Jefferson County sanctions order actually litigated the facts that the plaintiffs allegations in that matter were "baseless" and that the conduct of the Jefferson County plaintiffs and their attorneys, including plaintiffs here, were improper.  Plaintiffs are barred from relitigating those issues in this case.

2. **Counts I and II:  Plaintiffs' complaint does not state a constitutional claim for retaliation or conspiracy to deprive plaintiffs of their procedural due process rights.**

On plaintiffs' constitutional claims, asserted in Counts I and II of plaintiffs' complaint, these defendants moved to dismiss on four grounds:

- These defendants were not state actors, nor have plaintiffs adequately alleged a conspiracy with the Jefferson County circuit judge.

- Plaintiffs have not adequately pleaded a claim of retaliation.

- Plaintiffs have not adequately pleaded a due-process claim, whether procedural or substantive.

- Plaintiffs waived any constitutional claim by expressly waiving any conflict caused by defendant Neely's appearance in the case, by voluntarily withdrawing from the Jefferson County action, and by failing to appeal from the denial of their motion to intervene.

(Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.2).

Plaintiffs' responses to each point are addressed below.

### a. These defendants were not state actors, nor have plaintiffs adequately alleged a conspiracy with the Jefferson County circuit judge.

These defendants first moved to dismiss plaintiffs' constitutional claims

because as private citizens and lawyers, these defendants are not state actors. *See*

*DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999); (Docs. 33, 34, 39, Briefs in

Support of Motions to Dismiss, Section III.B.2.a). Plaintiffs do not assert that the

defendants are directly state actors; instead, plaintiffs claim that the defendants

are liable for an alleged conspiracy with the Jefferson County circuit judge. Even

on this conspiracy theory, plaintiffs' response all but concedes that their complaint

does not adequately plead state action, as they expressly ask this Court to overrule

prior, binding Eighth Circuit case law on what is required to plead a conspiracy

between private parties and a state official. (Doc. 43, Brief in Support of Response

21).

Plaintiffs' response further confirms that plaintiffs rest their entire claim of

state action on Paragraphs 44–57 of the Complaint and two Eighth Circuit cases:

*DuBose* (cited above) and *Audio Odyssey, Ltd. v. Brenton First Nat. Bank*, 245 F.3d

721, 726 (8th Cir. 2001), *reh'g en banc granted, opinion vacated* (July 30, 2001), *on*

*reh'g en banc sub nom. Audio Odyssey v. Brenton First Nat. Bank*, 286 F.3d 498 (8th

Cir. 2002). *Audio Odyssey* is easily addressed, as it has nothing to do with an

alleged corrupt conspiracy between private litigants and a state-court judge. 245

F.3d at 726. Thus, it provides this Court with no authority regarding the plaintiffs' pleading requirements in this case.

In *DuBose*, the "key factor in the case" was the judge's assurance, given in private to one party, that the party could "enjoy his retirement" and that the trial exhibits of the opposing party were "covered." 245 F.3d at 726. "In context, these statements could reasonably be taken by a finder of fact to mean that the judge, Mr. Friedman, and Mr. Friedman's lawyers had all agreed, in advance, that Mr. Friedman would win the case." *Id.*

By contrast, plaintiffs here allege only that there were *ex parte* communications between the Jefferson County circuit judge and defendant Efrem Neely in which Neely allegedly would learn "what the Judge's decisions would be." (Doc. 1, Complaint ¶ 55). Plaintiffs' complaint does not identify any of these decisions, and plaintiffs do not allege that the Jefferson County circuit judge ever assured anyone that the Adamses would win the case as a whole or agreed with these defendants as to how that outcome would be obtained. Plaintiffs' complaint further does not allege any facts to plausibly show that these defendants and the Jefferson County circuit judge reached an agreement to violate these plaintiffs' constitutional rights, nor would allegedly "fixing" the outcome of a case violate any rights of attorneys who voluntarily withdrew from the matter before the judgment was entered. Plaintiffs' bare, conclusory allegations of a conspiracy between these defendants and the Jefferson County circuit judge do not plausibly show that defendants were state actors.

