# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 31, 2025

```
FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

Jul 31, 2025
Tammy H. Downs, Clerk
By: JohnHibbs D.C.
                    DEP CLERK
```

Lucien R. Gillham
SUTTER & GILLHAM
Suite 105
1501 N. Pierce Street
Little Rock, AR  72207

RE:  24-1071  Sutter & Gillham PLLC, et al v. Judy Henry, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Susan E. Bindler
Clerk of Court

CRJ

Enclosure(s)

cc:     Clerk, U.S. District Court, Eastern District of Arkansas
        David Michael Donovan
        Judy Simmons Henry
        Peter Shults
        Steven Shults
        Luther Oneal Sutter
        Michael Alan Thompson

        District Court/Agency Case Number(s):   4:23-cv-00078-BSM

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 31, 2025

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  24-1071  Sutter & Gillham PLLC, et al v. Judy Henry, et al

Dear Sir or Madam:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellants and appeared on the appellants' brief, was Lucien R. Gillham, of Little Rock, AR.  The following attorney(s) also appeared on the appellants' brief;   Luther Oneal Sutter, of Little Rock, AR.

Counsel who presented argument on behalf of the appellees was Michael Alan Thompson, of Little Rock, AR.  The following attorney(s) appeared on the appellees' brief;  Judy Simmons Henry, of Little Rock, AR.,  Scott A. Irby, of Little Rock, AR., Peter Shults, of Little Rock, AR.,  Steven Shults, of Little Rock, AR.,  David Michael Donovan, of Little Rock, AR.

The judge who heard the case in the district court was Honorable Brian S. Miller.

If you have any questions concerning this case, please call this office.

Susan E. Bindler
Clerk of Court

CRJ

Enclosure(s)

cc:  MO Lawyers Weekly

District Court/Agency Case Number(s):   4:23-cv-00078-BSM

# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1071
_____

Sutter & Gillham PLLC; Luther Oneal Sutter; Lucien R. Gillham

*Plaintiffs - Appellants*

v.

Judy Simmons Henry; Jacob Post Fair; Scott A. Irby; Wright Lindsey Jennings LLP; Tommy Williams; Bryan Adams; Eric Bell; Brandon Adams; Skylar Adams; Efrem Neely

*Defendants - Appellees*

Christopher Wesley Burks; Brandon M. Haubert; WH Law PLC

*Defendant*s

John Does 1-100

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: January 14, 2025
Filed: July 31, 2025
_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

Can claims arising out of an alleged state-court conspiracy escape dismissal under the *Rooker-Feldman* doctrine?  *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008).  The answer is yes, so we vacate the district court's order to the contrary and remand for further proceedings.

I.

The alleged conspiracy grew out of an Arkansas wrongful-death action involving a teenage boy who died from a gunshot wound.  His family suspected foul play.  Sutter & Gillham PLLC, a law firm, initially represented his mother but later withdrew.  On the other side of the case were his friends, who were the last to see him alive and claimed it was suicide.

The litigation was unusually contentious.  It eventually led to dismissal with prejudice after the state court concluded that the family and its attorneys had committed misconduct, including abuse of process, fraud, and spoliation.  Although Sutter & Gillham had voluntarily withdrawn by then, its view was that the court's order unfairly maligned the firm and its attorneys.  One of the firm's partners tried to intervene, to both clear the record and seek recusal of the judge, but he did not appeal after the state trial court denied the motion.  The family, for its part, successfully overturned the dismissal, *see Baker v. Adams*, 703 S.W.3d 171, 177 (Ark. Ct. App. 2024), and the case remains pending.

Meanwhile, the firm became embroiled in related litigation.  One case involves the wrongful-death defendants, who sued the firm, its named partners individually, and the victim's family in state court for the alleged misconduct. Others are lawsuits brought by the firm itself, including the case before us now, which alleges two federal constitutional claims against the wrongful-death

-2-

defendants and their attorneys.  Underlying each is the idea that they conspired with the state trial judge to sink the case.

The district court dismissed under the *Rooker-Feldman* doctrine.[1]  We must decide amidst this cascade of litigation whether it applies.  Our review is de novo. *See Minch Fam. LLLP v. Buffalo-Red River Watershed Dist.*, 628 F.3d 960, 965 (8th Cir. 2010).

