IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

SUTTER & GILLHAM, PLLC, et al.                                    PLAINTIFFS

v.                              Case No: 4:23CV-78-BSM

JUDY SIMMONS HENRY, et al.                                        DEFENDANTS

**RESPONSE TO DEFENDANTS'
SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION
TO DISMISS & INCORPORATED BRIEF IN SUPPORT**

COMES Plaintiffs, **SUTTER & GILLHAM, P.L.L.C., LUTHER SUTTER, AND LUCIEN GILLHAM**, by and through counsel, for their Response to Defendants' Supplemental Brief in Support of Motion to Dismiss and Incorporated Brief in Support, state:

**INTRODUCTION**

Defendants lost on appeal, even though the Eighth Circuit could have affirmed on any basis supported by the record. Undeterred, they now seek another bite at the apple—offering no true supplement to their prior briefing and merely rehashing arguments they already presented before. Their motion is nothing more than an attempt to delay resolution and should be denied.

Defendants identify no new facts, no intervening law, and no materially different analysis. The theories they advance now are the same ones pressed in their original briefing—arguments the Eighth Circuit had the discretion to adopt but declined to do so when it remanded. Having chosen not to embrace those grounds, the Court's remand

1

leaves no room for Defendants to relitigate them under the guise of "supplementation." This is procedural gamesmanship, not legitimate motion practice, and it serves only to stall the case's progress. The motion should be denied.

First, under Arkansas law, Gina (Gena) Baker held—at most—a derivative, beneficiary interest in any wrongful-death recovery and was not the real party in interest once a personal representative was appointed. See Ark. Code Ann. §§ 16-62-101–102; Ark. R. Civ. P. 17(a). The appointment of Kerry Baker as Administrator of the Estate of James Luke Baker vested the wrongful-death cause of action in the personal representative. Any separate filing by a statutory beneficiary is unnecessary. Any recovery obtained by Kerry Baker, as Administrator, will inure to the benefit of the statutory beneficiaries, including Gena Baker—who is Plaintiffs' client. Thus, it is incorrect to suggest that Gena Baker "lost" her claim or that her ability to recover has been impaired. At this stage, Defendants have achieved nothing that would prevent Gena Baker from receiving her full share of any wrongful-death proceeds owed to her as a statutory beneficiary.

Second, Defendants' Rule 12(b)(6) arguments were squarely presented to the Eighth Circuit. The Eighth Circuit may affirm on any ground supported by the record. See Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013) (citing St. Martin v. City of St. Paul, 680 F.3d 1027, 1032 (8th Cir. 2012)). The Court declined to do so and instead remanded. That remand forecloses Defendants from reasserting the same Rule 12(b)(6) theories now. The present motion does not develop any new record, identify any change

in controlling law, or supply any analytical refinement; it simply repackages points already made and rejected as a basis for affirmance.

Third, even if the Court were inclined to entertain preclusion, Defendants have not carried their burden to establish collateral estoppel. Among other things, the issue Plaintiffs press includes whether Defendants conspired with Judge Alex Guynn to procure a false order in violation of Plaintiffs' due process rights—an issue not actually and necessarily decided against Plaintiffs in any prior proceeding on a full and fair record. Defendants' cursory invocation of preclusion doctrine, without showing identity of issues, a final determination on the merits of that specific issue, or an opportunity for full and fair litigation, cannot bar Plaintiffs' claims. Defendants' motion should be denied.

## FACTUAL BACKGROUND

This is not a routine attempt to relitigate adjudicated matters; it is a coherent pattern of corruption that taints the very proceedings Defendants now invoke as preclusive. From the outset of the wrongful-death investigation into James "Luke" Baker, Defendants coordinated to predetermine outcomes, weaponize court orders, and foreclose meaningful participation by those poised to expose the truth—conduct that cannot yield a "final judgment on the merits" for res judicata purposes at the pleadings stage. Complaint ¶¶ 18–23, 24–33, 33–37, 89–107, 111–116.