### b.   Plaintiffs have not adequately pleaded a claim of retaliation.

Beyond the lack of state action, these defendants challenged the retaliation claim asserted in Count I of plaintiffs' complaint on three grounds: (1) in representing a client in a lawsuit, plaintiffs were not engaged in any protected activity; (2) the Jefferson County sanctions order took no action against the plaintiffs, makes no direct reference to them, and does not even use their names; and (3) the Jefferson County sanctions order is not alleged to have caused anything but reputational harms, which are legally insufficient to chill a person of ordinary firmness from engaging in the protected activity. (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.2.b). These arguments are all well founded.

On whether plaintiffs were engaged in a protected activity, these defendants relied on *Mezibov v. Allen*, 411 F.3d 712, 720 (6th Cir. 2005), which held that an attorney has no personal First Amendment rights to represent a client in a court proceeding. The *Mezibov* court distinguished *Legal Services Corporation v. Velazquez*, 531 U.S. 533 (2001), on which plaintiffs here chiefly rely (*see* Doc. 43, Brief in Support of Response 29), on four grounds that are equally applicable to this case: (1) the *Velazquez* attorneys were seeking in federal court to vindicate their clients' First Amendment rights, not their own personal rights; (2) the regulation at issue in *Velazquez* was akin to a prior restraint, prohibiting the plaintiffs in that case from ever raising their arguments in court, whereas the Jefferson County sanctions order was issued after and in response to the conduct of these plaintiffs

and others in the litigation; (3) the regulation at issue in *Velazquez* forbade both in-court argument by the attorneys and out-of-court consultation between the attorneys and their clients, where this sanctions order does not bar in-court argument or out-of-court consultation, or order anything else against these plaintiffs; and (4) "*Velazquez* involved the complicating twist of a government funding program that the Court deemed a limited public forum for First Amendment purposes." 411 F.3d at 720.

The other authorities plaintiffs cite, likewise, prohibit restrictions on attorneys only as necessary to protect the rights of the attorneys' clients. *See Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1, 7 (1964) ("A *State* could not, by invoking the power to regulate the professional conduct of attorneys, infringe in any way the right of individuals and the public to be fairly represented in lawsuits authorized by Congress to effectuate a basic public interest."); *Miller v. Bonta*, No. 22CV1446-BEN (JLB), 2022 WL 17811114, at *4 (S.D. Cal. Dec. 19, 2022) (focusing on the effects of the fee-shifting statute on private parties' ability to find lawyers to take their Second Amendment claims); *In re Foster*, 253 P.3d 1244, 1252 (Colo. 2011) (recognizing "that the right to petition is *personal* and does not extend to petitioning activity on behalf of others") (emphasis in original). Whatever rights plaintiffs' former client may have had in bringing the Jefferson County action, plaintiffs have cited nothing to show that they had a personal First Amendment right to represent their client in that lawsuit.

These defendants next challenged plaintiffs' retaliation claim because the Jefferson County sanctions order took no action against these plaintiffs; it simply dismissed their then former client's lawsuit with prejudice. (*See generally* Ex. C to Compl., Sanctions Order). Plaintiffs appear to agree with this point, as they repeatedly quote these defendants' arguments on this point without rebuttal. (Doc. 43, Brief in Support of Response 10, 16). The Jefferson County sanctions order took no adverse action against plaintiffs, so plaintiffs have no constitutional retaliation claim. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Finally, these defendants challenged plaintiffs' retaliation claim because plaintiffs have alleged only reputational harms, which as a matter of law, are insufficient to chill a person of ordinary firmness from engaging in a constitutionally protected activity. *See Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010). Plaintiffs' response alleges only speculative harms that might follow from the Jefferson County sanctions order: *If* the Faulkner County circuit court affords the Jefferson County sanctions order preclusive effect, *then* there would be a judgment against these plaintiffs. *If* there is a judgment against these plaintiffs in the Faulkner County action, and *if* plaintiffs applied for admission in some other state or federal court, *then* that judgment would have to be reported to in the plaintiffs' bar applications. *If* plaintiffs sought to be class counsel, *then* a judgment in the Faulkner County case "would be an issue." (Doc. 43, Brief in Support of Response 27). Plaintiffs never explain how these speculative harms, none of which are alleged to have ever occurred or even been contemplated at the time the

Jefferson County sanctions order was entered, would chill an attorney of ordinary firmness from representing a client (which is not a constitutionally protected activity). Plaintiffs have not adequately pleaded a retaliation claim.