## II.

The *Rooker-Feldman* doctrine has been around in some form for over a century.  First came *Rooker*, which involved a lawsuit "commenced in" federal district court that asked for an unfavorable state-court judgment to be "declared null and void." *Saudi Basic*, 544 U.S. at 283 (quoting *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414 (1923)).  Then, nearly 60 years later, the Supreme Court decided *Feldman*, which dismissed a federal lawsuit filed against the highest court of the District of Columbia by parties who had lost there. *See id.* at 285 (discussing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–83 (1983)).  The doctrine bearing their names prevents "lower federal courts from exercising appellate review of state[-]court judgments." *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.*, 487 F.3d 1154, 1156 (8th Cir. 2007).  Underpinning it is the idea that only the Supreme Court can. *See Rooker*, 263 U.S. at 416; 28 U.S.C. § 1257.

Courts interpreted the doctrine broadly at first.  If a federal lawsuit resembled an appeal of a state-court decision or would have otherwise cast doubt on one, it usually ended in dismissal. *See, e.g.*, *Prince v. Ark. Bd. of Exam'rs in Psych.*, 380 F.3d 337, 340 (8th Cir. 2004); *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1034–35 (8th Cir. 1999).  Even cases that were "inextricably intertwined" with a state-court judgment fell into the dismissal trap. *E.g.*, *Ace Constr. v. City of St. Louis*,

---

[1]The district court then declined to exercise supplemental jurisdiction over the state claims. *See* 28 U.S.C. § 1367(c)(3).

-3-

263 F.3d 831, 833 (8th Cir. 2001); *Lemonds v. St. Louis County*, 222 F.3d 488, 492–93, 496 (8th Cir. 2000). Ensuring that federal courts kept their hands off what happened in state court is what many thought the *Rooker-Feldman* doctrine did.

In 2005, the Supreme Court made clear that it covered "narrow[er] ground." *Saudi Basic*, 544 U.S. at 284. It "confined" it to cases of the kind from "which the doctrine acquired its name." *Id.* Key was that *Rooker* and *Feldman* each involved a party who filed an action in federal court to overturn an "injurious state-court judgment." *Id.* at 291–92. From that basic observation, the modern *Rooker-Feldman* rule was born: dismissal follows only when the federal-court action is "brought by [a] state-court loser[] complaining of injuries caused by [a] state-court judgment[] rendered before the district court proceedings commenced and inviting district court review and rejection of th[at] judgment[]." *Id.* at 284. It is not quite as complex as it sounds.

The post-*Saudi Basic* anchor is the underlying state-court decision and judgment itself. Unlike before, a federal-court plaintiff *can* seek relief for an "allegedly illegal act or omission by an adverse party" in a state-court case, just not "assert[] as a legal wrong an allegedly erroneous decision by a state court." *MSK EyEs*, 546 F.3d at 539 (citation omitted). An independent claim against an adverse party from a state-court proceeding is fair game, *see Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008), even if it "denies a legal conclusion that a state court has reached," *Saudi Basic*, 544 U.S. at 293 (citation omitted). But the legal wrong cannot be the state-court judgment itself, with its rejection being the remedy. *See MSK EyEs*, 546 F.3d at 539. These fine distinctions guide us to the right answer here.

III.

In dismissing the case, the district court seemingly took a trip back in time. Specifically, it relied on one of our older cases to emphasize that the firm and its attorneys should have appealed both the denial of the motion to intervene and the

-4-

sanctions order rather than "recast those claims under section 1983 and try again." *Prince*, 380 F.3d at 340.  Using pre-*Saudi Basic* lingo, it summarized its holding as follows: *Rooker-Feldman* "compels dismissal of [the] case because it appears to be an attack on state judgments that could have been appealed in state court."  In other words, it resembled an improper appeal of a state-court judgment.

"[C]onfin[ing]" the doctrine to its namesakes, however, this case looks nothing like *Rooker* or *Feldman*.  *Saudi Basic*, 544 U.S. at 284.  Nobody asked the district court to declare a state-court judgment "null and void."  *Rooker*, 263 U.S. at 414.  On the contrary, the federal lawsuit accepts the sanctions order as a given and directs the blame at the allegedly conspiratorial actions of the state-court defendants, their lawyers, and the state judge.  Nor is this a situation like *Feldman*, in which the federal lawsuit targets the court that issued the judgment with the goal of "inviting [a] review and rejection of" it.  *Saudi Basic*, 544 U.S. at 284; *see Feldman*, 460 U.S. at 482–83.  Neither the state court nor the state judge are defendants, just the parties who appeared before them.