Plaintiffs Sutter and Gillham represented a limited statutory beneficiary (Gena Baker) in the Jefferson County wrongful-death matter, not the Estate. Complaint ¶¶ 25, 30–31, 35–36. After Plaintiffs appeared, pressure escalated: the Adams interests threatened to "destroy" Sutter if he did not withdraw, followed by orchestrated filings and

3

media maneuvers designed to discredit Plaintiffs and force them out. Complaint ¶¶ 37–41, 73–81. This set the stage for a more serious breach: the calculated insertion of Efrem Neeley—former law partner of sitting Judge Guynn—into the Baker case to secure access rather than provide advocacy, despite Judge Guynn's routine recusals from Neeley's cases. Complaint ¶¶ 41–48, 52–56. Neeley became a conduit for ex parte communications with Judge Guynn about pending matters; those communications were relayed to Eric Bell and the Adamses so defense strategy could be calibrated to expected rulings. Complaint ¶¶ 49–56. Neeley met Judge Guynn after hours at Neeley's office and was paid tens of thousands by the Adamses, at WLJ's recommendation. Complaint ¶¶ 52–56. This is textbook joint action with a state actor, not zealous advocacy. Complaint ¶¶ 95–103.

With the ex parte pipeline in place, Defendants orchestrated a sanctions ambush designed to destroy Plaintiffs' credibility and collapse the Baker case from within. Without notice to Plaintiffs, Judge Guynn conducted a hearing where the Bakers' own counsel introduced no evidence; yet the court imposed Rule 11/37 sanctions against Plaintiffs and dismissed the case with prejudice. Complaint ¶¶ 64–67, 68–69. The written order—drafted by Defendant Henry—diverged from the court's oral rulings, magnifying the due process defect. Complaint ¶¶ 64–69. When Sutter promptly moved to intervene to contest sanctions procured in absentia, intervention was denied, preserving a tainted order for collateral deployment. Complaint ¶¶ 67, 69, 97–101, 111–116. The essential elements of a fair judgment—notice, an opportunity to be heard, and a record grounded in evidence —were missing. Complaint ¶¶ 68, 111–116.

In parallel, Defendants manipulated Faulkner County proceedings to manufacture "findings" for later preclusive use. They opened a second probate despite an existing estate, then issued sweeping subpoenas and deposition notices (including armed investigator presence) and sought private cell records absent any pending claims—all to gain leverage in the contemplated wrongful-death litigation. Complaint ¶¶ 22, 64; Ex. B ¶¶ 45–64; Exs. 6–9. The Faulkner court quashed the discovery and later sanctioned counsel, finding it was an improper fishing expedition to "bludgeon" a witness in the wrongful-death action rather than to administer an estate. Complaint ¶¶ 22, 64; Ex. B ¶¶ 65–73; Exs. 12–13.

Defendants also executed a collateral "conflict creation" plan. Through Neeley, Eric Bell recruited Chris Burks (who associated Brandon Haubert) to file a no-cost, factually baseless malpractice claim by David Westbrook against Plaintiffs—admittedly orchestrated for the Adamses' benefit. Complaint ¶¶ 12–16, 57–63, 71–72, 118–119. That case was dismissed with prejudice, confirming its pretextual nature. Complaint ¶¶ 71–72, 118–119; Ex. I. Armed with (a) a sanctions order procured without notice via ex parte influence and (b) a contrived "malpractice" filing to suggest ethical taint, Defendants launched collateral attacks and professional complaints, amplified the smear through Arkansas Business via WLJ's media relationship, and pressed preclusion to prevent Plaintiffs from ever being heard on the merits just as Defendants are doing now. Complaint ¶¶ 70–81, 117–118, 120–131, 150–154.

Res judicata cannot sanctify this sequence. A judgment procured through fraud on the court, ex parte influence, denial of notice, and refusal to allow intervention is not a

"final judgment on the merits" entitled to preclusive effect. Complaint ¶¶ 64–69, 97–107, 111–116. At minimum, Plaintiffs have plausibly alleged the sort of due process violations that render those orders void or voidable, foreclosing a Rule 12(b)(6) dismissal based on res judicata. The core elements of claim preclusion—same parties, final judgment on the merits, and a full and fair opportunity to litigate—are defeated by well-pled facts showing Plaintiffs were deprived of any meaningful chance to participate, that an adversary drafted an order that diverged from oral rulings, and that ex parte channels predetermined outcomes. Complaint ¶¶ 64–69, 95–103, 111–116. At this stage, those allegations must be accepted as true and construed in Plaintiffs' favor.