### c.   Plaintiffs have not adequately pleaded a procedural due-process claim.

These defendants next moved to dismiss the procedural due-process claim asserted in Count II of plaintiffs' complaint on two grounds: (1) plaintiffs have not adequately alleged that the Jefferson County sanctions order deprived them of any property or liberty interest; and (2) plaintiffs' complaint does not identify why attorneys who had already withdrawn from a matter would be entitled to any notice or opportunity to be heard on a sanctions motion that neither sought nor obtained relief from the attorneys. (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.2.c).

Plaintiffs' response on both points confirms that their procedural due-process claim depends on the idea that the Jefferson County sanctions order somehow deprived them of the right to practice law, as the right to practice law is both the plaintiffs' claimed liberty or property interest and the reason plaintiffs claim that they were entitled to notice and an opportunity to be heard on a motion filed after they had withdrawn. (Doc. 43, Brief in Support of Response 22–23). The Jefferson County sanctions order speaks for itself. (Ex. C to Compl., Jefferson County Sanctions Order). It plainly does not take any action against these plaintiffs' law license or their right to practice law.

> **d.  Plaintiffs have not adequately alleged a substantive due-process claim.**

Plaintiffs' response asserts that plaintiffs have a substantive due-process claim.  (Doc. 43, Brief in Support of Response 30–31).  These defendants can find no such claim in plaintiffs' complaint.  But to the extent that the complaint attempts to assert such a claim, it fails.  To that end, plaintiffs have not alleged that they have any constitutional rights at stake in this matter, let alone "fundamental rights and liberties."  (*Id.* at 31).  As discussed in Section II.B.2.b, above, the right to access the courts may be a fundamental right, but it was not a right that belonged personally to these plaintiffs, as they were serving only as lawyers for their client in the Jefferson County action.  Plaintiffs' response, further, does not identify which of plaintiffs' baseless allegations should shock the conscience of the court.  (*Id.*)  To the extent plaintiffs asserted a substantive due-process claim, it should be dismissed.

> **e.  Plaintiffs waived any constitutional claim by expressly waiving any conflict caused by defendant Neely's appearance in the case, by voluntarily withdrawing from the Jefferson County action, and by failing to appeal from the denial of their motion to intervene.**

These defendants finally argued that plaintiffs had waived their constitutional claims through three actions.  (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.2.d).  Plaintiffs' response directly addresses only one, asserting that the idea that their waiving any conflict caused by defendant Neely's appearance in the case waived these constitutional claims is "ludicrous."  (Doc. 43, Brief in Support of Response 27).  While plaintiffs claim that they never expected the actions that are alleged to have followed Neely's entry of the case, they

knew of Neely's relationship with the Jefferson County circuit judge, and at bottom, that relationship is the basis for plaintiffs' constitutional claims. By waiving any conflict between defendant Neely and the judge, plaintiffs waived these claims.

On their withdrawal from the Jefferson County action, plaintiffs appear to argue that they withdrew from the Jefferson County action only because of other alleged wrongdoing by the defendants.

> The Burks Defendants filing of the frivolous counterclaim was a substantial step towards the overall conspiracy to destroy the Plaintiffs. Para. 68. Without the counterclaim, there would have been no conflict of interest. Had there been no conflict of interest, Plaintiffs would not have had to withdraw. Had Plaintiffs not withdrawn, there would have been no Order sanctioning the Plaintiffs, which is one basis for the federal claims in this case.

(Doc. 43, Brief in Support of Response 2).

The trouble here is that plaintiffs are ignoring the fact that the counterclaim in the Saline County action was, as indicated, a counterclaim. Plaintiffs had first sued their own client, David Westbrook, for a declaration that they did not commit malpractice in their representation of Westbrook. (Ex. A to Reply, Saline County Complaint; Ex. B to Reply, Saline County Amended Complaint). If the Saline County action created a "conflict of interest" that required plaintiffs to withdraw from representing their client in the Jefferson County action, that conflict was created on September 10, 2019, when plaintiffs filed their complaint against Westbrook, not when Westbrook later filed a turnaround counterclaim. (Ex. C to Reply, Saline County Counterclaim). Moreover, plaintiffs never explain why a counterclaim brought by David Westbrook in the Saline County action required plaintiffs to withdraw from representing their client in the Jefferson County action.