The legal wrongs described in the complaint are also a mismatch for the *Rooker-Feldman* doctrine.  One allegation is that the state-court defendants filed retaliatory lawsuits against the firm and its attorneys, which harmed them and their families by casting them in a negative light across Arkansas.  Another is that they caused the firm to withdraw from the state-court case and coaxed the court into a finding of misconduct, which they believe has caused reputational, financial, and other harm.  The plaintiffs view the defendants as complicit in violating their First Amendment and due-process rights, which they hope to remedy in their federal lawsuit through an award of damages, as well as a declaratory judgment that "each of the [d]efendants, individually and as a group or groups, engaged in a corrupt conspiracy in an attempt to suppress the truth."  *See VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (noting that a plaintiff's "request for relief" reflects the "source of the injury" (citation omitted)).

-5-

Even if the plaintiffs receive all the relief they seek, the state-court judgment would remain intact, including the sanctions order. *See MSK EyEs*, 546 F.3d at 539; *see also Behr v. Campbell*, 8 F.4th 1206, 1213 (11th Cir. 2021) (concluding jurisdiction existed when the plaintiffs requested "damages for" claims based on violations of their constitutional rights "*during* [a state-court] proceeding" (emphasis added)). The complaint's focus on the "adverse part[ies'] actions in obtaining" the state-court order, not on the court or the ruling itself, ensures it will no matter how this case comes out. *MSK EyEs*, 546 F.3d at 539; *see Hageman v. Barton*, 817 F.3d 611, 616 (8th Cir. 2016) (holding that *Rooker-Feldman* did not apply because the complaint focused on the defendant's "actions in the process of obtaining the judgment and order").

Given these conclusions, it hardly matters whether the firm and its attorneys qualify as state-court losers, nor whether the sanctions order was final when they filed their federal lawsuit. There is no denying, however, that they were non-parties to the case and withdrew before the state court dismissed, which makes this case an awkward *Rooker-Feldman* fit. *See Johnson v. De Grandy*, 512 U.S. 997, 1006 (1994) (recognizing that *Rooker-Feldman* was inapplicable to a federal lawsuit brought by a nonparty to a state suit); *Riehm*, 538 F.3d at 965 ("*Rooker-Feldman* does not apply where the federal plaintiff was not a party in state court."). And even if the now-reversed sanctions order is final—hardly a good bet—it would make no difference because other *Rooker-Feldman* requirements are absent. *See Saudi Basic*, 544 U.S. at 284 (explaining that the state-court judgments must have been "rendered before the district court proceedings commence[]"); *Robins v. Ritchie*, 631 F.3d 919, 927 (8th Cir. 2011) (noting that *Rooker-Feldman* typically applies to federal suits filed after a state case has "finally resolved"). To occupy its "narrow ground," a case must run the table on them all. *Saudi Basic*, 544 U.S. at 284.

One final note. We do not express any opinion on whether the plaintiffs needed to exhaust their state-court remedies, *see Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1020 (8th Cir. 2000), or the applicability of res judicata, collateral estoppel, or any other preclusion-like doctrine, *see C.H. Robinson Worldwide, Inc.*

-6-

*v. Lobrano*, 695 F.3d 758, 763 (8th Cir. 2012). *Rooker-Feldman* leaves room for ordinary preclusion law, and it is up to the district court to analyze those issues and the merits of the plaintiffs' claims in the first instance.[2] *See Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("*Rooker-Feldman* is not simply preclusion by another name."); *Saudi Basic*, 544 U.S. at 283 (noting that the doctrine cannot "supersed[e] the ordinary application of preclusion law").

IV.

We accordingly vacate the district court's judgment and remand for further proceedings.[3]

_____

---

[2]The defendants suggest that the firm lacks standing because the loss of attorney fees in the state-court case is not "fairly traceable" to the sanctions order. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). The complaint, however, alleged enough to connect the dots from its financial and reputational losses to the defendants' allegedly conspiratorial actions, whether it could have recovered more in attorney fees or not. *See Wieland v. U.S. Dep't of Health & Hum. Servs.*, 793 F.3d 949, 954 (8th Cir. 2015) (holding that the way to establish standing at the motion-to-dismiss stage is through "general factual allegations").

[3]We also deny the pending motion to supplement the record or for remand as moot.

-7-