The same facts establish state-enabled deprivation for Plaintiffs' constitutional claims: private actors did not merely influence litigation; they jointly engaged with a sitting judge through illicit ex parte communications to secure predetermined rulings and then exploited those void rulings to harm Plaintiffs' property and liberty interests—their statutory lien and contingent fee, professional standing, contractual relations, and reputations—without due process. Complaint ¶¶ 90–96, 95–103, 111–116, 118–131. The pattern—ex parte influence; notice-free sanctions; denial of intervention; parallel forum abuses; manufactured conflicts through sham litigation; weaponized media; and professional complaints—was a single coordinated scheme to deny access to court and extort Plaintiffs' withdrawal from the Baker case. Complaint ¶¶ 33, 41–56, 58–69, 70–81, 82–92, 118–131, 132–150.

Equity and doctrine converge on the same conclusion: collateral bars cannot be built on corrupted foundations. Because the Complaint plausibly alleges that the very

proceedings Defendants invoke were tainted by fraud on the court and constitutional infirmities, res judicata cannot support dismissal under Rule 12(b)(6). The law hears before it condemns; here, Defendants seek to condemn by invoking orders obtained without hearing and that have no preclusive effect on Gena Baker, Plaintiffs' client. The motion should be denied.

**ARGUMENT**

Defendants' motion to dismiss on res judicata fails as a matter of Arkansas law, federal preclusion doctrine, and the case's appellate posture. First, Arkansas's survival and wrongful-death statutes make the personal representative the real party in interest; statutory beneficiaries' rights are derivative and are pursued through the estate. Any prior "misalignment" is curable under Rule 17(a) by substitution or joinder, not a basis for prejudice or preclusion—especially after the Arkansas Court of Appeals reversed the adverse order Defendants invoke, eliminating any final-judgment predicate. Second, the Eighth Circuit's mandate forecloses relitigation of Rule 12(b)(6) theories the panel could have affirmed but did not; those issues are law of the case and cannot be repackaged on remand. Third, even if reached anew, Defendants' Rule 12(b)(6) arguments founder because the complaint and embraced materials negate core elements of claim preclusion: there is no qualifying final judgment on the merits, Plaintiffs were neither parties nor in privity and lacked a full and fair opportunity to be heard due to ex parte proceedings and denial of intervention, and the present claims arise from a distinct nucleus of operative facts—corruption and misuse of process against Plaintiffs and the estate—not the underlying wrongful-death merits. Finally, Arkansas procedure supplies a straightforward

7

merits path: alignment or refiling by the administrator, which restores the case to its proper posture and defeats any claimed preclusive effect.

I.     **Under Arkansas law, the personal representative is the real party in interest; a statutory beneficiary's claim is derivative and cannot be brought in her individual capacity when a representative has been appointed.**

Arkansas law draws a clear line between who owns the claims and who benefits from them. Causes of action that belonged to the decedent during life survive to the estate and must be pursued by the personal representative. *See* Ark. Code Ann. § 16-62-101. Separately, wrongful-death claims must "be brought by and in the name of the personal representative of the deceased person" for the benefit of the statutory beneficiaries. Ark. Code Ann. § 16-62-102(b). Only in the absence of a personal representative may the heirs sue directly. *Id*.; *see also* Ark. R. Civ. P. 17(a) (actions must be prosecuted in the name of the real party in interest); *Brewer v. Poole*, 362 Ark. 1, 8–10, 207 S.W.3d 458, 463–64 (2005) (the wrongful-death action belongs to the personal representative; beneficiaries' rights are derivative).

Once Kerry Baker was appointed personal representative, Arkansas law required that any survival or wrongful-death claims proceed in the name of the administrator. Gina (Gena) Baker's position is that of a statutory beneficiary with derivative rights—not the real party in interest for purposes of caption or prosecution. That is not a defect in her substantive entitlement; it is simply a rule about who holds the procedural reins. *See* Ark. R. Civ. P. 17(a); *Brewer*, 362 Ark. at 8–10.