These defendants never sought these plaintiffs' disqualification from the Jefferson County action, nor could the possibility that plaintiffs might become witnesses in the Jefferson County action require plaintiffs to withdraw from pretrial proceedings in that case. *See Howard v. Baptist Health*, 2022 Ark. 214, at 5, 654 S.W.3d 809, 813. Had plaintiffs not voluntarily withdrawn, they would have received notice and an opportunity to be heard on the Jefferson County sanctions order. Their own voluntary and unnecessary withdrawal, therefore, waived any claims plaintiffs might have arising out of the Jefferson County sanctions order.

Finally, plaintiffs apparently do not contest that they also waived these claims by failing to appeal from the denial of their motion to intervene in that case. *See* Section II.A.3, above.

### 3.     Count III: Plaintiffs' complaint does not state a claim for defamation under Arkansas law.

The primary defect in plaintiffs' defamation claim is that their complaint does not identify the out-of-court statements at issue with specificity or allege who made them, how they were published, to whom, that the statements were untrue, and what damage was suffered. *See Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996); (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.3). In their response, plaintiffs identify the alleged defamatory statements only as "WLJ" going to Arkansas Business to get "the allegations in the lawsuit against Sutter & Gillham published throughout the state" and that "WLJ got Mr. Westbrook and Kim Phillips to publish false allegations to a blogger that Plaintiffs had bribed he [sic] coroner." (Doc. 43, Response 42 (*citing* Doc. 1,

Complaint ¶¶ 73–75)).  The allegations regarding Mr. Westbrook, Ms. Phillips, and some unidentified "blogger" are nowhere in the complaint, and even plaintiffs' response does not allege what statements were published to the blogger, so they provide no support for plaintiffs' defamation claim.  The allegations regarding Arkansas Business fare no better.  Plaintiffs allege no facts regarding how any defendant caused Arkansas Business to run an article, nor does plaintiffs' complaint identify when that article ran, in what forms it was published, or a single actual sentence from an article that was false and caused plaintiffs any damages. Plaintiffs have failed to plead a plausible defamation claim.

Plaintiffs' response further confirms, moreover, that plaintiffs do not dispute many of the limitations these defendants identified on the defamation claim.  To that end, plaintiffs do not dispute that their defamation claim can only be based on defendants' out-of-court statements (*see Pogue v. Cooper*, 284 Ark. 202, 206, 680 S.W.2d 698, 700 (1984)), that any oral defamation claim is subject to a one-year statute of limitations (*see* Ark. Code Ann. § 16-56-104); and that the attorney-defendants are immune from any claim based on a statement made in connection with professional services if defendants were merely negligent in determining the truth of the alleged statement (*see* Ark. Code Ann. § 16-114-303).  (*See* Doc. 43, Brief in Support of Response 18–19, 41–42).  The only limitation plaintiffs appear to dispute is qualified immunity, which these defendants asserted only as to any claim based on an alleged report to the Arkansas Committee on Professional Conduct. Plaintiffs have not adequately alleged any facts to support an exception to qualified

immunity; however, since plaintiffs' response does not identify any such disciplinary report as being at issue in plaintiffs' defamation claim, it appears that qualified-immunity is not really in dispute in this motion. (*See id*. at 41–42).

4.      **Count IV: Plaintiffs' tortious-interference claim is not asserted against defendants Irby, Fair, and Bell and should be dismissed as to defendants Henry, WLJ, and the Adamses.**

On plaintiffs' tortious-interference claim, these defendants raised two arguments: (1) this claim could not be based on the defendants' in-court litigation conduct, *see Pogue v. Cooper*, 284 Ark. 202, 206, 680 S.W.2d 698, 700 (1984); and (2) plaintiffs had not adequately alleged that any defendant named in this claim knew of plaintiffs' relationship with Lee Davis or took any action intended to interfere with plaintiffs' relationship with Mr. Davis, as Mr. Davis is the only relationship specifically identified in plaintiffs' complaint as at issue in this claim (*see* Doc. 1, Complaint ¶ 129). (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.4).

On the first point, every single alleged action identified in plaintiffs' response was an in-court action taken in the conduct of litigation. (Doc. 43, Brief in Support of Response 40–41). Defendants are absolutely immune from a tort claim based on these actions, and plaintiffs cite no authority to support their claims. *See Pogue v. Cooper*, 284 Ark. 202, 206, 680 S.W.2d 698, 700 (1984).