To the extent Defendants press dismissal based on supposed party "misalignment," Arkansas procedure makes plain that the remedy is not a with-prejudice

dismissal. Rule 17(a) instructs courts to afford a "reasonable time" to cure any real-party-in-interest objection by substitution, ratification, or joinder, because the preference is to resolve disputes on the merits rather than through technical miscaptioning. *See* Ark. R. Civ. P. 17(a) (no dismissal "until a reasonable time has been allowed" to cure). Alignment or substitution—placing the personal representative in the caption, clarifying that beneficiaries claim through the estate—is the proper, limited fix if any is needed.

Equally important, the presence of Gena Baker and her counsel was neither improper nor frivolous. She is Luke Baker's mother and, at the relevant time, was divorced from Kerry Baker. As a statutory beneficiary, she was legally entitled to protect her interests, monitor the litigation's progress, and retain counsel to do so. Her interest is guaranteed by statute and realized through the estate's prosecution, distribution, and any court approval of settlement. That the Administrator—Kerry Baker, as PR of the Estate of James Luke Baker—appealed the adverse order only underscores how the structure works in practice: because the estate is the real party in interest, actions taken by the estate inure to all beneficiaries' benefit, including Gena's. When the Arkansas Court of Appeals reversed the illegal order, that reversal protected Gena's rights precisely because her recovery flows through the estate. *See* Ark. Code Ann. § 16-62-102(f)–(h) (distribution to beneficiaries); *Brewer*, 362 Ark. at 9–10, 207 S.W.3d at 463–64.

Here, Kerry Baker, the personal representative, was the head coach; the lawsuit's authority flows through him. He sets the plan, makes final calls, and is the one the rules recognize to lead the team. Gena is an assistant coach with a real stake in the outcome. She works, contributes, and is paid because her efforts matter—but her role remains tied

to the head coach's authority. Neither her value nor her share in the team's success depends on whose name is on the top line of the staff card.

The quarterback is simply the player who takes the snap under the coach's authority—the caption that carries the case forward. If the roster lists the wrong starter, the officials don't call the game; they correct the card and the game proceeds. The yards count, the score reflects what happened on the field, and everyone who did the work shares in the result. Likewise here, aligning the caption to name the personal representative is a roster correction, not a forfeiture of beneficiaries' rights. Rule 17(a) exists for exactly that: fix the lineup, play the game, decide it on the merits.

Against that backdrop, Defendants' res judicata argument misapprehends both Arkansas's statutory scheme and the effect of the appellate reversal. Claim preclusion requires, among other things, a final judgment on the merits between the same parties or their privies, after a full and fair opportunity to litigate. But here the "misalignment" they point to is, at most, a curable Rule 17(a) formality, not a merits disposition. Arkansas courts do not convert a fixable caption issue into a bar to claims that belong to the estate and benefit the beneficiaries. Additionally, the Court of Appeals' reversal of the dismissal order eliminates any "final judgment" predicate for res judicata. A vacated or reversed judgment cannot support preclusion. Once reversed, the prior order has no preclusive effect—practically or legally—on the estate's claims or on the derivative rights of statutory beneficiaries like Gena. Finally, because Gena's interest is derivative of and protected through the estate, any recovery the estate secures will necessarily flow to her

10

in her statutory share. Conversely, any procedural correction to ensure the PR is named as plaintiff does not extinguish, waive, or diminish her substantive rights.

In short, Arkansas law places the cause of action's legal title in the personal representative and the equitable entitlement in the statutory beneficiaries. That structure explains why Gena's participation was appropriate, why any caption objection is cured through Rule 17(a) alignment or substitution, and why res judicata is inapplicable in light of the appellate reversal and the absence of a valid, final merits adjudication. The motion should be denied.