On the second point, plaintiffs now claim that the relationship at issue in this claim is their representation of Gena Baker and their alleged attorneys' lien in the Jefferson County action. This is not the relationship alleged in the plaintiffs' complaint. (Doc. 1, Complaint ¶ 129). Moreover, as discussed in Section II.B.2.e,

above, plaintiffs voluntarily withdrew from representing Ms. Baker in the Jefferson County action.  As such, defendants did not induce or cause a breach or termination of plaintiffs' relationship with Ms. Baker.  *See Mid-South Beverages, Inc. v. Forrest City Grocery Co.*, 300 Ark. 204, 205, 778 S.W.2d 218, 219 (1989).  Plaintiffs did that all by themselves.  Plaintiffs have wholly failed to plead a tortious-interference claim against any defendant.

> **5.    Count V: Plaintiffs' complaint does not adequately allege a claim of malicious prosecution or abuse of process against these defendants.**

On malicious prosecution, these defendants' argument was that the plaintiffs had not alleged any facts to demonstrate that these defendants were the determining factor in a decision to file or not file Westbrook's counterclaim in the Saline County action, which is the alleged basis for this claim.  (Doc. 1, Complaint, Count V; Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.5).  The plaintiffs' response does not address this argument at all.  Plaintiffs, instead, simply seek to lump all of the defendants together.  (Doc. 43, Brief in Support of Response 35).  Plaintiffs have failed to state a plausible claim for malicious prosecution against these defendants.

On abuse of process, these defendants' argument was that the plaintiffs' complaint had not identified any process that had allegedly been abused.  *See* (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.5); *Union Nat'l Bank of Little Rock v. Kutait*, 312 Ark. 14, 17, 846 S.W.2d 652, 654 (1993).  In their response, the only actual process identified is a trial subpoena issued to Westbrook to attend a hearing in September 2019.  This subpoena is never mentioned in

plaintiffs' complaint.  As to the remaining actions cited in plaintiffs' response, Westbrook's counterclaim in the Saline County action and the Faulkner County complaint cannot be the basis of an abuse-of-process claim.  *Union Nat'l Bank of Little Rock v. Kutait*, 312 Ark. 14, 17, 846 S.W.2d 652, 654 (1993).  As discussed elsewhere, Westbrook's counterclaim, further, did not cause plaintiffs' withdrawal from the Jefferson County action.  As to the Jefferson County sanctions order, it takes no action directly against these plaintiffs, and plaintiffs have not alleged any facts to show that in seeking an order that took no action against these plaintiffs, these defendants somehow had an ulterior motive to harm these plaintiffs.  Likewise, as to opposing plaintiffs' motion to intervene in the Jefferson County action, plaintiffs have alleged no facts to plausibly show that defendants opposed intervention for any reason other than a belief that plaintiffs were not entitled to intervene in the Jefferson County action.

> **6.   Count VI: "Barratry," "champerty," and "maintenance" are not existing claims under Arkansas law, so defendants could not have engaged in a conspiracy to commit those torts.**

On plaintiffs' civil-conspiracy claim, these defendants first argued that plaintiffs had alleged only conclusions, and not facts, to show that a conspiracy exists.  (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.6).  Plaintiffs' response simply repeats the allegations that have been addressed repeatedly elsewhere.  (Doc. 43, Brief in Support of Response 35–36).

The more basic problem that these defendants identified in their motions to dismiss is that the plaintiffs' conspiracy claim rests on torts (barratry, champerty,

and maintenance) that do not exist under Arkansas law.[2]  Plaintiffs sole case to support their claims on these torts is a pre-statehood case from a territorial court. *See Fletcher v. Ellis*, 9 F. Cas. 266, 266 (Super. Ark. Terr. 1836).  That case held merely that actual financial assistance in bringing a lawsuit, rather than an offer of assistance, was necessary to state a claim for "maintenance" and that the complaint in that case failed to allege such a claim.  A single, nearly 200-year old case from before the State of Arkansas existed, which ultimately dismissed the maintenance claims asserted in that case, is no support at all for an assertion that maintenance is a viable claim today.  Moreover, plaintiffs here, just as in *Fletcher*, do not allege that any of these defendants even offered, let alone provided, financial assistance in connection with Westbrook's counterclaim in Saline County.