II.    **The Eighth Circuit already had Defendants' Rule 12(b)(6) theories before it and did not affirm; the mandate rule and law-of-the-case principles foreclose re-urging them now.**

Once the Court of Appeals renders a decision on appeal, "[u]nder the law[-]of[-]the[-]case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms." *Jaramillo v. Burkhart*, 59 F.3d 78, 80 (8th Cir. 1995). Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Alexander v. Jensen–Carter*, 711 F.3d 905, 909 (8th Cir. 2013) (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). "This principle applies to both appellate decisions and [trial] court decisions that have not been appealed." *Id*. However, on remand from an appellate court, a trial court is bound by its own prior rulings only to the extent the appellate court explicitly or implicitly adopted those findings in resolving the appeal. *Usery*, 242 B.R. at 457. "A successor judge steps into the shoes of his or her

11

predecessor, and is thus bound by the same rulings and given the same freedom, as the first judge. To the extent that a trial judge can alter a previous ruling, so too can a successor judge...." *Exxon Corp. v. United States*, 931 F.2d 874, 878 (Fed. Cir. 1991). To the extent Defendants' motion re-litigates issues decided by the Eighth Circuit, those rulings bind the parties and this Court under the law-of-the case and mandate rules. *United States v. Bartsh*, 69 F.3d 864, 866-867 (8th Cir. 1995); *Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1440-1441 (8th Cir. 1986) (issues decided by an appellate court "become the law of the case" and "should not be reexamined). Since the Eighth Circuit could have affirmed this Court's dismissal on any basis supported by the record, the Eighth Circuit implicitly rejected these arguments as a basis for dismissal under Rule 12(b)(6). While the opinion did provide that the opinion did not disturb ordinary preclusion law, the opinion notes that this Court should address that at the first instance. Since these preclusion type defenses are affirmative defenses, the Court should reject the attempt to relitigate the Rule 12(b)(6) issue on remand. Under these principles, arguments foreclosed by the Eighth Circuit's mandate cannot supply a basis for the relief Defendants seek. The Court should reject any repackaged iterations of matters already settled on appeal.

Here, once the Court of Appeals issued its decision, this court is bound to follow the mandate and apply the law-of-the-case doctrine. Those principles are straightforward: a rule of law decided by the appellate court governs the same issues in later stages of the same case; the district court must carry out the mandate faithfully; and issues actually decided—explicitly or implicitly—are not open for re-litigation on remand.

12

Defendants' motion tries to reargue grounds for dismissal that the Eighth Circuit had the opportunity to affirm but did not. Because the court of appeals could have affirmed on any basis supported by the record, its decision to vacate and remand necessarily rejects those arguments as a basis for Rule 12(b)(6) dismissal. That is law of the case. The panel expressly noted that ordinary preclusion principles were not disturbed and should be addressed by this Court in the first instance, which confirms two things: preclusion issues remain what they have always been—affirmative defenses—and they are not a vehicle to repackage the very 12(b)(6) theories the Eighth Circuit declined to adopt.

On remand, this Court's task is to implement the mandate—not to revisit resolved questions, nor to search for alternative 12(b)(6) theories the court of appeals passed over. To the extent Defendants press arguments the Eighth Circuit has already disposed of, the mandate rule bars them. To the extent they dress the same theories in new labels, law of the case still applies: a party cannot evade the mandate by rebranding issues already decided. And because preclusion doctrines are affirmative defenses, they are not a proper basis to re-urge dismissal under Rule 12(b)(6) on the same record where the court of appeals has returned the case for further proceedings.

Finally, nothing about the posture on remand expands the scope of what may be reconsidered. A successor judge stands in the shoes of the predecessor: bound where the appellate decision binds, and free only where the appellate court left room. Here, the Eighth Circuit's ruling controls. Arguments foreclosed by that mandate cannot be revived to accomplish indirectly what Defendants could not obtain on appeal. The Court should

therefore reject any repackaged attempts to re-litigate Rule 12(b)(6) and proceed in accordance with the mandate.