Plaintiffs' response next cites Ark. Code Ann. § 1-2-119, which adopts the common law of England to the extent it is not inconsistent with the laws of this country or this state.  The problem with this argument is that the Arkansas Supreme Court expressly addressed this statute's predecessor in *Lytle v. State*, 17 Ark. 608, 665 (1857), *aff'd*, 63 U.S. 193 (1859).  The *Lytle* court, further, in a lengthy and scholarly opinion, explained in detail why the English common law of barratry, champerty, and maintenance was not part of Arkansas law.  *See generally id.*  In the more than the 165 years since *Lytle*, the only time the Arkansas Supreme Court has addressed claims like these is in holding that statutes attempting to create such

---

[2] To the extent plaintiffs' complaint is construed to allege a civil conspiracy as to any other intentional torts, these defendants have moved to dismiss every intentional tort asserted in plaintiffs' complaint.

claims were unconstitutional. *See Bennett v. Nat'l Ass'n for Advancement of Colored People*, 236 Ark. 750, 757, 370 S.W.2d 79, 83 (1963); *Hoban v. Hall*, 229 Ark. 416, 419, 316 S.W.2d 185, 187 (1958).

In sum, in the entire history of this State, and even before this State existed, there is not a single Arkansas appellate case where a plaintiff successfully brought a common-law claim for barratry, champerty, or maintenance. In the past 165 years, no one has even tried. These claims do not exist and should be dismissed.

> **7.    Count VII: Plaintiffs' complaint does not plead a plausible claim for bribing or illegally influencing a state judicial officer.**

On plaintiffs' final claim, under the Arkansas felony-tort statute, these defendants raised three arguments: (1) plaintiffs had not identified the criminal statute underlying their claim; (2) if Article V, Section 35 of the Arkansas Constitution was the underlying crime, plaintiffs had not alleged what "money, or thing of value, testimonial, privilege or personal advantage" any defendant provided to any judicial officer; and (3) if the referenced judicial officer was the Jefferson County circuit judge, plaintiffs had ultimately alleged only that the defendants continued to appear in front of a judge who perhaps should have recused if plaintiffs had not advised their client to waive the conflict. (Docs. 33, 34, 39, Briefs in Support of Motions to Dismiss, Section III.B.7).

Plaintiffs' response still does not identify the criminal statute underlying this claim. (Doc. 43, Brief in Support of Response 39). Plaintiffs further still have not identified what "money, or thing of value, testimonial, privilege or personal

advantage" any defendant provided to any judge. *See* Ark. Const. art. V, § 35. As these points are apparently undisputed, this claim should be dismissed.

Finally, plaintiffs have now identified the judicial officers at issue in this claim as the Jefferson County circuit judge and a Faulkner County circuit judge, who presided over a probate matter in which these plaintiffs were never parties. The allegations related to the Jefferson County circuit judge have been addressed repeatedly. Plaintiffs have not adequately alleged any wrongdoing, let alone a crime, in the defendants' interactions with that judge, nor have they adequately alleged any damages from the Jefferson County sanctions order. As to the Faulkner County probate judge, the only thing he is alleged to have done is sanction non-party Greg Stephens. (Doc. 1, Complaint ¶ 22). Non-party Stephens appealed this sanction, and it was affirmed. *See Stephens v. Wilson*, 2020 Ark. App. 404, 609 S.W.3d 429. Plaintiffs have not alleged that these defendants committed any crime in litigation before the Faulkner County probate judge, and plaintiffs lack standing to complain of an affirmed sanction order entered against a non-party. This claim should be dismissed.

## III.    CONCLUSION

For the reasons stated above and in the opening briefs in support of their motions, Bryan Adams, Eric Bell, Brandon Adams, Skylar Adams, WLJ, Judy Henry, Scott Irby, and Jake Fair request that the Court dismiss the complaint against them with prejudice.

Respectfully submitted:

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
PHONE: (501) 371-0808
FAX: (501) 376-9442
E-MAIL:  jhenry@wlj.com;
         sirby@wlj.com


By: /s/ Judy S. Henry_____
   Judy Simmons Henry (84069)
   Scott A. Irby (99192)

*Attorneys for defendants Bryan Adams,*
*Brandon Adams, Skylar Adams f/k/a*
*Skylar Wilson, Eric Bell, Judy S. Henry,*
*Scott A. Irby, Jacob P. Fair, and*
*Wright, Lindsey & Jennings LLP*

2903438-v1

32