III.     **Even if considered anew, Defendants' Rule 12(b)(6) arguments fail on the merits.**

Arkansas pleading standards require facts showing entitlement to relief, Ark. R. Civ. P. 8(a), and any real-party objection is curable. Where, as here, a duly appointed administrator (Kerry Baker) stands ready to prosecute the claims for the statutory beneficiaries, the action is properly aligned under §§ 16-62-101–102 and Rule 17, and dismissal is unwarranted. Moreover, res judicata is an affirmative defense. *Howard v. Green*, 555 F.2d 178, 181 (8th Cir.1977); Fed.R.Civ.P. 8(c)(1). Before adoption of the Federal Rules of Civil Procedure, the Eighth Circuit Court of Appeals recognized "that a defense of res judicata" may be raised in a motion to dismiss when "the identity of the two actions can be determined from the face of the petition itself." *Potamitis v. Pittsburgh Plate Glass Co.*, 82 F.2d 472, 473 (8th Cir.1936). Indeed, "[i]f an affirmative defense ... is apparent on the face of the complaint ... that [defense] can provide the basis for dismissal under Rule 12(b)(6)." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir.2008). The Eighth Circuit's interpretation of the phrase "face of the complaint ... include[s] public records and materials embraced by the complaint," *id*., and "material[s] attached to the complaint," *Quinn v. Ocwen Federal Bank FSB*, 470 F.3d 1240, 1244 (8th Cir.2006) (per curiam) (quotation omitted).

The doctrine of res judicata, or claim preclusion, applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper

14

jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action." *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998). "[W]hether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989). Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

Here, Defendants ask for dismissal on res judicata, but the complaint's story is the opposite of what preclusion requires. The Jefferson County "judgment" they invoke was procured without notice, through ex parte access, and followed by a denial of intervention —hardly a final, reliable merits adjudication. Plaintiffs were not parties when it issued and were blocked from becoming parties to contest it, so there was no full and fair opportunity to litigate. And the claims pled here are different in kind: this suit targets the corruption of process and the deployment of tainted orders against Plaintiffs themselves, not the underlying wrongful-death merits.

There is a further, independent reason res judicata cannot carry the day. Under Arkansas's statutory scheme, the personal representative is the real party in interest for

survival and wrongful-death claims. That means Kerry Baker, as administrator, can refile the wrongful-death action in the estate's name, which revives the claim and breaks any preclusion chain Defendants try to forge from earlier, tainted proceedings. When the proper party with legal title to the claim brings (or re-brings) the action, any supposed defect tied to prior misalignment falls away, and the case proceeds on the merits. In practical terms, that refiling both cures the caption and undercuts any argument that a prior order against different parties—or entered without due process—can bar the estate's claims or the beneficiaries' derivative rights.

Taken together, these points make dismissal on res judicata untenable at the pleadings stage. There is no qualifying final judgment on the merits, no identity of parties with a fair chance to be heard, a different nucleus of operative facts, and a ready path—refiling by the administrator—that restores the claim to its proper posture and defeats any claimed preclusive effect. The motion should be denied.

### CONCLUSION

In conclusion, the motion should be denied. Arkansas law vests the survival and wrongful-death claims in the personal representative, rendering any beneficiary "misalignment" a fixable Rule 17(a) formality—not a merits bar—and the appellate reversal removes any final judgment necessary for preclusion. The Eighth Circuit's mandate and law-of-the-case principles foreclose re-urging Rule 12(b)(6) grounds the panel declined to adopt. In all events, the complaint alleges due-process defects, lack of party identity or privity, and a distinct factual core centered on the corruption and deployment of tainted orders—facts that, accepted as true, defeat res judicata at the

16

pleadings stage. If any caption correction is desired, substitution or alignment is the proper remedy, and the case should proceed to the merits in the estate's name for the benefit of all statutory beneficiaries.

WHEREFORE Plaintiffs pray that the Motion be denied; that Plaintiffs be awarded fees and costs associated with responding to this Motion; and for all other proper relief.

Respectfully submitted,

Luther Oneal Sutter (95031)
Lucien Gillham (99199)
**SUTTER & GILLHAM, P.L.L.C.**
1501 N. Pierce St. Suite 105
Little Rock, AR 72207
Telephone: 501-315-1910
Facsimile: 501-315-1916
Email: luther.sutterlaw@gmail.com
lucien.gillham@gmail.com

*/s/ Lucien Gillham*

17